# UNITED STATES DISTRICT COURT

### FOR THE

## DISTRICRT OF DELAWARE

| | | |
|---|---|---|
| **NINA SHAHIN** | ) | |
| Plaintiff | ) | |
| v. | ) | **Civil Action No. 08-295 GMS** |
| | ) | |
| **PAMELA A. DARLING et al** | ) | |
| Defendants | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEPUTY ATTORNEY'S GENERAL MEMORANDUM IN SUPPORT OF THE <u>MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT</u>

## THREE-JUDGE PANEL OF THE COURT REQUESTED

**NINA SHAHIN, CPA, MAS, MST**
**IN *PRO SE* REPRESENTATION**

**103 SHINNECOCK RD.**
**DOVER, DE 19904**

**Dated: July 31, 2008**

2008 JUL 31  AM 10: 28
DISTRICT OF DELAWARE

# **TABLE OF CONTENTS**

**Pages**

TABLE OF CITATIONS  …………………………………………    iii - v

LIST OF EXHIBITS …………………………………………..    vi - vii

STATEMENT OF FACTS AND NATURE AND STAGE
OF THE PROCEEDINGS ……………………………………    1  - 18

SUMMARY OF LEGAL ARGUMENT:

I.      A.  STANDARD OF REVIEW  …………………    19 - 20

II.     B.  SPECIFIC CHARGES AGAINST THE
              DEFENDANTS :

          ***Charges against the Judges:***

B.1. CHARGES THAT STEM FROM THE 1ST CASE..    20 - 32

B.2. CHARGES THAT STEM FROM THE 2ND CASE..    32 -  36

B.3. CHARGES THAT STEM FROM THE 3RD CASE..    36 -  39

          ***Charges against the Court Reporters***

  B.4.  CHARGES AGAINST L. LAVENDER AND
              S. DOUGHERTY …………………………..    39 - 40

CONCLUSION  …………………………………………    40 - 41

# TABLE OF CITATIONS

## CASES                                                    PAGES

*Armstrong v. Manzo,* 380 U.S. 545 (1965) ………………………………… 24

*Baldwin v. Hale, 68 U.S. (1 Wall.) 223 (1863)* …………………………….. 24

*Bradley v. Fisher*, 80 U.S. (13 Wall) 335 (1871) ……………………………  2

*Carey v. Piphus,* 435 U.S. 247 (1978) ……………………………………… 23

*Cohens v. Virginia,* 19 U.S. (6 Wheat) 364, 5 L.Ed 257 (1821) …………… 39

*Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401(1958) …………………………. 26

*Elliot v. Piersol,* 1 Pet. 328, 26 U.S. 328 (1828) …………………………… 38

*Green v. Lindsey*, 456 U.S. 444 (1982) ……………………………………… 24

*Green v. McElroy,* 360 U.S. 474 (1959) …………………………………….. 25

*Goldberg v. Kelly,* 397 U.S. 254 (1970) …………………………………….. 24, 25

*In Re Sawyer,* 124 U.S. 200 (1888) …………………………………………. 26

*Marshall v. Jerico,* 446 U.S. 238, 242 (1980) ……………………………... 25

*Mathews v. Eldridge,* 424 U.S. 319 (1976) …………………………………. 24

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ……… 23

*Pierson v. Ray, 386 U.S. 547 (1967)* … … … … … … … … … … … … … … … …  2

*Richards v. Jefferson County,* 116 S. Ct. 1761 (1996) …………………………. 24

*Robinson v. Hanrahan,* 409 U.S. 38 (1974) ………………………………… 24

*Schuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683 (1974) ……………………… 38

*Stump v. Sparkman*, 435 U.S. 349 (1978) ……………………………..............  2

*Tumey v. Ohio* 273 U.S. 510 (1927) ………………………………………… 24

*U.S. v Will,* 499 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) …………….. 38-39

*Wright v. State,* 405 A.2d 685 (Del. 1979) ……………………………………… 28

## STATUTES, RULES AND OTHER AUTHORITIES

| | |
|---|---|
| *U.S. Constitution, Fourteenth Amendment* ………………………… | 26, 31, 34 |
| 18 *U.S.C.* § 2 …………………………………………………………… | 26,31,34,39,39 |
| 18 *U.S.C.* § 3 …………………………………………………………… | 1,3,29,35 |
| 18 *U.S.C.* § 241 ………………………………………………………… | 28,31,32,34,36,38,39 |
| 18 *U.S.C.* § 242 ………………………………………………………… | 26, 29 |
| 18 *U.S.C.* § 246 ………………………………………………………… | 26, 28 |
| 28 *U.S.C.* § 453 ………………………………………………………… | 26 |
| 28 *U.S.C.* § 455(b)(1) …………………………………………………… | 41 |
| 18 *U.S.C.* § 1506 ……………………………………………………….. | 7, 13, 31 |
| 18 *U.S.C.* § 1512 (c)(1) ………………………………………………… | 10,20,28,34,35,39,40 |
| 18 *U.S.C.* § 1512 (h) …………………………………………………… | 12, 20, 27 |
| 18 *U.S.C.* § 1621 ……………………………………………………… | 27 |
| 18 *U.S.C.* § 1961(1) …………………………………………………… | 10,12,20,34,40 |
| 18 *U.S.C.* § 3231 ……………………………………………………… | 19 |
| 28 *U.S.C.* § 2284 ……………………………………………………… | 42 |
| 42 *U.S.C.* § 1985(2) …………………………………………………… | 38, 39 |
| 12 CFR 229.12(b) ……………………………………………………… | 4 |
| 12 CFR 229.21 (A) ……………………………………………………… | 10, 22, 27 |
| *Federal Rules of Civil Procedure 11(b)(3)* ………………………… | 3, 17 |
| *Federal Rules of Civil Procedure 12(b)(1)* ………………………… | 19 |
| *Federal Rules of Civil Procedure 12(b)(6)* ………………………… | 19 |

| | |
|---|---|
| *Federal Rules of Civil Procedure 56(g)* …………………………………… | 27 |
| *Local Rules of Civil Practice and Procedure 9.2* ………………………… | 42 |
| 6 *Del.C.* § 4-103(a) …………………………………………………… | 18 |
| 10 *Del.C.* § 542(a) …………………………………………………… | 6 |
| *Delaware Supreme Court Rules of Civil Procedure 25(a)* ……………… | 7, 31 |
| *Delaware Supreme Court Rules of Civil Procedure 33* ………………… | 17 |
| *Delaware Supreme Court Rules of Civil Procedure 34* ………………… | 17 |
| *Delaware Supreme Court Rules of Civil Procedure 42* ………………… | 12 |
| *Delaware Superior Court Rules of Civil Procedure 7(b)(1)* …………… | 37 |
| *Delaware Superior Court Rules of Civil Procedure 54(d)* …………… | 37 |
| *Delaware Superior Court Rules of Civil Procedure 54(i)* …………… | 37 |
| *Delaware Superior Court Rules of Civil Procedures 90(b)* …………… | 14 |
| *Delaware Rules of the Court on the Judiciary (4)* ……………………… | 29 |
| *Rules of the Court on the Judiciary (5)(b)(3)* …………………………… | 29 |
| *Delaware Judges' Code of Judicial Conduct, Canon1* ………………… | 29 |
| *Delaware Judges' Code of Judicial Conduct, Canon 3* ………………… | 26, 28, 29 |
| Hon. Patricia Walther Griffin and Rachel M. Pelegrin "A Look at Judicial Immunity and Its Applicability to Delaware and Pennsylvania Judges", Widener Journal of Public Law, vol. 6, 1997 .. | 2 |

## LIST OF EXHIBITS

1.  Motion for Sanctions against State Attorney, Kevin R. Slattery, under Rule 11 of Federal rules of Civil Procedure

2.  Copy of the Subpoena in Civil Case of Lisa Brewer filed on 07/14/2005

3.  Emergency Department ED Record dated 07/21/2005

4.  Copy of Jill Vaughn, Judicial Operation Manager's letter of 09/07/2005

5.  Copy of the Acting Deputy Chief Magistrate, Ernst M. Arndt's letter

6.  Copy of the Del-One 'Answer to Complaint' without date or signature

7.  Copy of the Del-One Compliance Officer, Reneé Thompson's Affidavit attached to the Motion for Summary Judgment

8.  Copy of the Court on the Judiciary Order with the Plaintiff's Complaint and all attachments

9.  Copy of the Office of Disciplinary Counsel letter dated 05/01/2006

10. Copy of the Section 229.21 'Civil Liability' of Regulation CC

11. Copy of the transcript of hearing held at CCP on 01/17/2007

12. Copy of Hon. Rosemary Betts Beauregard's decision denying access to the tape of hearing

13. Copy of the Hon. William L. Witham's decision denying the Plaintiff access to the tape

14. Copy of the Plaintiff's "Response to the Notice to Show Cause'

15. Copy of the Order of the Supreme Court denying the Plaintiff access to the tape

16. Copy of the 'Substitution of Counsel' motion filed on 11/22/2006

17. Copy of Case History Search

18. Copy of the docket of the case # 06C-10-027

19. Copy of the Notice Motion for Judgment on the Pleadings signed on 12/15/2006

**20.**    Copy of the envelope in which Motion dated 12/15/2006 was mailed to the Plaintiff by a certified mail with tracking number # 70050390000141649605

**21.**    Track and confirm form from USPS for # 70050390000141649605

**22.**    Copy of the Notice of Motion for Judgment on the Pleadings dated 12/21/2006

**23.**    Copy of the first page of the Plaintiff's Reply to the Motion for Judgment on Pleadings

**24.**    Copy of the Superior Court Decision delivered by Robert B. Young on 1/22/2007

**25.**    Copy of the of the decision of the Supreme Court in the "first case" delivered on 01/24/2007

**26.**    Copy of the decision of the Supreme Court in the "third case".

**27.**    Copy of the Notice of Motion for Attorney's fees filed on 02/23/2007

**28.**    Copy of the Letter of the Robert B. Young's case manager

**29.**    Copy of the Motion for Attorney's fees filed on 02/26/2007

**30.**    Copy of the Robert B. Young's decision on attorney's fees of 03/16/2007

**31.**    Copy of the Supreme Court decision to vacate the Superior Court decision on attorney fees and remand it for a new hearing

**32.**    Copy of the Plaintiff's Motion of not attending  hearing on Attorney's fees

**33.**    Copy of the Plaintiff's Motion-Protest to the Supreme Court

**34.**    Copy of the transcript of hearing on the attorney's fees held on 07/19/2007

**35.**    Copy of the Plaintiff's Motion for Sanctions against the Attorney

**36.**     Copy of the letter from the court striking the Motion for Sanctions against the Attorney

## STATEMENT OF FACTS AND
## NATURE AND STAGE OF THE PROCEEDINGS

The Plaintiff, Nina Shahin, files this Brief in opposition to the State of Delaware Deputy Attorney's General, Kevin R. Slattery, Memorandum in Support of Motion to Dismiss the Plaintiff's Complaint.   The basis of the Deputy Attorney's General legal argument is the notion of 'absolute judicial immunity'.  It is important to note that the Deputy Attorney General in his section 'Statement of Facts' made a remark that 'Shahin's views of those facts are irrelevant to the doctrine of absolute judicial immunity'.   Taking into consideration that the Deputy Attorney General falsified the basic fact which all three cases that he analyzed are based on making such a remark raises a question of his professional integrity, the methods he used in reaching his goal, and his underlying motives.  The word "views" was not defined by the Deputy Attorney General, so it is unclear whether it means that the evidence supporting these views should be disregarded (but is it the specific function of the court to evaluate evidence?!) or Shahin's views about applicability of the cited law should be disregarded.  But since he (and everybody before him) disregarded the evidence it appears that he wants the evidence supporting Shahin's "views" and, therefore, claims to be disregarded!!!

The Plaintiff has filed a Motion for Sanctions against the State of Delaware Deputy Attorney General, Kevin R. Slattery, under Rule 11 for that falsification (the Motion with all of its attachments is presented as **Exhibit 1** to this Brief) and at this particular point would question whether he committed a gross negligence in his research or a felony of 'accessory after the fact' as defined in section § 3 of Title 18 of the US Code. ("Whoever, knowing that an offense against the United States has been committed,

1

receives, relieves, comforts or **assists the offender in order to hinder or prevent his** apprehension, trial, or **punishment, is an accessory after the fact (emphasis added by the Defendant).** Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum of imprisonment or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years."

'Judges in general jurisdiction courts have long enjoyed absolute immunity from civil liability for damages for their official functions, so long as they do not act in the "clear absence of jurisdiction"' (*Bradley v. Fisher*, 80 U.S. (13 Wall) 335, 351 (1871); see *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Pierson v. Ray, 386 U.S. 547, 553-54 (1967).*[1] Nobody in the US office (elected or appointed) enjoys the absolute immunity against crimes committed while being in the office neither the president of the Republic nor the judges of any court, so the black judicial mantle is not a shield against legal responsibility for committing felonies. Subsequently, court reporters are not shielded against criminal charges in tempering with testimonies or unauthorized modifications of court proceedings.

The Plaintiff filed her lawsuit under different sections of exclusively Title 18 of the United States Code that is entitled 'Crimes and Criminal Procedure'; some of them under chapter 73 'Obstruction of Justice', some of them under chapter 13 'Civil Rights' and some of them under Chapter 96 'Racketeer Influenced and Corrupt Organization

---

[1] Citation is taken from a 1997 monograph of Hon. Patricia Walther Griffin and Rachel M. Pelegrin 'A Look at Judicial Immunity and Its Applicability to Delaware and Pennsylvania Judges' published in Widener Journal of Public Law, Vol. 6, page 385.

Act'. Therefore, the entire legal argument of the Deputy Attorney General is completely irrelevant and inapplicable to the analysis of the case the Plaintiff filed with the Federal District Court.

In his brief the Deputy Attorney General had only one section 'Nature and Stage of the Proceedings" with some content in it; the section 'Statement of Facts' had nothing but his controversial statement about "Shahin's views of facts". The Plaintiff, therefore, combines both sections into one to more or less follow the same structure.

Since the Deputy Attorney General correctly noted that "Some discussion of these proceedings is necessary to assist the court in understanding the background of this matter" the Plaintiff presents the facts not only with her "views" but also with the supporting evidence (even if in the Deputy Attorney's General eyes 'views' and 'evidence' means the same and has a negative connotation because presented by "Shahin").

## A.    The "first" case against the Delaware Federal Credit Union

The State Deputy Attorney General falsified the basic fact of this case and the Plaintiff filed a Motion for Sanction against him pursuant to Rule 11 of Federal Rule of Civil Procedure (F.R.C.P.) and also is vacillating about charging him with a felony of 'accessory after the fact' as defined in 18 *U.S.C.* § 3.

On September 6, 2005 the Justice of the Peace Court judge conducted the proceedings of the Plaintiff and her husband's case against Del-One Federal Credit Union (DEFCU) in a denigrating, humiliating, and insulting manner denying them the basic constitutional rights of 'due process' and 'equal protection' provided by the Fourteenth Amendment to the United States Constitution as well as defying the basic principles of

adversarial hearing that provides the opportunity to both parties to present the evidence related to their case. She discussed the details of the DEFCU response to the court (of which the Plaintiffs' had no idea because nobody bothered to mail them a copy) in a complete exclusion of the Plaintiffs. The Plaintiffs tried to intervene twice to say something: the first time the Plaintiff-husband in response to the 'no-notice' argument mentioned to the judge that he had met the manager of the branch before filing a lawsuit, noted the presence of that manager in the courtroom (whom the Plaintiffs subpoenaed to the court; copy of the subpoena is attached in **Exhibit 2)** and requested a permission to question her under oath but got a denial of his request without any basis or explanation. Second time the Plaintiff-wife mentioned that the Del-One 'offer to pay' was given on a condition that the Plaintiffs would close their account with Del-One, condition Plaintiffs considered illegal in view of the fact that Del-One was in violation of federal law (Regulation CC, 12 CFR 229.12(b)) and refused to close their account. In addition, in the process of making that "offer" the Plaintiff-husband was harassed to the degree that he ended in an emergency room of the Kent General Hospital with a high blood pressure **(Exhibit 3).** In response the judge immediately declared the case dismissed, then turned to the Plaintiff and sarcastically asked her: "Now you do not have to close your account, do you?" The case was over and proceedings took less than 15 minutes. The Plaintiffs (who lived and worked in many countries of Europe, Asia, and Africa before coming to the US) felt insulted and violated as never before in their entire life especially in view of the circumstances of this case. They immediately complained to the JP Court and the complaint was recorded in the Docket Text presented in Deputy Attorney's General **Tab**

4

**B** under the 'case updated' 09/09/2005 date. The docket text is also available as part of the **Exhibit 1.** The response of the Court Manager is attached in **Exhibit 4.**

The Plaintiffs filed a complaint on 09/14/2005 with the Acting Deputy Chief Magistrate, Ernst M. Arndt and received his response along with that of the Honorable Pamela Darling **(Exhibit 5)**. From that letter the Plaintiff learnt for the first time that there appeared to be a Del-One response that should have been mailed to them by the Defendant. Although in all prior cases Defendant's response always came from the JP Court itself and the general response-form to the Defendant from the JP Court does not contain any instructions for mailing his/her response to the Plaintiff but only to the court in a specified time. Mentioning that fact in Acting Deputy Chief Magistrate judge's response alerted the Plaintiffs to the existence of such a document. On 10/19/2005 the Plaintiff specifically requested that document from the JP court clerk marking the date, time and the name of the clerk on the top of the document that contained no date or signature of the Defendant **(Exhibit 6).** The original copy of that document was given up as the Plaintiff's Exhibit 1 in a pre-trial conference of the "second case" (see below) at Court of Common Pleas of Kent County on 11/30/2006.

On September 21, 2005 the Plaintiffs filed an appeal with the Court of Common Pleas of Kent County seeking statutory damages they were entitled to as a matter of federal law but denied by the Court of Common Pleas and on December 21, 2005 attended hearing on the Motion for Summary Judgment filed by the Del-One attorney. The attorney submitted notarized Affidavit from the Compliance Officer of Del-One stating the same claims that were made to the JP Court and which became a perjury at that point or false statement of facts made under the penalty of perjury (stated or implied)

(**Exhibit 7**). Although the scope of Summary Judgment review requires the analysis of the differences of facts between the Plaintiff and the Defendant (or Appellant and Appellee in this case) and the entitlement to judgment as a matter of law by a moving party, the judge affirmed the Motion for Summary Judgment on the fact completely irrelevant to the scope and standard of the Summary Judgment review.

On 08/14/2006 the Plaintiff filed complaint with the Court on the Judiciary citing gross violations of their constitutional rights and received a response (**Exhibit 8**) which is nothing short of substance addressing the issues raised in the complaint and a cover-up. The order of the Court on the Judiciary has in its attachments the Plaintiff's Complaint with all exhibits.

On January 11, 2006, the Plaintiffs filed an appeal in the Delaware Superior Court under 10 *Del.C.* 542(a) that gives "full power and authority" to the Superior Court "to examine, correct and punish the contempts, omissions, neglects, favors, corruptions and defaults of all justices of the peace, sheriffs, coroners, clerks and other officers, within this State". The Del-One attorney's only legal argument on which his entire brief was based pointed to the Del-One claim that they had "offered to correct the error. That was refused by the Appellant's" failing to state that Del-One had no legal right "to offer to correct the error" but were obligated to do so by law and had actually been in violation of the federal law since June of 2005, when they "in error" deducted the NSF fee charge. He failed to disclose that the offer to pay $ 35.00 was conditioned on the Plaintiffs' closing their account with Del-One, illegal and coercive demand in view of the fact that Del-One was in violation of the Regulation CC at that point and were required to restore the amount immediately to the Plaintiffs' account upon becoming aware of the error.

6

Plaintiffs refused to close the account and the Del-One did not pay the money until the JP court obligated them to pay which is an evidence of the Del-One illegal coercion and undue influence in their attempt to obtain the result they wanted – the closure of the Plaintiffs' account with them.  It is the attorney's professional obligation to disclose the relevant and applicable law and precedent and correctly state the facts of the case which he failed to do.  Plaintiff filed a complaint with the Delaware Disciplinary board that indicated in their response to her that the proper authority to determine the violations was the presiding judge (**Exhibit 9)**. The presiding judge of that court, Robert B. Young, falsified the decision of the JP Court to a completely opposite committing the felony of 'obstruction of justice' as defined by 18 *U.S.C.* 1506 and obviously ignoring the violations of rules of professional conduct of the attorney representing the Del-One which is a clear evidence of collusion between the judge and the attorney and a cover-up.

On September 1, 2006 the Plaintiffs filed an appeal to the Supreme Court of Delaware making a detailed analysis of violations of their constitutional rights in their opening brief.  On November 20, 2006, the attorney for the respondent filed a Motion to Affirm under the DE Supreme Court Rule 25(a).  Although the Motion was filed in violation of stipulations of this rule the Supreme Court affirmed the decision of the Superior Court.   In March of 2007 the Plaintiffs filed the Petition for Writ of Certiorari to the Supreme Court of US but the Writ was denied.

The final result of the history of this case is that the Plaintiffs failed to enforce through the entire judicial system of the United States of America (including every venue for complaint on violations of rules of professional conduct by judges and attorneys) the federal law, Expedited Funds Availability Act, enacted by the Congress on August 10,

7

1987 and the Regulations CC through which the Board of Governors of the Federal Reserve System adopted that Act. The judicial system of the State of Delaware failed to enforce not only the Plaintiffs' constitutional rights of 'due process' and 'equal protection' that were supposed to guarantee them the opportunity to present their evidence in courts and have that evidence examined but also the federal law adopted by the Congress of the US. They knocked on every door on their way from the Justice of the Peace Court to the Supreme Court of the United States trying to enforce the U.S. Constitution and the federal law but failed to do so through the judicial cover-up that indicates to a systematic pattern of violations of rules of professional conduct by judges and the attorney; a direct falsification of the facts of this case which raises a question of the judges' adherence to their oath of office and their professional integrity and obligations to the general public especially in cases with *pro se* representation and collusion between the judges and the attorney at the expense of the Plaintiff. The State Deputy Attorney General follows in their footsteps and provides falsification of the basic fact and the cover up under the doctrine of absolute judicial immunity thus possibly committing felony of 'accessory after the fact'.

## *B.* *The "second" case against the Delaware Federal Credit Union*

There is slip of pen in the Plaintiff's Complaint in the date that the lawsuit was filed. Both cases are related to the same check of $ 320 deposited at the Del-One bank on 06/20/2005 and the lawsuit could not be possibly filed on 04/24/2005, it was filed on 06/24/2005 with the "first case" filed on 06/28/2005. After the Justice of the Peace Court hearing held on October 17, 2005 and the decision of that court in favor of the Del-One, the Plaintiff and her husband did appeal to the Court of Common Pleas and the hearing

on appeal took place on January 17, 2007.    This is the only hearing at which the
Plaintiffs were allowed to subpoena all witnesses they wanted and question those
witnesses under the oath. The problem with that hearing is the serious procedural flows
that put in question its legal validity: it was held in the private chambers of the judge
Merrill C. Trader, who was involved with the appeal in "the first case", instead of a
general courtroom; while the Plaintiffs were waiting in the hall with general public the
Del-One witnesses, attorney and representative (compliance officer – Reneé Thompson)
were assembled in private chambers of the judge which indicates the existence of illegal
*ex parte communications* of the judge with the Defendant; when the Plaintiffs were
invited to the room where the hearing took place, the judge, Rosemary Betts Beauregard,
had already been there with the Del-One representative and its attorney which was
another clear indication of *ex parte* communications of the Defendant with the judge;
after hearing Plaintiffs again were removed from that room to the hall with general public
and were forced to wait for a decision for one hour while Del-One representative and the
attorney were congregating with the judge in the Merrill C. Trader's private chambers so
when the Plaintiffs were invited back  to the room for a court decision, Del-One
representative and the attorney had already been there sitting next to each other while the
Plaintiffs were facing both the judge and the Del-One team that symbolized the
opposition of the Plaintiffs against the judge and the Del-One working together against
the Plaintiffs; the Del-One representative was also a witness who was allowed to stay
throughout the entire hearing , thus violating the rule on witnesses. All these violations
are a clear indication of a collusion that resulted in falsification of the transcript of

hearing which is qualified as 'obstruction of justice', under 18 *U.S.C.* § 1512(c)(1) and "racketeering activity" under 18 *U.S.C.* § 1961(1).

In the transcript of the hearing, the attempt was made to change the sworn testimony of the witness, Del-One CEO, Duke Strosser, the testimony of the Del-One compliance officer, Reneé Thompson, the testimony of Plaintiff-husband, and the closing words of the attorney to apparently provide planted 'evidence' of an "offer" that was more than the $ 35.00 that the Del-One "offered" but failed to pay.    It is the Plaintiff's opinion that the attempt was made to provide a cover-up for the Honorable Pamela Darling's claim that Del-One offered to pay and the "pay" was something more essential than the $ 35.00 they were required to pay by law without any preconditions; they tried to plant an 'evidence' of an offer in an exact amount of a maximum penalty provided by Regulations CC in its § 229.21(a) - $ 1,000 **(Exhibit 10).**  To accomplish that goal the amount mentioned by Duke Strosser in his sworn testimony of "couple of thousand" (which was not the 'correct' amount) was removed and "one thousand" was planted in the sworn testimony of Reneé Thompson, Mazen Shahin, and the attorney, Mr. Gregory Morris[2], although the last three had never mentioned any amounts whatsoever in the courtroom.    Making such unauthorized modifications to sworn testimonies of witnesses and the attorney to provide fabricated evidence is a felony of 'obstruction of justice' as defined in 18 *U.S.C.* § 1512(c)(1) 'Tempering with a witness, victim, or an informant'. The Plaintiff requested the Court of Common Pleas permission for access to the tape of the recording to prove that the modifications took place. That request was denied by the

---

[2] See **Exhibit 11,** page 39, first paragraph,  where the amount of "couple of thousand" was removed  after "a significant sum of money" and pages 82 (amount of $1,005 was mentioned by Ms Thompson)  page 83 the amount repeated, page 86 the amount of $ 1,000 was planted in the Plaintiff-husband's closing words and page 90 (4th line from the bottom) where amount of one thousand was planted in the closing words of the Del-One attorney.

judge, Rosemary Betts Beauregard, allegedly on the lack of evidence of "furthering justice" (**Exhibit 12).**

Since on 2/1/2007 the Plaintiffs filed an appeal with the Superior Court from the decision of the Court of Common Pleas (CCP) on 05/17/2007 they filed an appeal from the CCP decision to deny them access to the tape of appeal hearing at Court of Common Pleas. Hearing on the Motion was held on September 21, 2007. During hearing the judge, William L. Witham, severely limited the Plaintiff on what she could say in his courtroom. For example, she could not talk about the applicable law (he knows the law); she could not talk about other cases (other cases are irrelevant); she could not talk about procedural violations during hearing at Court of Common Pleas (the Plaintiff was trying to argue the case) but mentioning of all these limitations imposed by the judge were removed from the transcript of hearing. On the other hand, statements that had never been made by the Plaintiff in that courtroom were added (like the final closing statements), the entire material in the transcript was rearranged to change the scope, the character and the nature of the process. Although the proceedings on the Motion were supposed to be completed on the same day with the judge's decision, the judge was holding the decision until December of 2007 when the Plaintiffs specifically requested a decision. In his decision Honorable    William L. Witham called those alterations of sworn testimonies of witnesses as "clerical errors" (**Exhibit 13**). On 01/28/2008 the Plaintiffs appealed that decision of the Superior Court judge to the Supreme Court of Delaware.    The court requested the Plaintiff to comply with the Rule 42 of the Supreme Court rules of civil procedure "showing cause" and the Plaintiff complied detailing all the illegal modifications made to the transcript of hearing at the Superior Court and the Court

11

of Common Pleas with the reference to the 'obstruction of justice' qualifications related to the case **(Exhibit 14).** Yet, the court denied the access to the tape on the basis of Plaintiff allegedly not complying with requirements of the Rule 42 **(Exhibit 15)** which is absolute nonsense and a simple pretext to bar the Plaintiff from proving illegal modifications made to the transcript at the level of "racketeering activity" as defined by 18 *U.S.C.* 1961(1).

This case at this stage became a symbol of all violations of the Plaintiff's constitutional rights of 'due process' and 'equal protection' and collusion between judges, the attorney, and court reporters at the expense of the Plaintiff.    Procedural violations in this case are so gross that the Plaintiff would question the validity of the court decisions and the Court clear   intention to provide a cover-up for the criminal activity. This case also has extraterritorial federal jurisdiction under 18 *U.S.C.* §1512 (h).

## *C.    The "third" case against the Delaware Federal Credit Union*

In this section the State Deputy Attorney General again provides inaccurate, incomplete, and, therefore, misleading or even false account of the facts and circumstances of the Plaintiff's lawsuit.

The lawsuit filed in October of 2006 cited personal injury related to the harassment of the Plaintiff-husband by the Del-One CEO, Duke Strosser, on the day of their "offer" that landed him in the emergency room of the Kent General hospital with a high blood pressure, so "pain, suffering and emotional distress" is mostly related to that part of the claim; only some was related to the "accounting error", 'run-around' and the perjury committed by the Del-One personnel. Deputy Attorney General did not mention anything about perjury which is a considerable omission meant to present the Plaintiff's

12

claims as "repeated and unwarranted". The description that he gave as a "poor service an accounting mistake" actually relates to violations of specific provisions of Delaware Constitution and different federal laws protecting consumers including Equal Credit Opportunity and Fair Credit Reporting Acts but again the Deputy Attorney General failed to mention these facts which raises the question of what motives did he have to consistently misrepresent the essence and the nature of the Plaintiffs' claims and lawsuits? He falsified the basic fact of the "first case" and even after his correction that the Plaintiff considers as inadequate, he failed to acknowledge that the judge of the Superior court, Robert B. Young, committed 'obstruction of justice' as defined in 18 *U.S.C.* § 1506.

The applicability of the doctrine of *res judicata* in case of "obstruction of justice" as it was committed by the Honorable Robert B. Young is questionable, to say the least. There is an issue of a decision of Superior Court about attorney's fees that was entered at a time when the court had no jurisdiction over the subject matter that the Deputy Attorney failed to mention at all which the Plaintiffs considers a very considerable and deliberate omission.

Plaintiff, therefore, will fill the gaps because this case is rigged with a greater number of violations that the Supreme Court of Delaware refused to acknowledge, correct or provide sanctions for which is another clear indication of collusion.

The original attorney of the Del-One in the beginning of this case continued to be Gregory Morris and he filed a Defendant's response and Affirmative Defenses on 11/15/2006 as docketed by the Superior Court. It appears that on 11/22/2006 the new attorney, Monté T. Squire, from the firm of Young, Conaway Stargatt & Taylor LLP filed

13

a Substitution of Counsel motion with the Superior Court of Delaware and for Kent County **(Attachment 16).**    Rule 90(b) of the Delaware Superior Court Rules of Civil Procedures does not permit the withdrawal of an attorney from the already initiated case except for cases of special order of the court. The Plaintiff has never received such an order neither from the court nor from any of the attorneys. She cannot trace such an order either to the Case History Search **(Exhibit 17)** or the case docket at the Superior Court **(Exhibit 18).** The attorney was chosen from the firm of the judge's brother, Stuart B. Young, so who cares about following the rules especially in *pro se* representation case!!!

On December 16, 2006 the Plaintiff received a Notice of the Motion for a Judgment on Pleadings **(Exhibit 19)** that was mailed by a certified mail with a return receipt **(copy of the envelope in Exhibit 20).** 'Track and Confirm' form from the USPS is presented in **Exhibit 21** and shows the delivery date of 12/16/2006 and time of deliver as 1:41 pm. This Notice of the Motion of 12/15/2006 states that the Motion will be presented to the Court "at the earliest convenience of the Court and counsel" in violation of the Rule 7(b)(1) that specifically requires the Motion to have a date of hearing on the motion to comply with 'written notice' requirement. On 12/21/2006 the attorney, Monté T. Squire electronically filed another Notice of Motion with the Superior Court copy of which has never been mailed to the Plaintiff **(Exhibit 22).** The Plaintiff leant about its existence only after the attorney filed his Response Brief and had a copy of it as Attachment A-23 to this brief. Since that Notice has never been received by the Plaintiff, Plaintiff did not know about the date and time of hearing and did not attend it. It was by coincidence that she submitted her Reply to Motion for Judgment on Pleadings on

14

01/19/2007 because of the appeal hearing in "the second case" on 01/17/2006 that provided (or at least what the Plaintiff thought at that time before the reality of falsifications in the transcript set in) the evidence of perjury, committed by the Del-One personnel in the "first case" the fact specifically mentioned in her Reply Motion that was filed on 01/19/2006 at 9:30 am **(Exhibit 23,** the first page with the court day and time stamp). It took Plaintiff one day to write that Motion after hearing of 01/17/2007 so she submitted the Motion early morning on 01/19/2007 and left. The filing was recorded in the Case History on 01/22/2007 **(Exhibit 17)**. On the same date the judge, Robert B. Young, delivered his decision (exceptional speed!!!) **(Exhibit 24)** in which he cited the doctrine of *res judicata* and made a reference to the final decision in the "first case" that came two days later, i.e. January 24, 2007 and on 1/22/2007, i.e., the date the Honorable Robert B. Young delivered his decision did not exist. If this is not a collusion then it is a communication and coordination of efforts of Superior and Supreme Court judges that raises a question of the courts independence and impartiality. There is also a big question whether the hearing took place because no transcript exists of such a hearing on this motion and no record reflects it on the Case History although the attorney claims that the hearing took place.    It is interesting to note the wording of the Supreme Court in its decision of the situation: "Despite Shahin's contention to the contrary, the record reflects that Del-One's motion was properly noticed on December 21, 2006 with hearing date scheduled for January 19, 2007. Following the hearing, the Superior Court issued an opinion…" **(Exhibit 26,** page 2, paragraph (3)). So, the Supreme Court completely ignored the fact that the Motion had never been  delivered to the Plaintiff (although the Plaintiff provided proof of mailing of 12/15/2006 version of the Motion without date of

15

hearing) and the fact that the Plaintiff did not attended the hearing which violates not only the rules of civil procedures but also the constitutional rights of the Plaintiff for 'due process' and 'equal protection'. It also confirms that the hearing apparently (if it took place) was *ex parte* between the judge and the Defendant and the decision reached by the judge was argued only by the Defendant, but this fact also did not bother the justices of the Supreme Court.    Disregarding all those violations is another testament of the collusion of the Courts and the cover-up provided by the Court for all the violations.

On 02/20/2007 the Plaintiffs filed their appeal to the Supreme Court.    On 02/23/2007 the attorney filed a Motion for Attorney's fees (when the Superior Court had no jurisdiction over the matter) which was supposed to be heard on 03/02/2007 at 11:00 a.m. (**Exhibit 27**). On 02/26/2007 the letter was mailed by the Civil Case Manage stating that the judge has a scheduling problem(?!) (**Exhibit 28**). In response the attorney filed another Motion on 02/26/2007 without a date of hearing on the Motion in violation of the Rule 7(b)(1) (**Exhibit 29**). This is a clear indication of collusion of the judge and the attorney by "cooking" of the decision against the Plaintiff by a court without jurisdiction. On 03/16/2007 the judge delivered a decision awarding $ 2,500 of attorney's fees to the Del-One without any hearing (**Exhibit 30**) and at the time the Superior Court had no jurisdiction. Rule 54(i) of the Rules of Civil Procedures of the Delaware Superior Court specifically prohibits the award of the attorney's fees. The attorney called the Plaintiff 4 days later (on 03/20/2007) trying to collect on that decision. On 03/26/2007 the Plaintiff filed her Petition for Writ of Certiorari with the Supreme Court of the US.    The timing provides an evidence of a collusion to coerce the Plaintiff to abandon her Petition to the United States Supreme Court.

16

On 07/11/2007 the Supreme Court vacated the decision of the Superior court because of lack of jurisdiction but remanded it for a new a hearing (?!) **(Exhibit 31).** The hearing of on the Attorney's fees was schedule for 07/19/2007 and the Plaintiff refused to attend by filing Plaintiff's Notice of not Attending Hearing on July 19, 2007 **(Exhibit 32)** and Motion-Protest and the Request for Court Ruling with the Supreme Court **(Exhibit 33)** listing all the procedural violations and apparent collusions between the courts to coerce and psychologically harass the Plaintiff.    The transcript of that hearing is an outstanding example of *ex parte* communications of the judge and the attorney including "off record" communications **(Exhibit 34).**    On page 5 (top first line) there is a confirmation of the purpose of contacting the Plaintiff about collecting the award, "I did indeed try to contact Miss Shahin to talk about settlement, perhaps, if she'd agree not to bring future litigation based on these same transaction and occurrences, and she flatly rejected that" which is a clear indication of attempt to coerce her. So, the basic point of awarding the attorney's fees in absence of any law or precedent by the court without jurisdiction was to coerce the Plaintiff not to pursue further litigation in her search for justice.

On January 4, 2008 the Plaintiff submitted Motion for Sanctions against the Attorney, Monté T. Squire under the DE Supreme Court Rule 33 and the Federal Rule 11 **(Exhibit 35).**    Supreme Court struck down that Motion for allegedly violating Rule 34 **(Exhibit 36).**    Plaintiff would like to note that a copy of the rule was not enclosed but it reads "The Court may strike any brief, appendix, motion or other paper or document which does not conform to these Rules or which is not within the bounds of professional propriety".    So, the Plaintiff can guess which one (or both?!) applied: The document does

not conform to the Rules?   Or the Motion was not within bounds of professional propriety (of *pro se* litigant?) It is quite obvious that the attorney can violate any rules and there is no mechanism to enforce the rules of civil procedure or canons of professional conduct by a *pro se* litigant in the state of Delaware.

In this case the Plaintiff was not accorded any hearing except for award of attorney's fees by a court without jurisdiction that the Plaintiff justifiably refused to attend since the purpose of the process was to intimidate and harass her.   As a result, the Plaintiff failed to enforce the federal laws (Equal Credit Opportunity and Fair Credit Reporting Acts) as well as provisions of 6 *Del.C.* § 4-103(a)).   She was completely denied the opportunity to prove perjury in the "first case"   in which the same judge committed 'obstruction of justice'; collect on personal injury in the "first case" which the Plaintiff and her husband had never had opportunity to present in the "first case" because the case was pushed through the judicial channels with such violations of their constitutional rights that nobody even tried to listen to them let alone to act upon their claims.

## SUMMARY OF LEGAL ARGUMENT

### I.      A. STANDARD OF REVIEW

### A. 1. *Federal Rule of Civil Procedure 12(b)(1)*

Plaintiff agrees with the Deputy Attorney General that the issue of jurisdiction is of a paramount importance and should be decided at the earliest possible stage. Per 18 *U.S.C.* § 3231 "The district courts of the Unites States shall have the original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States". The Plaintiff brings charges of ***intentional, continuous, and systematic*** denial of her constitutional rights of 'due process' and 'equal protection' provided by but, as Plaintiff regrettably and painfully realized, not guaranteed by the Fourteenth Amendment to the Constitution of the United States. That *intentional, continuous, and systematic* makes a difference between a single occurrence of a judicial misconduct or an unintentional error that is protected by the doctrine of absolute judicial immunity and an overall permeating pattern of corruption, collusion, and cover up that makes enforcement of federal laws completely impossible for a *pro se* litigant in the entire court system of the State of Delaware, where every subsequent court not only fails to correct mistakes committed at lower courts but also multiplies those mistakes by felonies, cover-ups and gross negligence.     That *intentional, continuous, and systematic* level of collusion and corruption reaches the level of criminal conspiracy against the Plaintiff's rights and is the offense against the United States as defined in Title 18 of the United States Code. At that level of misconduct the judges loose their absolute immunity because of the criminality of their actions. Some actions of the judges, attorneys, and court reporters reach the level

19

of 'obstruction of justice' and 'racketeering activity' as mentioned in 18 *U.S.C.* §§ 1512 and 1961 and fall under the extraterritorial federal jurisdiction of 18 *U.S.C.* § 1512 (h).

### A.2. *Federal Rule of Civil Procedure 12(b)(6)*

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the factual allegations of the complaint must be accepted as true. It appears that the Deputy Attorney General violated that rule and falsified the basic fact of the case. The Plaintiff believes that she provided sufficient evidence to support her allegations. The question is how the Deputy Attorney General defines "views" and "evidence" and whether he substitutes one for another?!

## II.    B. SPECIFIC CHARGES AGAINST THE DEFENDANTS

### B.1 – CHARGES THAT STEM FROM THE "FIRST CASE"

#### *Charges against the Justice of the Peace judge - Pamela Darling*

In his letter of July 24, 2008, Deputy Attorney General modified the description of the decision of the Justice of the Peace Court which the Plaintiff found inadequate. Decision of the JP Court judge in the Deputy Attorney's General wording begs the question, 'Why the case in which the Defendant intentionally and defiantly violated the federal law (Regulations CC) for almost three months was dismissed "with prejudice" just on the promise to pay'? The Honorable Pamela Darling provided the answer in her response to the Plaintiff's complaint to the Deputy Chief Magistrate of the Kent County **(Exhibit 5):** 'Two issues became clear. The first issue was that the action should not have been filed because the Defendant was not aware of the debt. Second issue was once Defendant admitted that they had made an error and offered to pay the debt there was no reason for the Plaintiff to go forward. The case was dismissed with prejudice. *The court*

20

*has a responsibility in any action to determine that a complaint is filed correctly and that
there is valid reason to proceed forward with the case'.* (Emphasis in Italics was added
by the Plaintiff). The judge also noted in the same letter that 'There was never a "one
sided" conversation with the Defendant by the court. The court merely ***verified***
(emphasis added by the Plaintiff) that the Defendant did in fact offer to pay the Plaintiff
the $ 35.00 which they were seeking in their action".

    Let us present the "Shahin's views of the facts":

- The first issue of "no notice and no awareness of the debt". The Shahins
  subpoenaed the Manager of the Branch with whom the Plaintiff-husband met
  before filing the lawsuit in the Justice of the Peace Court but the judge, Honorable
  Pamela Darling denied the Plaintiff-husband the right to question her under oath
  in her courtroom. This is how the meeting was described by the manager during
  an appeal hearing on a "second case" because in "the first case" they did not have
  any hearing in which they could have questioned her on the subject: "I don't
  remember that it was the 23rd of June, but I remember when he came and it was a
  busy day, and he was upset and I tried to explained to him that the check had
  already left the office, so we couldn't verify if it was local or non-local. But my
  teller put it on a hold and that's what we had to stand by. Q. Was there any issue
  of local or non-local raised at that point? A. I believe he had said it shouldn't
  have been on a hold and I couldn't debate him with it because I didn't, we didn't
  have a copy of the check".[3]   This statement of the manager, Lisa Brewer,
  contradicts the judge's statement that the Defendant was not aware of the debt
  because it was well aware of the debt and had a notice of the debt but chose to

---

[3] **Exhibit 11,** page 24-25

21

ignore it. As a matter of fact, the manager promised to call back with information about the cost of getting a copy of the check but she never bothered to call. On the second issue of the Del-One "offer to pay", it was contingent on the Plaintiffs' closuring of their account with the Del-One as it is clear from the Del-One response to that lawsuit which had never been officially provided to the Plaintiffs (**Exhibit 6)** where Del-One stated that "Plaintiffs have "refused" to close their account with DEFCU". The offer to pay $ 35.00 erroneously taken from the Plaintiff's account was contingent on their closuring of their account with the Del-One and was not paid until after the court decision entered in the JP courtroom on September 6, 2005. In other words, the payment of $35.00 of erroneously taken fees was used as a coercion to pressure the Plaintiffs to close the account.    So, not only the Defendant was in violation of the federal law (Regulations CC, 12 *CFR* § 229.12) but they also coerced the Plaintiffs to close their account by harassing one of the Plaintiffs to the degree that he ended up in an emergency room. But the judge who acknowledged that "the court has a responsibility in any action to determine that a complaint is filed correctly and that there is a valid reason to proceed forward with the case" dismissed the case with prejudice without allowing the Plaintiffs to present their side of the story with the supporting evidence. The Plaintiff would like to add here that the Regulation CC under which the claim was filed does not provide any requirement for notification or any preconditions before filing a lawsuit. The Plaintiffs were also denied the 'statutory penalties' provided for in 12 *CFR* § 229.21(a) (**Exhibit   10).**

- Justice of the Peace judge, Pamela Darling violated the Plaintiff's constitutional rights of 'due process' and 'equal protection'. In the definition of a 'due process' and 'equal protection' clauses of the Fourteenth Amendment to the Constitution of the United States that evolved over the years by the court system there are 7 elements, 5 of which apply to the appellants' case and which were denied by either Justice of Peace Court or the Court of Common Pleas or both: 1.Notice, 2.Hearing, 3.Impartial Tribunal, 4.Confrontation and Cross-Examination, and 5.Decision on the Record. The fifth element of Discovery and 7th of Counsel do not apply to the Plaintiff's case, and, therefore, are not analyzed here. The substantial if not exclusive contribution as a highest court in the land belongs to the Supreme Court of the United States. "Procedural due process rules are meant to protect persons not from the deprivation, *but from the mistaken or unjustified* deprivation of life, liberty, *or property*" (emphasis added by the Plaintiff), *Carey v. Piphus,* 435 U.S. 247, 259 (1978). Since the Plaintiff's case is related to a debt claim which is a claim for property (money is considered property) the analysis of the requirements developed by the case law that follows is relevant in regard to the last of those three pillars (life, liberty and property) for the protection of which the 'due process' and 'equal protection' clauses of the Fourteenth Amendment are specifically intended.

**1. Notice**     "An elementary and fundamental requirement of due process in any proceedings which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections", *Mullane v. Central Hanover Bank & Trust*

*Co.,* 339 U.S. 306, 314 (1950). See also *Richards v. Jefferson County,* 116 S. Ct. 1761 (1996) (*res judicata* may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected). "The notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest", *Goldberg v. Kelly,* 397 U.S. 254, 267-268 (1970). Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it, *Armstrong v. Manzo,* 380 U.S. 545, 550 (1965); *Robinson v. Hanrahan,* 409 U.S. 38 (1974); *Green v. Lindsey*, 456 U.S. 444 (1982). We, as plaintiffs, were denied a proper notice and the opportunity to prepare adequate response to the defendant's claims and to prove that all those claims were false.

**2. Hearing** "Some form of hearing is required before an individual is finally deprived of a property interest", *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). *"Parties whose rights are to be affected are entitled to be heard"* (emphasis added by the Plaintiff), *Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).* **The petitioners were deprived of any meaningful hearing in both courts: in JP Court they were not allowed to speak at all, in Court of Common Pleas the petitioner was not allowed to complete a sentence, was dismissed as perceived to be insincere, incorrect   or incompetent on a sole ground that she was a woman, a foreign-born, and** *pro se.*

**3. Impartial Tribunal** Just as in criminal and quasi-criminal cases (*Tumey v. Ohio* 273 U.S. 510 (1927)) "an impartial decision maker" is an "essential" right in civil proceedings as well (*Goldberg v. Kelly,* ibid above, pages 254, 271). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken *on the basis*

*of an erroneous or distorted conception of the facts or the law*… (emphasis added by Plaintiff). At the same time, it preserves both the appearance and reality of fairness… by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him", (*Marshall v. Jerico,* 446 U.S. 238, 242 (1980)). We, as plaintiffs, were denied the opportunity to be heard by both courts to establish their claims for not only the money mistakenly taken from their account but also for the money we paid for the court costs and the lost opportunity to use their money for two and half months, a requirement that would have made them "whole" as a result of a proper judicial process and a full application of law.

**4. Confrontation and Cross-Examination** "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses" (*Goldberg v. Kelly,* Ibid above, pages 254, 269). Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or person motivated by malice, vindictiveness, intolerance, prejudice, or jealously, the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination" (*Green v. McElroy,* 360 U.S. 474, 496 (1959).

**6. Decision on the Record** "The decisionmaker's conclusion as to a recipients' eligibility must rest solely on the legal rules and evidence adduced at the hearing…To demonstrate compliance with this elementary requirement, the decisionmaker should state the reason for his determination and indicate the evidence he relied on…" (*Goldberg v. Kelly,* 397 ibid, above, pages 254, 271).

The judge who takes the office was supposed to take an oath "…to solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and I will faithfully and impartially discharge and perform all the duties incumbent upon me as XXX under the Constitution and laws of the United States. So help me God." (28 *U.S.C.* § 453). The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it" (*Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401(1958). If a judge does not fully comply with the Constitution, then his/her orders are void, *In Re Sawyer,* 124 U.S. 200 (1888), he/she is without jurisdiction, and he/she has engaged in an act of treason.

Under 18 *U.S.C.* § 242 'Deprivation of rights under color of law' the judge "willfully subjected" the Plaintiff "to the deprivation" of her rights under the 14th Amendment of the US Constitution and she did so as a "principal" of that act of "deprivation" as defined in 18 *U.S.C.* § 2 'Principals' (a) "Whoever commits an offense against the United States, or aid, abets, counsels, commands, induces, or procures its commission, is punishable as a principal".   She also violated 18 *U.S.C.* § 246 'Deprivation of relief benefits' by denying the Plaintiff statutory damages under 12 *C.F.R.* 229.21(a) apparently because she was a foreign-born women.  She would never have done that to an American.

The judge violated canon 3 of the Delaware Judges' Code of Judicial Conduct that specifically requires her to perform her duties 'impartially and diligently'.  She

clearly failed in the performance of her duties as she defined herself in her answer and as it is defined in the Delaware Code of Judges' Professional Conduct.

## *Charges against the judge of the Court of Common Pleas of Kent County, Merrill C. Trader*

Upon hearing of the Del-One Motion for Summary Judgment in the Court of Common Pleas that took place on December 21, 2005 the Motion was granted by the presiding judge, Merrill C. Trader. Two criteria must be met before any summary judgment may be properly granted: **(1)** there must be no genuine issues of material fact, and **(2)** the movant must be entitled to judgment as a matter of law. Neither of these two-prong criteria was met because there were genuine issues of material facts on basis of which the statutory damages provided by § 229.21(a) had been denied to the Plaintiffs and, therefore, the movant, Del-One, was not entitled to the judgment as a matter of law. The Del-One provided the 'Affidavit' to the its Motion for Summary Judgment **(Exhibit 7)** which in view of the false claims contained therein is a perjury which is under 18 *U.S.C.* § 1621 is a felony. So, the Plaintiffs were denied damages on the basis of felony of perjury. Under Rule 56(g) of the F.R.C.P. the Plaintiffs are entitled to damages.

Although the Plaintiff stated to the judge "Your Honor, yeah, I want to say additionally that we practically in the Court of Peace we were denied our constitutional rights of equal protection, and due process, and this is why we want to hear the case *de novo* in the Court of Common Pleas" (page 12 of the Transcript presented in **Tab B** of the Deputy Attorney's General Exhibits). The judge completely disregarded that and similar statements made in his courtroom. The judge accepted lies from the attorney but dismissed truthful statements made by the Plaintiff:

27

"MS. SHAHIN: But, it was after the court, and the whole premise of our appeal is that we have been denied the right to present our case in the Court of Peace. We have the right to present, because what the Judge claim, and what the defendant-appellee claim is not true. THE COURT: Well, you did present your case, he just ruled against you" page A-22-22 in **Tab C** of the Deputy Attorney's General Exhibits).

The same legal analysis of the abuse of the Plaintiff's constitutional rights applies to this case and, therefore, is not repeated again. Since the transcript was tampered with in order to make it impossible to understand the essence, nature, and the scope of the Plaintiffs' claims the modification of the transcript is considered as 'obstruction of justice' as defined in 18 *U.S.C.* § 1512 (c)(1). The only difference here is that the deprivation of rights under 18 U.S.C. § 241 is made by the judge, Merrill C. Trader, not as a 'principle" but under 18 *U.S.C.* § 3 as an 'accessory after the fact' which is defined in that section as "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact".

The same violation of the requirements of canon 3 was committed by the judge with additional comments that "undue impatience, irritation or sarcasm must be avoided by a Delaware judge, especially when a party is acting as his own counsel. *Wright v. State,* 405 A.2d 685 (Del. 1979)"[4]

"Trial judge has a duty to avoid any language or any conduct which would lead the jury to suspect that the judge is favorable to one party to the trial. *Write v. State,* 405 A.2d 127 (Del. 1979)[5] The charges per 18 *U.S.C.* § 246 levied also against the judge.

---

[4] Comment to canon 3 of the Delaware Judges' Code of Judicial Conduct
[5] Ibid

## *Charges against the Chief Judge of the DE Supreme Court, Myron T. Steel*

The Defendant filed a complaint with the Court on the Judiciary against Pamela Darling and Merrill C. Trader **(Exhibit 8).** The decision of the court was signed by Honorable Myron T. Steel. The basic point of the complaint was the 'deprivation of the Plaintiff of her constitutional rights' but the Order of the court failed to address the issue and ruled in paragraph 7, "The complaint is subject to dismissal, *sua ponte*, pursuant to Rule 5(b)(3) and (4) of the Rules of the Court on the Judiciary. It is clear from the face of the complaint that the allegations of judicial misconduct (a) stem from the Complainant's disagreement or dissatisfaction with the judicial officers' legal rulings: (b) do not allege judicial misconduct; or (iii) allege judicial misconduct in a conclusory or conjectural fashion that does not invoke the jurisdiction of the Court on the Judiciary. Where the Complainant suggests that either Judge Trader or Judge Darling abused the court's discretion, erred during the court's proceedings, or erred in the disposition of her case, the Complainant's claims were, or could have been subject to appellate review". **(Exhibit 8**, page 3-4 of the Order). The Chef Justice of the DE Supreme Court, Myron T. Steel, committed the felony of conspiracy against the Plaintiff's rights as defined in 18 *U.S.C.* § 242 although he took the oath of judicial office, and acted an 'accessory after the fact' as defined in 18 *U.S.C.* § 3. He also violated the requirements of the same canon 1 and 3 of the Delaware Judges' Rules of Professional Conduct. No wonder that the decision of the appellate court (Superior Court under the presiding judge Robert B. Young) issued his decision on August 3, 2006  falsifying the decision of the JP Court to a completely opposite version, the falsification (repeated by the Deputy Attorney General in his Brief in Support of the Motion to Dismiss this lawsuit)  in order to provide cover

29

up and justification for the denial of the Plaintiff's basic constitutional rights (copy of the decision is provided in the Deputy Attorney's General **Tab A).**

### *Charges against the Judge of the Superior Court of Kent County, Robert B. Young*

It is absolutely clear that the decision of the Justice of the Peace Court in the "first case" is couched in two different versions: one a formal decision upon transfer to the Court of Common Pleas that reads: "On September 6, 2005 judgment by trial was entered by Justice of the Peace Court No. 16 in favor of Nina Mazen Shahin and against DE Federal Credit Union fir $35.00"; and another so called 'docket text' that reads "A debt action is filed when a party refused or does not pay. In this case the Defendant was never given opportunity to pay the debt prior to Plaintiff filing case. After filing Defendant reviewed their record and admitted they had made an error and offered to correct the error. This was refused by Plaintiff. Defendant has agreed to credit the Plaintiff account in the amount of $35. Case dismissed with prejudice". None of these versions could have been served as a basis for the interpretation given to the JP court decision by the Superior Court judge, Robert B. Young: "The Shahins initiated their claims against DFCU in the Justice of the Peace Court, seeking reimbursement for a $35.00 fee assessed to their account for insufficient funds ("NSF fee"). ***THE MAGISTRATE HELD IN FAVOR OF DFCU AFTER LEARNING THAT DFCU CREDITED THE SHAHIN'S ACCOUNT FOR THE $35.00 NSF FEE***". (Copy of the Decision is provided in his **Tab A** by the Deputy Attorney General).    There are at least two falsified facts in this interpretation: that the Magistrate held in favor of DFCU for $35.00 and that the court learnt that the DFCU credited Shahins' account for $ 35.00 of NSF fee. These falsifications were made by a judge of the appellate court that only reviews the decisions of prior courts and is not

30

in a position to change or nullify the determination of facts by a lower court thus making it void. The actions of the judge in its falsifications of the decision of the JP Court falls under the definition of the 18 *U.S.C.* § 1506 'Theft or alteration of record or process' and also made him a 'principal' and an 'accessory after the fact" as defined in 18 *U.S.C.* §§ 2-3. Not only the judge committed a felony defined in Chapter 73 'Obstruction of Justice' but he also knowingly and intentionally provided cover-up for the reported to him violations of the Plaintiff's constitutional rights thus violating his oath of office. Since he was the second appellate judge who decided to disregard the reported to him facts of constitutional rights violations he is also subject to charges under 18 *U.S.C.* § 241 'Conspiracy against rights'.

## *Charges against the Supreme Court Justices: Jack Jacobs, Carolyn Berger, Henry Dupont Ridgely*

On November 20, 2006 the Attorney for Del-One filed a Motion to Affirm under the Delaware Supreme Court Rule 25(a) of Rules of Civil Procedures that allows for such an expeditious process only under 2 or 1 out of the three conditions: **1.** The issue is clearly controlled by settled Delaware law; **2.** The issue on appeal is factual and clearly there is sufficient evidence to support the jury verdict or findings of fact below; or **3.** The issue on appeal is one of judicial discretion and clearly there was no abuse of discretion. The Plaintiff's case did not fall under any of the three provisions: there was no any settled DE law that would specifically prohibit the recovery of statutory damages under federal law and the attorney did not cite any such a Delaware law. The issues of facts were extremely controversial in view of gross violations of the Plaintiff's constitutional rights and there was a gross abuse of discretion by judges who all committed felonies either as

31

'principals' or as 'accessories after the fact'. Yet, the judges of the Supreme Court affirmed the Motion in spite of all these violations, the action that put in questions their professional integrity, qualifications and also made them 'accessories after the fact' in 'conspiracy against the Plaintiff's rights as defined in 18 *U.S.C.* § 241. Since they also took an oath of office, ignoring facts of reported to them violations of constitutional rights put them in violation of their oath of office.

And the last but not least: taking into consideration that the judge Robert B. Young committed felony of 'obstruction of justice', filing the Motion in violation of the rule under which it is allowed to be filed and affirming that Motion indicates a collusion between the judges and the attorney and cover-up of the felony.

### B.2. CHARGES THAT STEM FROM "THE SECOND CASE"

#### *Charges against the Court of Common Pleas Judge, Rosemary Betts Beauregard*

Appeal hearing on "the second case" at the Court of Common Pleas was held on January 17, 2007. Although this was the only hearing at which the Plaintiffs were allowed to speak and question all the witnesses they wanted to subpoena the process was rigged with serious procedural violations:

- *Ex Parte* Communications with Del-One Representative and the Attorney

  Hearing on the motion was held not in public courtroom but in private chambers of the judge, Merrill C. Trader, that is charged with violations of the Plaintiff's constitutional rights in "the first case". Before the hearing the Plaintiffs were waiting in a hall with general public while the Del-One witnesses, representatives and the attorney were assembled in private chambers far from the public eye in apparent *ex parte* communications with the judges (Merrill C. Trader and

32

Rosemary Betts Beauregard). When the Plaintiffs were asked to enter the room in which the hearing was conducted the judge, Del-One attorney, and Del-One representative – compliance officer, Reneé Thompson, were already there sitting next to each other and facing the Plaintiffs at the opposite end of the table. Plaintiff was so shocked that she even asked about the witnesses of whom she had seen none in general hall. The answer of the court was that "They're out in the waiting room." **(Exhibit 11, page 4).** The story repeated after the hearing. The Plaintiffs were shoveled to the general hall without allowing them to properly collect the papers while the attorney and Ms Thompson were congregating with the judges.

- Violation of the Rule on Witnesses

    Although Ms Reneé Thompson was Del-One compliance officer and the witness whom the Plaintiffs subpoenaed to the hearing she was allowed to be present throughout the entire hearing process which (the Plaintiff is absolutely convinced) contributed to the subsequent tempering in the transcript with sworn testimonies of witnesses. She was the interested party who committed perjury in the "first case" and by allowing her to be present also allowed Del-One the opportunity to hear all the testimonies and modify some of them so that those testimonies would cover her rear end as well as provide some cover for the actions of the JP judge, Pamela Darling.

- Tempering with sworn testimonies of witnesses

    And the final result of all the violations was the tempering with the transcript where the sworn testimony of Del-One CEO, Duke Strosser, the testimony of Ms

Thompson, one of the Plaintiffs, and the attorney were modified to provide some validity to the Del-One claim of "offer to pay". Since offering $35.00 that the judge, Pamela Darling, claimed they had offered to pay, was not exactly the payment that can be offered but rather an immediate and unconditional obligation to pay, attempt was made to modify that amount to something more substantial and more close to the maximum amount of penalty under the Regulations CC. The judge of the Court of Common Pleas, Rosemary Betts Beauregard, denied the Plaintiff access to the tape of hearing. In view of all these facts, the Plaintiff charges her with the prohibited '*ex parte*' communications of the judge with the Defendant and its representatives and the attorney, which is a violation of requirement of canon 3 of the Delaware Judges' Rules of Professional Conduct. Having hearing in private chambers and allowing the presence of a witness is violations of cannon 2. The Plaintiff was deprived of a fair trial and an impartial judge which is a violation of her constitutional rights of 'due process' and 'equal protection' and also violation of the oath of the judicial office. Tempering with the sworn testimonies of the witnesses could not have been accomplished without the judge's direct and tacit approval, and, therefore, is an indication of a collusion between the judge, court reporter, and the Del-One attorney and representatives. All the violations are an evidence of collusion[6] and also with the purpose to provide some legal cover-up for the JP Court judge's slips, Rosemary Betts Beauregard is a 'principal' and an 'accessory after the fact' in 'conspiracy against rights' as defined by 18 *U.S.C.* §§ *2-3, and* § 241. Tempering with a witness is a felony of 'obstruction of justice' as defined by 18 *U.S.C.* 1512 (c)(1) and under

---

[6] Collusion is defined as "An agreement between two or more persons to defraud someone of his or her rights by the forms of law", West's Legal Desk Reference, West Publishing Co., Williams P. Stasky et al, St. Paul, MN 1991, p. 57

18 *U.S.C.* 1961(1) is considered as a "racketeering activity" and falls under the provisions of the Racketeer Influenced and Corrupt Organization (RICO) Act damages under which are tripled.

### Charges against the judge of the Superior Court, William L. Witham

Charges against the judge stemmed only from the issue related to the tempering with the sworn testimonies of witnesses in the Court of Common Pleas and, subsequently, in his courtroom on appeal for access to the tapes of the recording. After the judge of the CCP denied the Plaintiff's access to the tape of the recording of hearing of 01/17/2007 the Plaintiffs filed a Motion with the Superior Court and the hearing on the Motion was held on September 21, 2007. The decision on the Motion was held until December 2007 (**Exhibit 13).** In that decision the judge, William L. Witham called tempering with sworn testimonies of witnesses 'clerical errors' and denied access to the tape. The transcript of hearing on the motion at Superior Court contained so gross changes that in aggregate they amounted to the actions defined in 18 *U.S.C.* §1512(c)(1). With tempering of witnesses in transcript of hearing at Court of Common Pleas this was the second incident of unauthorized changes in the transcripts related to the same case, the third modification in transcript in two related cases and the second incident happened to the same court reporter, Linda Lavender. Plaintiff has no any doubt that the tempering with the transcripts was made with either permission or direct sanctions of the presiding judges, which makes it a collusion between three parties: the judge, the court reporter, and the Defendant against the Plaintiff. The judge also committed the felony of 'obstruction of justice' as an 'accessory after the fact' as defined in 18 *U.S.C.* § 3 in 'conspiracy against

rights' as defined in 18 *U.S.C.* § 241. His actions also violate the oath and rules of professional conduct that require integrity and impartiality.

### B.3  CHARGES THAT STEM FROM THE "THIRD" CASE

#### *Charges against the Judge of the Superior Court, Robert B. Young*

Since in his decision Honorable Robert B. Young completely falsified the decision of the JP Court in the "first case" he committed a series of different violations that demonstrate his bias towards the Plaintiff and collusion with the new attorney from his brother's firm to defraud the Plaintiff and her husband of their constitutional rights to a fair trial, 'due process', 'equal protection' and frustrated their attempts to enforce federal laws that protect consumers against predatory and unfair practices, as well as imposed penalty of paying attorney's fees when he had no jurisdiction, without hearing, and without any reference to any supporting law or precedent and in violation of a specific rule of the Superior court and subject jurisdiction which indicates that that decision was maid in collusion with the attorney and with the aim to coerce and punish the Plaintiff.

- The change of attorneys was made in violation of Rule 90(b) that stipulates that no withdrawal of attorney can occur "except as permitted by order of the Court" and the judge has never issued such an order which made the attorney from his brother's firm an illegitimate attorney.

- His decision on Motion for a Decision on Pleadings was made without any proper hearing at which the Plaintiff would have been present which violates not only the constitutional rights of the Plaintiff of 'due process' and 'equal protection' but also the Rules of Civil Procedures of the Delaware Superior Court, in particular,

36

Rule 7(b)(1). The Notice of hearing was fraudulently presented by the attorney who filed one notice with the court and completely different with the Plaintiff. The actions of the attorney here represent a classical example of a fraud. Fraud is defined as a 'harmful, false and deceptive statement of facts'[7]. There are seven elements of the tort of fraud that are all present here: (a) statement of past or present fact or a concealment of past or present fact or a nondisclosure of past or present fact where there a duty to disclose; (b) the statement is false; (c) the intent to deceive in some state this element is met by negligently misleading the victim; (d) the defendant intends to have the victim rely on the statement or has reason to believe that the victim rely on it; (e) the victim actually relies on it; (f) the victims reliance is justifiable; (g) the victim suffers actual damages.[8] The analysis of all 5 elements of 'due process' and 'equal protection' applicable to the Plaintiff's case are also relevant here but not repeated. Therefore, the decision of the judge on the Motion for Judgment on Pleadings was a result of fraudulent collusion and is a proof of illicit activity between the judge and the attorney that can be characterized as collusion.

- When the judge had no jurisdiction over the case because of an appeal timely filed with the Supreme Court he issued an order for attorney's fees on a motion that had been submitted in violation of the Superior Court Rule 7(b)(1) of a written notice, rules 54(d) of the time of application for court costs and 54(i) which specifically prohibits award of attorney's fees; all these violations indicate a collusion between the judge and the attorney to penalize, intimidate, and coerce

---

[7] West's Legal Desk Reference, West Publishing Co., William P. Statsky et. al., St. Paul, MN 1991, page 111
[8] Ib

the Plaintiff. This is an offense defined in 42 *U.S.C.* 1985(2) 'Conspiracy to interfere with civil rights'.[9]

In view of all these violations the judge demonstrated bias towards the Plaintiff that violates the requirement of canon 3 of Delaware Judges' Rules of Professional Conduct, violation of his oath of office, and made him a 'principal' (18 *U.S.C.* § 2) to conspire with the attorney, Monté T. Squire against the Plaintiff's constitutional rights as defined in 18 *U.S.C.* 241. Under federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law as trespassers." (*Elliot v. Piersol,* 1 Pet. 328, 340, 26 U.S. 328, 340 (1828). When judges act when they do not have jurisdiction to act, or they enforce a void order (an order issue by a judge without jurisdiction), they become trespassers of the law, and are engaged in treason. The U.S. Supreme Court, in *Schuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected <u>in his person</u> to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the

---

[9] "If two or more persons in any State…conspire to deter…by…intimidation, or threat, any party…in any court of the United States …from testifying to any matter pending therein, freely, fully, and truthfully…; or if two or more persons conspire for the purpose of impeding, or defeating, in any manner, the due course of justice in any State…with intent to deny to any citizens the equal protection of the laws…"

United States." (Emphasis supplied in original). Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *U.S. v. Will,* 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); *Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821).

### *Charges against Supreme Court Judges M. Steel, Jack Jacobs, and Henry DuPont Ridgely*

These judges issued an order on appeal from the decision of the Superior Court, providing cover up for all the violations of the Plaintiff's constitutional rights, federal laws and rules of civil procedures of Delaware Superior and Supreme Courts which made them conspirators against the Plaintiff's rights as defined in 18 *U.S.C.* 241 and as 'accessories after the fact' as defined in 18 *U.S.C.* 3 and trespassers who are trying to enforce the null and void decision of the judge who had no jurisdiction with the sole purpose to harass and intimidate the Plaintiff per 42 *U.S.C.* § 1985(2).

### B.4 CHARGES AGAINST COURT REPORTERS, LINDA LAVENDER OF COURT OF COMMON PLEAS AND SHEILA DOUGHERTY OF SUPERIOR COURT OF DELAWARE (ALL THREE CASES)

**Linda Lavender** was a court reporter who compiled the transcripts of the Court of Common Pleas hearings on Motion for Summary Judgment held on December 21, 2005 in the "first case" and on appeal on January 17, 2007, in the "second case". The first transcript had changes that made completely undistinguishable and blurred the essence of the Plaintiff's claims in both of her cases and also inserted addition of the last sentence that attempted to change the character and conclusion of that court hearing and the second transcript had modifications that tempered with the sworn testimonies of two witnesses, Plaintiff-husband and the attorney. Those modifications amount to 'obstruction of justice' as defined in 18

39

*U.S.C.* 1512 (c)(1) and also defines those acts as "racketeering activity" of 18 *U.S.C.* 1961 (1) which is "The Racketeer Influenced and Corrupt Organization" (RICO) Act.

**Sheila Dougherty** compiled transcript of hearing held on the Plaintiff's motion for Access to the tape of hearing on Appeal in "the second case" at Superior Court on September 21, 2007. In that transcript the court reporter rearranged the entire material of proceedings in such a way that completely changed the nature, scope and character of the proceedings by completely removing certain parts, inserting parts that had never been spoken and changing places by moving material around. All those changes amount to actions falling under the definition of 18 *U.S.C.* 1512 (c)(1) and also defines those acts as "racketeering activity" of 18 *U.S.C.* 1961 (1) "The Racketeer Influenced and Corrupt Organization" (RICO) Act.

## CONCLUSION

The Delaware State Attorney General falsified or omitted facts, thus stripping himself of the right to apply the law that he claimed is applicable to the Plaintiff's case. By falsifying basic fact in "the first case" from which all other problems in this and other cases are derivative he raised questions about his professional integrity, the quality of his work, and his underlying motives.  He obviously did not want to see violations of the Plaintiff's rights and 'obstruction of justice' and the fact that those violations were not reported, corrected, or addressed in any way, shape, or form at any stage of appeals in any court of the State of Delaware. As a result, the Constitution of the United States was violated, the federal laws were violated and the Plaintiff failed to use the judicial system to enforce them.  Just the opposite, she was penalized for trying to enforce the law, rules of civil procedures, and canons of professional conduct.

The Plaintiff, therefore, asks this Court to deny the Deputy Attorney's General Motion to Dismiss the Plaintiff's lawsuit.

It is the Plaintiff's strong belief that the presiding judge, Gregory M. Sleet, should have excused himself from the case under 28 *U.S.C.* § 455(b)(1) since he denied the Plaintiff the benefits of the Delaware Constitution in case 06-289 GMS citing after the Deputy Attorney General, Stephani Ballard, obsolete law and precedents.  In case 07-373-GMS (which is closely related to this one) the Honorable Gregory M. Sleet dismissed the case on 11/14/2007 after on 10/25/2007 the Plaintiff changed her pleas in the case from constitutional rights violations to the RICO Act.  There are retaliatory

41

actions from the State of Delaware against my husband who declined to join me in this lawsuit specifically of fear of retaliation. During this summer he had all his documents related to his summer pay disappear, so he has not been paid for his summer programs that he is currently running; state played with his term life insurance and after its cancellation tempered with premiums on that insurance (which continued to be deducted) then with long-term care insurance; 529 plan for our grandchild; and some accusations of mishandling of computations on scholarship pays (which he had nothing to do with) for his students in 'Bridge to the Doctorate' program, just to name a few. The Plaintiff, therefore, requests the decision on this Motion and the supporting brief from a three-judge panel per local rules 9.2 of Civil Procedure and 28 *U.S.C.* § 2284.

Respectfully submitted on this day of July 31st of 2008.

For the Plaintiff:

**NINA SHAHIN, CPA**
103 Shinnecock Rd.
Dover, DE 19904
Tel. (302)678-1805

**Dated: July 31st, 2008**

42

## CERTIFICATE OF SERVICE

### I, NINA SHAHIN, CPA

Hereby certify that one true copy of this Motion in Opposition to the Deputy Attorney's

General Memorandum in Support of the Motion to Dismiss Plaintiff's Complaint have

been personally delivered today, July 31st, 2008 to the attorney's office at the following

address:


**Kevin R. Slattery**Deputy Attorney General
Carvel State Office Building
829 North French Street/ 6th Floor
Wilmington, DE 19801

*all other parties are served per the list attached*


**Date: July 31, 2008**

(signature)

**Nina Shahin, CPA**

## Search Results

Norman H. Brooks, Jr
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, DE 19801


Richard H. Morse
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391


Theodore John Segletes, III
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, DE 19801


Nina Shahin
103 Shinnecock Road
Dover, DE 19904


Kevin R. Slattery
Department of Justice
820 N. French Street, 8th Floor
Carvel Office Building
Wilmington, DE 19801

# UNITED STATES DISTRICT COURT

### FOR THE
## DISTRICRT OF DELAWARE

**NINA SHAHIN**             )
Plaintiff                 )
           v.           )    **Civil Action No. 08-295**
                )
**PAMELA A. DARLING et al**    )
Defendant             )

## MOTION FOR SANCTIONS AGAINST STATE ATTORNEY, KEVIN R. SLATTERY, UNDER RULE 11 OF FEDERAL RULES OF CIVIL PROCEDURES

The Plaintiff, Nina Shahin, files this Motion for sanctions under Rule 11 against the attorney, Kevin R. Slattery, for falsifying facts presented to the Federal Court for the District of Delaware in his Memorandum in Support of Motion to Dismiss Complaint. Federal Rule 11(b)(3) of Civil Procedures requires any party to a lawsuit to make sure that "the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after reasonable opportunity for further investigation or discovery;"

In his section entitled "Nature and State of the Proceedings" on the first page the attorney presented in the part A. 'The "first" case against the Delaware Federal Credit Union' the following "facts": "The Honorable Pamela A. Darling ("judicial defendant Darling") was the Magistrate who presided over the Justices of the Peace Court trial. Upon learning that Del-One had admitted the error and had credited the $ 35.00 to the Shahins' account on the date of the trial, the Magistrate dismissed the action with

1

prejudice." The subscript 2 made a reference at the end of that sentence to the claim that Del-One did not learn of the error until it was served the JP Court complaint.

The above-presented description of the facts is completely falsified and cannot be supported by any original evidence and the decision of the Superior Court that falsified the facts is not such evidence. The evidence the attorney presented to support these claims in his Exhibit B is the copy of the docket text from the JP Court on two pages which has the most important piece – the front page- entitled "Transcript of Judgment and Execution for Transfer to Kent County Court of Common Pleas" missing which made his presentation of evidence incomplete, and statement of facts – inaccurate, to say the least, or, more correctly, completely falsified. The Plaintiff attaches in **Exhibit A** to this Motion the entire three-page record of the case from the JP Court including the front page of "Transcript of Judgment" that provides the complete judgment entered by the Honorable Pamela A. Darling: "On September 6, 2005 judgment by trial was entered by Justice of the Peace Court No. 16 in **FAVOR OF NINA MAZEN SHAHIN AND AGAINST DE FEDERAL CREDIT UNION FOR $ 35.00" (EMPHASIS BY BOLD AND CAPITAL LETTERS IS ADDED BY THE PLAINTIFF).**

In the Honorable Pamela A. Darling's courtroom it was soundly established that $35.00 of erroneously deducted Non Sufficient Funds (NSF) fee had not been paid. The fee was paid on the date of the court hearing, i.e. 09/06/2005 (this is the only true statement of the attorney) but it was made two hours after the court decision and **PERSUANT TO THAT DECISION.** The Plaintiff provides in **Exhibit B** to this Motion a copy of the Del-One deposit slip made on that date with the Compliance Officer of the Del-One Reneé Thompson's business card and her handwritten note that reads

2

"The following fee has been placed back into your account **PER JUSTICE OF PEACE COURT DECISION.**"   In **Exhibit C** to this Motion the Plaintiff provides a copy of the Notice of the JP Court hearing that demonstrates that the hearing was at 1:00 PM (it took only 15 minutes of proceedings) and the deposit slip  has a time of deposit as 3:12 PM, i.e. two hours after the decision of the court.

The Plaintiff and her husband has never officially received the Defendant's response with their claims of "no notice" and "their offer to pay" neither from the JP Court nor from the Defendant, were not allowed to speak at Honorable Pamela A. Darling's courtroom without penalty, present any evidence, or question the Manager of the branch whom they subpoenaed to the court which are gross violations of their constitutional rights under Fourteenth Amendment of the US Constitution.    The discussions in the courtroom were only between the judge and the Del-One representative who were allowed to speak and present their claims and the judge listened only to the Defendant's arguments. There is, therefore a question of why the judge that established in her courtroom that the violation of  Regulations CC had occurred denied the plaintiffs their rights for court fees and damages under the statutory penalties provided by § 229.21 of these Regulations.

The Attorney Kevin R. Slattery, presented in his Exhibit C a copy of the transcript of hearing at Court of Common Pleas on the Del-One attorney's Motion for Summary Judgment held on 12/21/2005. The Del-One attorney described the decision of the JP court in the following terms:

"MR.MORRIS: The first one, which I filed the motion for summary judgment, was actually a defendant's verdict in one respect, and a plaintiffs' verdict in the other respect.

3

Essentially what happened is the defendant came into court, told the Court that they were willing to credit the plaintiffs' account in the amount of $35, which had been refused by plaintiffs, and then based upon that statement, the Court essentially initially found, or dismissed it with prejudice, but the docket sheet seems to indicate they entered judgment for $ 35 for the plaintiffs without court costs, and interest" (page A-16, middle of the page); THE COURT: Well, this is the case where the judgment was entered in their behalf?" MR. MORRIS: Correct. THE COURT: For   $ 35.00. MR. MORRIS: Well, Your Honor, it's really bizarre… THE COURT: That's what the transcript… MR.MORRIS: …because if you look at the docket sheet, and the judgment itself, and I think I've attached this one.  Essentially what it said is a debt action… this is the notice of action which is signed by the Justice of the Peace Court, it's not the docket sheet, it's September 6th, 2005, a debt action is filed when a party owes money, refuses or does not pay". (Page A-19).

The Superior Court Judge Honorable Robert B. Young's decision that is supposed to be based on the review of the lower court decision actually falsified that decision to a completely opposite: "The Magistrate held in favor of DFCU after learning that DFCU credited the Shahin's account for the $35.00 NSF fee". (A copy of the decision was presented by the attorney in his Exhibit A).  Such a falsification of the lower court decision to a completely opposite falls under the definition of 'obstruction of justice' as presented in 18 *U.S.C.* § 1506 'Theft or alteration of record or process; false bail' -- "Whoever feloniously steals, takes away, **alters, falsifies**, or otherwise avoids any record, writ, process, or other proceedings, in any court of the United States, whereby any judgment is **reversed (N.S.)** made void, or does not take effect; …

4

Shall be fines under this title or imprisoned more than five years, or both".     Therefore, the Honorable Robert B. Young committed felony of obstruction of justice against which he has no immunity absolute or limited.

By falsifying these most basic and exceptionally important facts of this case the state attorney tries to nullify the very essence of the legal basis of the Plaintiff's claims and he also violates the canons of attorneys' professional conduct.

The Plaintiff therefore seeks the sanctions against the attorney for falsification of the above-presented facts without having any evidence to support his claims.

Submitted on this 16th day of July of 2008.

For Plaintiff:

**Nina Shahin**

103 Shinnecock Rd.
Dover, DE 19904
Tel. # 302-678-1806

**EXHIBIT A**

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

**COURT ADDRESS:**
**480 BANK LANE**
**DOVER DE 19904**

TRANSCRIPT OF JUDGMENT AND EXECUTION FOR
TRANSFER TO KENT COUNTY COURT OF COMMON PLEAS

**PLAINTIFF:**

NINA MAZEN SHAHIN                    **CIVIL ACTION NO.**J0507004516
103 SHINNECOCK RD.                    JUDGMENT:$35.00
DOVER DE 19901
302-678-1805

v.

**DEFENDANT:**
DE FEDERAL CREDIT UNION
150 EAST WATER STREET
DOVER DE 19901
302-739-4496

ON SEPTEMBER 6, 2005 JUDGMENT BY TRIAL WAS ENTERED BY
JUSTICE OF THE PEACE COURT NO. 16 IN FAVOR OF NINA MAZEN
SHAHIN AND AGAINST DE FEDERAL CREDIT UNION FOR $35.00.



This is to certify that this is a true and
correct transcript of the judgment and
Constable's return of execution.

_____
Justice of the Peace/Court Official

Date: SEPTEMBER 20, 2005

J.P. Civ. Form No. 24 (Rev. 6/15/00)

```
              JUSTICE OF PEACE CIVIL DOCKET - COURT 16
                       AS OF 09/20/2005                    PAGE     1
```

CIVIL ACTION NO. J0507004516

FILED  06/28/2005                      DEBT ACTION
                                       NON-ARBITRATION
                                       NON-JURY TRIAL

*** L I T I G A N T S ***

NINA M SHAHIN

------ VS ------

DE FEDERAL CREDIT UNION

```
      EVENT
NO.   DATE              DOCKET TEXT
```

2  07/06/2005  FILING DATE: 06/28/2005 FEE:  30.00 RELIEF AMT:    35.00
               PERSONAL PROPERTY VALUE:        OTHER AMT:    15.00
               PRE INT RATE:      PRE INT AMT:
               POST INT RATE:
               OTHER-SUBPOENA FOR LISA BREWER, BRANCH MANAGER

3  07/06/2005  NOTICE(S) GENERATED: 07/06/2005

4  07/06/2005  FORMS GIVEN TO:CONSTABLE COURT 16
               DATE: 07/07/2005

5  07/18/2005  RETURN OF SERVICE POSITIVE FOR AND DATE SIGNED FOR:
               DE FEDERAL CREDIT UNION  - 07/14/2005
               SIGNED BY IF DIFFERENT THAN NAME ABOVE:
               JANE WASHINGTON

6  07/29/2005  CASE UPDATED: 07/29/2005
               7/28/05 -PER JUDGE DARLING LETTER SENT TO PLAINTIFF
               STATING:THE COURT IS REQUIRING THAT WITHIN 15 DAYS
               YOU SUPPLY THE COURT WITH THE FOLLOWING INFORMATION
               CONCERNING CASE #'S J0507004516, AND J0506073516:
               THE AMOUNTS OF THE CHECKS, CHECK NUMBERS AND EXACT
               DATES IN WHICH YOUR ACCOUNT WAS DEBITED FOR NON-
               SUFFICIENT FUNDS.  FAILURE TO SUPPLY THE COURT WITH
               THE ABOVE INFORMATION BY 8/12/05 WILL RESULT IN THE
               CASES BEING DISMISSED.

7  08/15/2005  TRIAL SCHEDULED:  Tuesday 09/06/2005 01:00 PM
               TO BE HEARD WITH CA# J0507004516.

8  08/15/2005  NOTICE(S) GENERATED: 08/15/2005

9  09/06/2005  9/6/05 A DEBT ACTION IS FILED WHEN A PARTY OWES MONEY
               AND REFUSED OR DOES NOT PAY. IN THIS CASE THE DEFENDANT
               WAS NEVER GIVEN OPPORTUNITY TO PAY THE DEBT PRIOR TO
               PLAINTIFF FILING CASE. AFTER FILING DEFENDANT
               REVIEWED THEIR RECORDS AND ADMITTED THEY HAD MADE AN
               ERROR AND OFFERED TO CORRECT THE ERROR. THIS WAS
               REFUSED BY PLAINTIFF. DEFENDANT HAS AGREED TO CREDIT

```
                JUSTICE OF PEACE CIVIL DOCKET - COURT 16
                       AS OF 09/20/2005                    PAGE    2
```

CIVIL ACTION NO. J0507004516
                    PLAINTIFF ACCOUNT IN THE AMOUNT OF #35.00. CASE
                    DISMISSED WITH PREJUDICE.

10  09/06/2005  JUDGMENT MAILED: 09/06/2005
                APPEAL PROCEDURES INCLUDED

11  09/09/2005  CASE UPDATED: 09/09/2005
                9/7/05-RECV'D LETTER OF COMPLAINT FROM NINA SHAHIN
                CONCERNING JUDGES DECISION IN THIS CASE.
                9/7/05-SENT LETTER TO PLAINTIFF STATING:
                JUDICIAL OPERATIONS MGR DOES NOT REVIEW THE CASE
                DECISIONS OF THE JP JUDGES, NOR DO I DIRECT THEM HOW
                ANY INDIVIDUAL CASE SHOULD BE HANDLED.
                INCLUDED IN THE LETTER OF NAMES AND ADDRESSES OF
                DCM AND CHIEF MAGISTRATE FOR FILING COMPLAINTS.
                STATED ALSO THAT APPEAL PROCEDURES WERE INCLUDED
                WITH THE ORDER.

12  09/20/2005  APPEAL - CASE APPEALED TO COURT OF COMMON PLEAS
                TRANSCRIPT REQUESTED BY:NINA SHAHIN
                DATE TRANSCRIPT ISSUED:9/20/05
                FEE PAID:   $10.00
                DOCKET ABOVE IS A TRUE AND CORRECT COPY OF ALL ENTRIES ON
                THIS CASE.
                JUDGE:



**EXHIBIT B**

SHJE Journal Voucher                09/06/05 03:12PM 22316 21  211 RLT BR:02

    39382-75   SHAHIN/MAZEN M                EFF DT:09/06/05        0
AMT:        35.00 TO GOLDEN ADVANTAGE
MEMB FEES:    .00 BAL:    7,438.68
DESCRIPTION: FEE REV/JP CRT 6/23

             NF  FEE REV/JP CRT 6/23    EFF DT:09/06/05        0
AMT:      -35.00 FROM F & T TYPE SUM

SWITCH TO E-STATEMENTS AND YOU COULD WIN A DELL COMPUTER AND PRINTER!* VISIT
WWW.DELAWAREFCU.ORG OR ASK A DEFCU REPRESENTATIVE FOR MORE INFORMATION.
*CONDITIONS AND RESTRICTIONS APPLY.

         MAZEN M SHAHIN
         103 SHINNECOCK RD
         DOVER        DE 19904

                  DELAWARE FEDERAL CREDIT UNION          DATE:[09/06/05
ID:[  ] TRAN CODE:[   ] PARAMETERS:[
[

RENEÉ L. THOMPSON, CUCE, NCCO
Compliance Officer

150 E. Water Street
Dover, DE 19901

Phone   (302) 698-1038
Fax     (302) 698-1638
E-mail  rthompson@delawarefcu.org

FEDERAL CREDIT UNION
www.delawarefcu.org

www.delawarefcu.org

*The following fee has been placed back
into your account per Justice of Peace
Court decision 9/6/05.*

*Renee*

**APPENDIX G**

**EXHIBIT C**

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

COURT ADDRESS:                          CIVIL ACTION NO. J0507004516
JP COURT 16
480 BANK LANE
DOVER, DE 19904

NINA M SHAHIN
        ----- VS  -----
DE FEDERAL CREDIT UNION

NINA M SHAHIN
103 SHINNECOCK ROAD
DOVER , DE 19904-

        NOTICE TO PLAINTIFF AND DEFENDANT OF TIME FOR HEARING
                          (CONTINUANCE)

    THE ABOVE ACTION HAS BEEN SCHEDULED AND CONTINUED AT
THE REQUEST OF:
            ____      THE COURT
                      THE PLAINTIFF(S)(OR PLAINTIFF(S) ATTORNEY)
            ____      THE DEFENDANT(S)(OR DEFENDANT(S) ATTORNEY)
            ____      OTHER

    THE COURT WILL HOLD A TRIAL ON      Tuesday   ,  09/06/2005
AT    01:00 PM       IN THE JUSTICE OF THE PEACE COURT NAMED ABOVE.

    IF YOUR CLAIM IS SUPPORTED BY WITNESSES, ACCOUNT BOOKS,
RECEIPTS OR OTHER DOCUMENTS, YOU SHOULD BRING ENOUGH COPIES OF EACH
DOCUMENT TO GIVE ONE TO THE OTHER PARTY AND ONE TO THE COURT.
SUBPOENAS FOR WITNESSES, IF REQUIRED IN ADVANCE, WILL BE ISSUED BY
THE COURT (FOR A FEE FOR EACH PERSON SUBPOENAED).

    DATED:  08/16/2005

                                    _____
                                         COURT OFFICIAL

Persons with disabilities should contact the Court 10 days prior
to trial, if possible, to request reasonable accommodations. TDD
telephone numbers of JP Courts for the hearing impaired can be
obtained from the blue pages of your phone book (listed as "TT"
under each court).
J.P. CIVIL FORM NO. 8A (6/15/00)

## CERTIFICATE OF SERVICE

### I, NINA SHAHIN, CPA

Hereby certify that two copies of this MOTION FOR SANCTIONS AGAINST STATE ATTORNEY, KEVIN R. SLATTERY, UNDER RULE 11 OF FEDERAL RULES OF CIVIL PROCEDURES with Exhibits from A to C have been mailed today, July 16th, 2008 by certified mail with a return receipt to the attorney at the following address:

**Kevin R. Slattery**Deputy Attorney General
Carvel State Office Building
829 North French Street/ 6th Floor
Wilmington, DE 19801

Date: July 16, 2008

_(signature)_

**(signature)**

**Nina Shahin, CPA**

6

## IN THE JUSTICE OF THE PEACE COURT OF
## THE STATE OF DELAWARE IN AND FOR __KENT__ COUNTY
### COURT NO.16

IN RE:                                    CIVIL ACTION NO. J0506073516

SHAHIN
_____
Last name(s) of plaintiff(s)/complainant(s)

           vs.

DE FDCU
_____
Last name(s) of defendant(s)

### SUBPOENA IN A CIVIL CASE

I request that the Court command the person listed below to come to the Court and give testimony and/or bring certain evidence or permit inspection and copying of the documents or objects listed below.

| Name and Address of Person to be Subpoenaed | Those Items Which the Person Must Bring or Permit Inspection Of |
|---|---|
| LISA BREWER | 1. Documents to prove the date & time of SETTLEMENT of $ 3,220.11 Citibank |
| 150 EAST WATER STREET | |
| DOVER, DE 19901 | mega arch post |
| Date 7/14/2005 | 2. Documents to prove date and time check # 559 from PNC Bank for $ 320 was paid (settled) by FCU |
| | Signature of Party |
| | NINA SHAHIN |
| | Name (Printed) |

TO:  ___LISA BREWER___ (subpoenaed person):

**YOU ARE COMMANDED** to (*check one*) __X__ (1) appear in the Delaware Justice of the Peace Court at the place, date, and time specified below to testify in the above case, and bring the items noted above, **OR** _____ (2) produce and permit inspection and copying of certain documents or objects at the place, date, and time specified below.

| PLACE OF TESTIMONY/INSPECTION | DATE AND TIME |
|---|---|
| JP COURT # 16 | 07/25/2005 at 9:00 am |
| 480 BANK LANE, DOVER DE 19904 | |

ITEMS TO BE BROUGHT TO COURT OR TO BE INSPECTED

Date: _____        _____(SEAL)
                                              Court Official/Attorney

J.P. Civ. Form No. 58 (Rev. 6/15/00)            Doc. No. 02 13 00 06 01

**Bayhealth** Medical Center Milford

**EMERGENCY DEPARTMENT**
## ED RECORD - PAGE 1

**EMERGENCY**

| DATE: 7-21-05 | ARRIVAL TIME 1940 | TRIAGE TIME 2007 | TIME IN | | | | | | |

☑ WALK IN  ☐ WHEELCHAIR  ☐ HELICOPTER  ☐ AMBULANCE

TETANUS ?  FMD/CONSULT  Norm  POLICE

WT: 159 lb  ACCIDENT: ☐ AUTO ☐ SCHOOL ☐ WORK ☑ HOME ☐ OTHER  DATE: ____ TIME: ____

LMP: ____

ALLERGIES:

G ____  ☐ NKA
P ____  Drug: X
AB ____  Food: X

BED # ____

Latex: ☐ Yes ☑ No

72.1 Kg

CHIEF COMPLAINT:
Headache seuus reflisium

| TRIAGE: feels drowsy Wann dizz light areu dections scale 1-10 NN a q aul(?)(wll) ap(c)(5) an x dreu | TIME | TEMP °R | P | R | BP | PULSE OX | MONITOR | INIT |
|---|---|---|---|---|---|---|---|---|
| | 2004 | 97 7 | 88 | 18 | 143/87 | 98-97 | | 87 |
| | 2014 | | — | — | 137/83 | — | | Qt |
| OTHER  Droup childres | | | | | | | | |

TRIAGE INTERVENTIONS: ☐ ICE  ☐ DRESSING  TREATMENT PRIOR
☐ ELEVATED  ☐ GLUCOSE  TO ARRIVAL:

☐ EMERGENT  ☑ URGENT  ☐ NON-URGENT  ☐ TRAUMA (IF YES, REFER TO TRAUMA FLOW SHEET)  ☐ FAST TRACK

CURRENT MEDICINES: ☐ UNKNOWN  ☐ NONE  R Smuke  MEDICAL HISTORY: ☐ UNKNOWN  ☐ NONE
Zestril + D Morning  HXH AD

Baker ASA

VISUAL ACUITY: OD___ OS___ OU___ ☐ W CORRECTION ☐ W/O CORRECTION ☐ N/A

TRIAGE RN SIGNATURE Defferine V Rue

| | | | | |
|---|---|---|---|---|
| ☐ CBC | ☐ DIFF | ☐ BMP | CT | ☐ HEAD  ☐ CHEST ☐ ABDOMEN |
| ☐ LYTES | | ☐ CMP | U/S | ☐ HEPATOBILARY  ☐ PELVIS |
| ☐ GLUCOSE | | ☐ TRAUMA | | ☐ EXTREMITY  ☐ ECHO |
| ☐ BUN | ☐ CREAT | ☐ THROMBO | C-SPINE | ☐ TRAUMA  ☐ COMPLETE |
| ☐ PT | ☐ PTT | ☐ HEPATITIS | THORACIC SPINE ☐ TRAUMA ☐ COMPLETE |
| ☐ CPK | | ☐ LIVER | L/S SPINE  ☐ TRAUMA  ☐ COMPLETE |
| ☐ MYOGLOBIN | | ☐ AMYLASE | ☐ CXR  ☐ OBSTRUCTIVE SERIES |
| ☐ TROPONIN I | | ☐ LIPASE | ☐ PELVIS |
| ☐ SED RATE | | ☐ PREG | ☐ SHOULDER  L  R  ☐ ELBOW  L  R |
| ☐ DILANTIN LEVEL | | ☐ TEGRETOL | ☐ WRIST  L  R  ☐ HAND  L  R |
| ☐ APAP LEVEL | | ☐ ETOH | ☐ HIP  L  R  ☐ TIB/FIB  L  R |
| ☐ ASA LEVEL | | ☐ SERUM TOX | ☐ KNEE  L  R  ☐ ANKLE  L  R |
| ☐ DIG LEVEL | | | ☐ FOOT  L  R  ☐ RIBS  L  R |
| ☐ BLOOD CULTURE X ____ | | | OTHER ____ |
| ☐ TYPE AND CROSS ____ | | | |
| ☐ OTHER ____ | | | |

☐ AEROSOL
☐ PEAK FLOW
☐ OXYGEN ____
☐ ABG  ☐ PULSE OX ____
☐ EKG  ☐ MONITOR
☐ URINE QUICK PREG
☐ UA ☐ DIP ☐ C&S  ☐ URINE TOX
☐ GC ☐ CHLAMYDIA  ☐ TRICH PREP
☐ SPUTUM C&S  ☐ RAPID STREP
☐ FOLEY  ☐ NG TUBE
☐ IV ____
☐ MEDS ____

☐ DISCHARGE

| PHYSICIAN NOTES  QualChart ☐ | LAB RESULTS: | ☐ OLD RECORDS  ☐ ED  ☐ INPT |

EKG Interpretation: ____  ☐ ADM MD CALLED @ ____ PT SEEN @ ____
EKG Comparison  ☐ Yes  ☐ No  ☐ ADMIT CALLED @ ____ ROOM ____
Cardiac Monitor: ____
te:  ☐ Normal ☐ Brady ☐ Tachy  ☐ PT BELONGINGS SHEET DONE  RELEASED TO: ____
Rhythm: ☐ NSR  ☐ Other ____  ☐ REPORT FAXED/CALLED @ ____ TO ____
X-Ray Interpretation: ____

| NUTRITION SCREEN | FUNCTIONAL SCREEN | ABUSE SCREEN | D/C PLAN SCREEN |
|---|---|---|---|
| Dysphagia  ☐ Yes ☑ No  Wt.Loss >10% / month ☐ Yes ☑ No  Multiple Food Allergies ☐ Yes ☑ No  DKA - new Dx of DM  ☐ Yes ☑ No  Special Diet and desires education  ☐ Yes ____ ☐ No  ☑ No need identified | Developed within last 2 weeks:  Unable to perform ADL's ☐ Yes ☑ No  Weakness/Paralysis  ☐ Yes ☑ No  Falls  ☐ Yes ☐ No  ☑ No need identified | Verbalizes Abuse/Neglect  ☐ Yes ☑ No  Unexplained bruises/injuries ☐ Yes ☑ No  Unkempt/dirty/poor hygiene ☐ Yes ☐ No  Obvious physical problems unattended  ☐ Yes ☑ No  ☑ No need identified | Family expresses concern regarding discharge care needs  ☐ Yes ☐ No  Current or Potential equipment/service needs: ____  ☐ No need identified |

If any of the above are identified, inform the Emergency Department Physician for appropriate referral.

| TIME | MULTIDISCIPLINARY NOTES |
|---|---|
| 2015 | Patient decided to leave. Patient states he will return if he feels worse. — R.S. |

| | | | DISCHARGE TIME ____ | MODE ____ WITH ____ |

| INITIALS | SIGNATURES | INITIALS | SIGNATURES |
|---|---|---|---|

#992321 (REV. 03/03)

MEDICAL RECORDS

**IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16**

September 7, 2005

Ms Nina Shahin
103 Shinnecock Rd
Dover DE  19904

RE: J0507004516

Dear Ms Shahin:

    The Court has received your letter dated September
7, 2005. The Judicial Operations Manager does not review
the case decisions of Justice the Peace Judges, nor do
I direct them how any individual case should be handled.
If you wish to file a complaint against a Judge, you
should address your complaint to:

    The Honorable Ernst M. Arndt
    Acting Deputy Chief Magistrate
    Justice of the Peace Court #16
    480 Bank Lane
    Dover DE  19904

    Or

    The Honorable Alan Davis
    Chief Magistrate
    5 East Pine Street
    Georgetown DE  19947

    If you wish to appeal this decision, please follow
the appeal procedures included with your order.

Very truly yours,

Jill M Vaughn
Judicial Operations Manager

Cc The Honorable Pam Darling
   The Honorable Ernst M. Arndt (Acting DCM)
   File

**IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16**

October 3, 2005

**TO:**      Nina Shahin
            103 Shinnecock Rd
            Dover, DE  19901

**FROM:**    Ernst M. Arndt
            Deputy Chief Magistrate Kent County (Acting)
            Justice of the Peace Court
            480 Bank Lane
            Dover, DE  19904

**SUBJECT:** J0507004516

Dear Ms. Shahin:

In response to your letter of complaint against Judge Darling dated
September 14, 2005, I have asked Judge Darling to respond as well as I have
reviewed the case file.

My investigation reveals there was no violation of Court procedures.
A review of the case docket shows the Defendant, Delaware Federal Credit
Union, filed an answer to your suit, a copy of which they should have sent to
you. Prior to trial, Judge Darling reviewed the case file, as you had two cases
scheduled that day against the Defendant.  There is no evidence there was
any one-sided communication between Judge Darling and the Defendant.
Unless you can provide evidence of an exparte communication,  I am closing
this file.  As I advised earlier, I cannot review the Judge's decision to
dismiss your suit, your avenue is to file an appeal, which the record reflects
you did on September 20, 2005.



STATE OF DELAWARE
JUSTICE OF THE PEACE COURT No. 16
480 BANK LANE
DOVER, DE 19904

TELEPHONE: (302) 739-4316

September 23, 2005

The Honorable Ernst M. Arndt
Acting Deputy Chief Magistrate, Kent County
Justice of the Peace Court
480 Bank Lane
Dover, DE 19904

Dear Judge Arndt,

I've reviewed the complaint filed by Nina Shahin regarding Civil Action J057004516. I am confident that my decision was appropriate and there was no "outrageous violation" of court proceedings.

Mr. & Mrs. Shahin had two cases schedule for trial on September 6, 2005 involving a debt action against the Dover Federal Credit Union. I reviewed the files prior to trial, which can be verified by the correspondence sent to the Shahin's by the court.

The Plaintiffs filed the civil action in question on June 28, 2005 claiming the Defendant owed them $35.00. The Defendant was never notified of the debt until they were served with a copy of the action on July 14, 2005.

Defendant reviewed the Plaintiff's account and realized that they had made an error. Plaintiff was notified of the error and the Defendant offered to return the $35.00 to their account.

There was never a "one sided" conversation with the Defendant by the court. The court merely verified that the Defendant did in fact offer to pay the Plaintiff the $35.00 which they were seeking in their action.

Two issues became very clear. The first issue was that the action should not have been filed because the Defendant was not aware of the debt. Second issue was once the

Defendant admitted that they had made an error and offered to pay the debt there was no reason for the Plaintiff to go forward. The case was dismissed with prejudice.

The court has a responsibility in any action to determine that a complaint is filed correctly and that there is a valid reason to precede forward with the case.

Respectfully submitted,

Pamela A. Darling
Justice of the Peace

Cc The Honorable Alan Davis, Chief Magistrate

Received on 10/19/2005
from court clerk Delfie

PLAINTIFF'S
EXHIBIT
4

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

CIVIL ACTION NO. J0507004516
4516

COURT ADDRESS
JP COURT 16
480 BANK LANE
DOVER, DE 19904

### ANSWER TO COMPLAINT

Defendant Delaware Federal Credit Union, answers the complaint of the plaintiffs, Nina and Mazeen Shahin, in this action as follows:

Answering item 1, Defendant acknowledges deposit of $320.00 to plaintiffs DEFCU account on 6/20/05. Plaintiff claims that their personal check cleared PNC bank on 06/21/05. Defendant has no knowledge or proof of this claim. Defendant did not make the deposit of said check to PNC until 6/21/05 and gave the member "conditional credit" of $100.00 on that date. We had no proof on the date of our deposit that the check for $320.00 was indeed cleared/paid by PNC at time of deposit. Conditional credit was given per Regulation CC guidelines.

Plaintiff claims Defendant maliciously misclassified and harassed them. Defendant does not admit to such claim as "intentional acts" were never administered by our tellers or check processing procedures.

Defendant admits that an extended hold was placed in error and the fee in question was erroneously posted. However, plaintiff did not contact anyone at the Credit Union regarding this latest fee other than by the serving of this complaint. Defendant was not availed the opportunity to investigate this claim or given ample opportunity to order a copy of the deposited item for investigation proceedings. When check copy was received we realized error and even contacted the plaintiffs on July 21, 2005 to refund the fee. The plaintiff refused our offer stating they wanted "all" monies from all three (3) suits filed within the last 60 days or nothing at all. The plaintiffs added that we had nothing further to discuss.

Defendant has suggested the plaintiffs seek financial services at another institution as they are clearly unsatisfied with the Credit Union after a third suit filing. Plaintiffs have "refused" to close their account with DEFCU.

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF DELAWARE**

**IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074 AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLE** | * | |
| | * | |

## AFFIDAVIT

STATE OF DELAWARE   :
                                  : SS
COUNTY OF KENT :

BE IT REMEMBERED that on this __16__ day of __Nov_____, A.D.

2005, personally appeared before me, the Subscriber, a Notary Public for the

State and County aforesaid, Rene Thompson on behalf of Delaware Federal

Credit Union, the Defendant in the foregoing, known to me personally to be such,

who being duly sworn according to law, did depose and say that the facts herein

contained in the Motion for Summary Judgment are true and correct to the best

of her knowledge.

ReneeThompson

**SWORN TO AND SUBSCRIBED** before me the day and year aforesaid.

**NOTARY PUBLIC**

DATE:

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF DELAWARE**

**IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074 AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLEE** | * | |
| | * | |

## MOTION FOR SUMMARY JUDGMENT

1. The above referenced case is an appeal from the Justice of the Peace Court 16 which was filed as a debt action. Plaintiff's complaint states that they are entitled to only Court costs and interest as a result of the deposit which was made to Plaintiff's account on June 20, 2004. the deposit did not clear in the appropriate time manner because Delaware Federal Credit Union had placed an extended hold on the deposit. Defendant was not made aware of this problem until the Plaintiff filed an action in the Justice of the Peace Court #7.

2. The Defendant immediately agreed to correct the error which was refused by Plaintiff. As a matter of fact, Defendant credited Plaintiff's account in the amount of $35.00 on September 6, 2005.

3. The Court below was faced with the same fact pattern and when it learned that the Defendant had agreed to credit Plaintiff's account in the amount of $35.00, the Court dismissed the complaint. (See J.P. 16 Decision attached

as Exhibit "A").  The Plaintiff now appeals because it is now seeking Court costs and interest.

4. Plaintiff's Complaint lacks legal merit since their account has already been reimbursed $35.00 as of September 6, 2005.  As such, there is no basis to be awarded Court costs and interest since they are merely proceeding with this litigation for a malicious purpose.

WHEREFORE, Defendant would respectfully request that this Court grant Summary Judgment in this matter since Plaintiff is not entitled to any additional relief.

LIGOURI, MORRIS & YIENGST

Gregory A. Morris, Esquire
46 The Green
Dover, DE 19901
(302)678-9900
Attorney for Defendant

DATE: 11/19/05

IN THE COURT ON THE JUDICIARY
OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | C.J. No. 7, 2006 |
| HONORABLE MERRILL C. TRADER | § | |
| AND HONORABLE PAMELA DARLING, | § | |
| | § | CONFIDENTIAL |
| JUDICIAL OFFICERS. | § | |

## ORDER

This 16th day of October 2006, it appears that:

(1)     Ms. Nina Shahin ("the Complainant") has filed a complaint against Judge Merrill C. Trader of the Court of Common Pleas and Judge Pamela Darling of the Justice of the Peace Court ("JP Court") (copy of complaint attached as Exhibit A). The complaint is subject to dismissal, *sua sponte*.[1]

(2)     The complaint arises from a JP Court debt action that the Complainant brought against Delaware Federal Credit Union (DFCU). The Complainant sought reimbursement of a $35.00 fee that DFCU had assessed to her account for insufficient funds. After a hearing on September 6, 2005, Judge Darling dismissed the complaint.[2]

---

[1] *See* Del. Ct. Jud. R. 5(b) (2006) (providing that the Chief Justice "may dismiss by written order, sua sponte, any complaint which, upon its face, is (1) frivolous, (2) lacking in good faith, (3) based upon a litigant's disagreement with the ruling of a judge, or (4) is properly a matter subject to appellate review").

[2] *Shahin v. Delaware Fed. Credit Union*, Del. JP Ct., C.A. No. J0507004516, Darling, J. (Sept. 6, 2005).

(3)    The Complainant appealed Judge Darling's dismissal to the Court of Common Pleas.  On appeal, Judge Trader held a hearing and granted summary judgment in favor of DFCU.[3]

(4)    The Complainant appealed Judge Trader's decision to the Superior Court.  The Superior Court denied the appeal.[4]  The Complainant has appealed the Superior Court's decision to the Delaware Supreme Court.[5]

(5)    The Complainant alleges that Judge Trader violated Canon 1[6] and Canon 3A(3), (4) and C(1)(a) of the Delaware Judges' Code of Judicial Conduct.  The Complainant also alleges that Judge Trader violated her constitutional rights of due process and equal protection.[7]  Finally, the Complainant requests that the Court

---

[3]*Shahin v. Delaware Fed. Credit Union*, Del. Ct. Com. Pl., C.A. No. 05-09-0074AP, Trader, J. (Dec. 21, 2005).

[4]*Shahin v. Delaware Fed. Credit Union*, Del. Super., C.A. No. 06A-01-004, Young, J. (Aug. 3, 2006).

[5]*Shahin v. Delaware Fed. Credit Union*, Del. Super., C.A. No. 06A-01-004, Young, J. (Aug. 3, 2006), *appeal docketed*, Del. Supr., No. 472, 2006 (Sept. 1, 2006).

[6]*See* Del. Judges' Code of Jud. Conduct (2006) (Canon 1 providing that a judge should uphold the integrity and independence of the judiciary).

[7]*See* Del. Judges' Code of Jud. Conduct (Canon 3A(3) providing in pertinent part that a judge should be patient, dignified, respectful and courteous to litigants; (4) providing in pertinent part that a judge should accord to every person who is legally interested in a proceeding, or to the person's lawyer, full right to be heard according to law; and C(1)(a) providing in pertinent part that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding).

investigate Judge Trader with respect to alleged "irregularities" in the transcript of

the hearing in the Court of Common Pleas.

(6)    In her complaint in this Court, the Complainant alleges that Judge

Darling engaged in *ex parte* communications in violation of Canon 3A(4) of the

Delaware Judges' Code of Judicial Conduct. The Complainant also alleges that

Judge Darling violated the Complainant's constitutional rights of due process and

equal protection.[8]

(7)    The complaint is subject to dismissal, *sua sponte*, pursuant to Rule

5(b)(3) and(4) of the Rules of the Court on the Judiciary.[9] It is clear from the face of

the complaint that the allegations of judicial misconduct (a) stem from the

Complainant's disagreement or dissatisfaction with the judicial officers' legal rulings;

(b) do not allege judicial misconduct; or (iii) allege judicial misconduct in a

conclusory or conjectural fashion that does not invoke the jurisdiction of the Court

on the Judiciary. Where the Complainant suggests that either Judge Trader or Judge

Darling abused the court's discretion, erred during the court's proceedings, or erred

---

[8]*See* Del. Judges' Code of Jud. Conduct (Canon 3A(4) providing in pertinent part that a judge should neither initiate nor consider *ex parte* communications concerning a pending or impending proceeding).

[9]*See* Del. Ct. Jud. R. 5(b)(3), (4) (providing that the Chief Justice may dismiss a complaint which is (3) based upon a litigant's disagreement with the ruling of a judge or (4) properly a matter subject to appellate review).

3

in the disposition of her case, the Complainant's claims were, or could have been, subject to appellate review.

NOW, THEREFORE, IT IS ORDERED that the complaint is DISMISSED, *sua sponte*. A copy of this Order shall be transmitted to Judge Trader, Judge Darling and the Complainant.   The Order with attachment, and all references thereto, are confidential unless otherwise ordered by this Court upon the request of the judicial officers involved.[10]

_____
Chief Justice

---

[10]*See* Del. Ct. Jud. R. 17 (providing that all records in the Court on the Judiciary are confidential except a final order of suspension, removal or retirement).

*NINA SHAHIN, CPA, MAS, MST*
*103 SHINNECOCK RD, DOVER, DE 19904*
*Tel. (302) 678-1805*

**E-mail: nshahin@comcast.net**

---

**August 14, 2006**

> COURT ON THE JUDICIARY
> RECEIVED and FILED
> AUG 23 2006

**Court on the Judiciary**
Court of Chancery Courthouse
34 The Circle
Georgetown, DE 19947

**Attn.: Margaret L. Naylor**
**Clerk of the Court on the Judiciary**

Dear Ms Naylor:

I would like to file a formal complaint against two judges with the court on the judiciary established by Article IV, section 37 of the Delaware Constitution. These two judges are: Justice of Peace Court of Kent County No. 16, Pamela Darling and the judge of the Court of Common Pleas, Merrill C. Trader.

### *Complaint against Justice Pamela Darling*

The underlying legal issues with the judge of JP Court Pamela Darling are presented below:

- *Circumstances of the Case*

JP Court Justice Pamela Darling is involved in the case no. J0507004516 filed on June 28, 2005. The circumstances of the case are the following: on June 20, 2005, my husband made a deposit to our common checking account at Delaware Federal Credit Union (DE FCU) in the amount of $ 320 by a check drawn to our account at a local (Dover) branch of the PNC bank. By the DE FCU own guidelines, the check with that routing number should have been classified as a "local" deposit with availability of funds at that time as follows: the first $ 100 on the following business day and the rest within three days. Instead, by mistake of the cashier processing that deposit at the DE FCU, the check was misclassified as "non local" and money was not made available for a week, thereby bouncing two checks presented for payment with subsequent charges of $ 35.00 of Non Sufficient Fund (NSF) on 06/21/2005 and 06/23/2005 on each of the two transactions for a total of $70.00. My husband and I, after my husband's unsuccessful attempt to resolve the issue with the branch manager, Lisa Brewer, on June 23, 2005, filed our first lawsuit (No. J0506073516 which **is not part** of this complaint) in the

1

Exhibit A

Justice of Peace Court # 16 (JP Court) of Kent county on June 24, 2005, and after the second incident of NSF charge made on 6/23/05 filed a second lawsuit (J0507004516) in the same court on 6/28/2005. Both cases were joined together in a hearing on 9/6/2005. On the first incident and the first charge of $ 35.00 the JP Judge, Pamela Darling, recused herself because of her previous (June 22, 2005) ruling on the similar case and dismissed with prejudice the second case filed on the second incident of NSF charges. ***This case is the basis of this complaint***. The first case (No. J0506073516) was heard at JP court on 10/17/2005 by a different judge and is presently on appeal at the Court of Common Pleas (CCP). . The second case (J0507004516) was appealed to the Court of Common Pleas on 9/21/2005, dismissed on the Motion for Summary Judgment filed by the defendant-appellee's attorney after hearing on December 21, 2005 and appealed to the Superior Court on January 11, 2006. Superior Court Judge Robert B. Young denied our appeal on the basis of falsified fact that alleged that the JP Court determined that the NSF fee had been paid and we will appeal to the Supreme Court of Delaware.

After filing the first lawsuit the plaintiffs received the defendant's response from the JP Court (see Copies of Supporting Documents (COSD) in a separate section attached to this complaint, Attachment No. 1). The plaintiffs have never received anything else either from the court or from the defendant. It appears that in response to the second lawsuit the defendant provided reply of unknown date with a corrected case number made by hand (see COSD, Attachment No. 2) which WAS NOT forwarded to the plaintiffs either by the court or by the defendant. A copy of the reply was eventually obtained by the plaintiffs on October 19, 2005, from a JP court clerk by name Debbie, at 11:05 am, the fact recorded by the plaintiff on the copy itself. The plaintiffs obtained that copy long after filing their appeal in the Court of Common Pleas (9/21/2005) which means that at the time of filing their appeal they did not know its content.

We would like to note here that during that court session on September 6, 2005 the judge directly asked the defendant (representative of the DE FCU) whether the NSF fee had been paid to the plaintiffs and received the answer that **it had not**. When her eye balls started to roll out of her eye sockets, the DE FCU representative assured her that the money would be restored to our account the same day. As a result of that court hearing that had been called at 1:00 PM. (see COSD, Attachment No. 3), lasted for not more than 20 minutes and the DE FCU representative's promise to pay, the money was deposited on the same date at 3:12 PM with the employee's inscribed note that the deposit was made "per Justice of Peace Court decision 9/6/05" (see COSD, Attachment No. 4). The events of the hearing were reflected in the decision of the judge (in so called "Notice of Action") received by us (see COSD, Attachment No. 5). When the judge learned that we were going to appeal and requested a certified copy of the decision needed to support an appeal, she tried to cover up her unjustified decision by completely changing its wording (see COSD, Attachment No. 10)

- *Specifics of the Complaint*

1)   *Ex Parte* Communications (Violation of Canon 3A(4) of The Delaware Judges' Code of Professional Conduct)

2

Since we, as plaintiffs, have never received the defendant's reply in court hearing of both cases on September 6, 2005 the communications between the JP Judge Pamela Darling and the defendant on the issues mentioned in that reply became, therefore, *EX PARTE* communications on subjects the plaintiffs had no slightest idea about and were not accorded any proper opportunity to dispute the defendant's claims, especially, since all of the claims were not true. In the courtroom the plaintiffs were utterly baffled and stupefied. Not only the judge and the defendant were discussing matters the plaintiffs were not aware of, but also the matters discussed were false and misrepresented but attempts (there were two) on the part of the plaintiffs to say something were quashed by the judge and the plaintiffs' requests or clarification were either denied or sarcastically ridiculed. There were the following attempts to dispute two basic facts (out of the rest) presented by the defendant: 1. The plaintiff-husband said that before filing the lawsuits he had met Lisa Brewer, the branch manager, who had been subpoenaed (see COSD, Attachment No. 6) and was present at that hearing and expressed the desire to question her but was denied that request by the judge and 2. The plaintiff-wife said that the defendant's claim that the DE FCU had made an offer to pay and had been rebuffed by the plaintiff was not correct. The DE FCU made an offer not to pay but to settle; the offer was for $ 70 of NSF fees only without court costs and exclusively on condition of plaintiffs closing their account with the DE FCU. The plaintiff wanted to say also that the plaintiffs' made a counter offer that was declined by the DE FCU CEO but was interrupted by the judge who immediately declared the case "dismissed with prejudice", then turned to the plaintiff and sarcastically told her: "Now you do not have to close your account, do you?" The case was over.

The behavior of the JP Judge in this case was so outrageous and the denial of the plaintiffs' basic rights was so egregious that the plaintiff filed a complaint on 9/14/2005 (see COSD, Attachment No. 7). The plaintiffs have received a response from the Deputy Chief Magistrate Judge Ernst M. Arndt who closed the case (see COSD, Attachment No. 8) asking us to provide the evidence of *ex parte* communications. It is absolutely astonishing in his response that he closed his eyes to the fact that the due process of the plaintiffs' notification of the defendant's response had been violated which by itself is a proof of *ex parte* communications between the judge and the defendant and also because the plaintiffs were excluded from those communications. Since the plaintiffs had no any prior knowledge or notification of the subjects raised in the defendant's response, the discussion of these subjects between the defendant and the judge were *ex parte* communications. Also outrageous is his claim that it was the defendant's obligation to mail us their response. The Justice of Peace court is the court for lay people who do not know the court procedures and might not be able to find out what those procedures are or what they mean. It is, therefore, the court obligation if not to mail the defendant's response to the plaintiffs (which the JP court always does except for this particular case) then to inform the defendant that it is HIS or HER OBLIGATION to mail their response to the plaintiff. As you can see from the form of JP court (see COSD, Attachment No. 1) there is no anywhere on the form such a notification, warning or a request. In the absence of such a written notification to the defendant of his obligation to send a copy of his or her response to the plaintiff, it becomes the responsibility of the JP court to forward

3

to the plaintiffs a copy of the defendant's response and the JP Court failed the plaintiffs in that responsibility, thus laying the ground for *ex parte* communications in the JP courtroom which are in violation of the Delaware Judges' Code of Judicial Conduct, Rule 3A(4).

2)   Violations of constitutional rights of "due process' and "equal protection" guaranteed by 14th Amendment of the US Constitution

The Justice of Peace Court violated the constitutional rights of the plaintiffs by the following concrete actions:

1. Failure to notify the plaintiffs of the defendant's response or to make it known to the defendant that it was their responsibility to make their response known to the plaintiffs.
2. To give the opportunity to the plaintiffs to present their side of the story to the court along with the relevant documents as evidence (that they had with them in court but were not allowed to present) or to question the witness that they had subpoenaed.

Such gross and <u>intentional</u> violations of the plaintiffs' constitutional rights of "due process" and "equal protection" made the whole judicial process in that court unconstitutional and the decision rendered by such a process constitutionally flawed and unenforceable. The basis of adversarial judicial system in a civil process was reduced to a one-sided *ex parte* communications in which defendant's claims were given legal weight without any supporting proof or evidence and turned that court into a kangaroo-type court and the principle of justice into unjust punishment of the injured party that added insult to injury.    The principle of justice in a judicial system was supposed to make an injured party <u>WHOLE</u> but that principle was violated by both Justice of Peace Court and the Court of Common Pleas. In the definition of a "due process" and "equal protection" clauses of the Fourteenth Amendment to the Constitution of the United States that evolved over the years by the court system there are 7 elements, 5 of which apply to the Appellants' case and which were denied by either Justice of Peace Court, Court of Common Pleas or both: 1. Notice, 2. Hearing, 3. Impartial Tribunal, 4. Confrontation and Cross-Examination, 6. Decision on the Record.    The fifth and seventh elements of Discovery and Counsel respectively do not apply to this case and, therefore, are not analyzed here. The substantial if not exclusive contribution as a highest court in the land belongs to the Supreme Court of the United States.    "Procedural due process rules are meant to protect persons not from the deprivation, *but from the mistaken or unjustified* deprivation of life, liberty, *or property*" (emphasis added by me, NS), *Carey v. Piphus,* 435 U.S. 247, 259 (1978). Since our case is related to a debt claim which is a claim for property (money is considered property) the analysis of the requirements developed by the case law that follows is relevant in regard to the last of those three pillars (life, liberty and property) for the protection of which the "due process" and "equal protection" clauses of the Fourteenth Amendment are specifically intended.

4

1. Notice        "An elementary and fundamental requirement of due process in any proceedings which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections", *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950).  See also *Richards v. Jefferson County,* 116 S. Ct. 1761 (1996) ( *res judicata* may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected). "The notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest", *Goldberg v. Kelly,* 397 U.S. 254, 267-268 (1970). Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it, *Armstrong v. Manzo,* 380 U.S. 545, 550 (1965); *Robinson v. Hanrahan,* 409 U.S. 38 (1974); *Green v. Lindsey,* 456 U.S. 444 (1982). We, as plaintiffs, were denied a proper notice and the opportunity to prepare adequate response to the defendant's claims and to prove that all those claims were false.

The remaining 5 elements were denied to the Appellants by both Justice of Peace and Common Pleas Courts.

2. Hearing        "Some form of hearing is required before an individual is finally deprived of a property interest", *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976).  <u>"Parties whose rights are to be affected are entitled to be heard"</u> (Emphasis added by me, NS), *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233 (1863).

3. Impartial Tribunal    Just as in criminal and quasi-criminal cases (*Tumey v. Ohio* 273 U.S. 510 (1927)) "an impartial decision maker" is an "essential" right in civil proceedings as well (*Goldberg v. Kelly,* ibid above, pages 254, 271). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken *on the basis of an erroneous or distorted conception of the facts or the law*… (emphasis added by me, NS).  At the same time, it preserves both the appearance and reality of fairness… by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him", (*Marshall v. Jerrico,* 446 U.S. 238, 242 (1980)). We, as plaintiffs, were denied the opportunity to be heard by both courts to establish their claims for not only the money mistakenly taken from their account but also for the money we paid for the court costs and the lost opportunity to use their money for two and half months, a requirement that would have made them "whole" as a result of a proper judicial process.

4. Confrontation and Cross-Examination      "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses" (*Goldberg v. Kelly,* Ibid above, pages 254, 269). Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or person motivated by malice, vindictiveness, intolerance, prejudice, or jealously, the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination" (*Green v. McElroy,* 360 U.S. 474, 496 (1959).  The Appellants were <u>intentionally deprived</u> of that opportunity in the Justice of Peace Court and were <u>not granted</u> that opportunity in the Court of Common Pleas.

5

6. Decision on the Record "The decisionmaker's conclusion as to a recipients' eligibility must rest solely on the legal rules and evidence adduced at the hearing...To demonstrate compliance with this elementary requirement, the decisionmaker should state the reason for his determination and indicate the evidence he relied on..." (*Goldberg v. Kelly,* 397 ibid, above, pages 254, 271). As a final conclusion of the judicial process it is obvious that there were no facts established in either court except that the debt was owed (in JP Court) but paid after the decision of the Justice of Peace Court (in Court of Common Pleas) and there is no justification for the denial of our claim for the court costs and interest on the money unlawfully taken from their account or the dismissal with "prejudice" except to unjustifiably punish and insult us.

In addition, there are serious questions about the judge Pamela Darling's impartiality.

To the Deputy Chief Magistrate's response was attached the response of the Judge Pamela Darling (see COSD, Attachment No.8) in which she, besides denying "one-sided" (read *ex parte)* communications with the defendant, made two points which are the proof by itself that she did obtain that information from a "one-sided" or, in another words, *ex parte* communication with the defendant because the plaintiffs were not given the opportunity to prove that the information the judge used as a basis for her prompt decision was completely false:

1. The defendant was not aware of the debt.
2. The defendant offered to pay.
   (Although the judge does not make a written statement in her response that the plaintiffs refused to accept that payment, the conclusion is obviously implied but was never proven in her courtroom. The judge does not provide the definition of the "offer to pay".)

Those two facts were easily rebuttable if the plaintiffs had been given the opportunity in the courtroom to do so. On the first point, the plaintiffs can state that after their complaint about the judge, hearing on the first lawsuit (i.e. on the first incident of the NSF charge) with another judge in JP court on 10/17/2005 was conducted in a completely different atmosphere. Lisa Brewer was deposed under oath as well as the plaintiff-husband and, as a result of those two depositions, it was established as a fact that Lisa Brewer promised to call the plaintiff on the same day he visited the branch (i.e., June 23, 2005, before filing any of the two lawsuits) and inform him of the price of getting an image of the cancelled check that had been misclassified. She did not call him the same day, she did not call him the next day, she never called him at all. THIS IS A FACT ESTABLISHED IN A COURTROOM BY TWO WITNESSES TESTIFIED UNDER OATH. Had she called him at any time (the same day, the next day, after a week) the plaintiffs would have told her about the mistake, but she never bothered to call. The second time when the plaintiffs made an attempt to notify the defendant of the mistake was on June 28, 2005, the day the second lawsuit was filed. I made a deposit of $ 24.70 in "non local" check and the cashier who processed the deposit by name Danielle Johnson was told about the mistake (see COSD, Attachment No. 9). But after the judge

6

Pamela Darling's dismissal of another plaintiffs' case on June 22, 2005 the employees of DE FCU were so emboldened that they did not want to hear about their mistakes. Danielle Johnson laughed my face and sarcastically asked me whether I remembered to which local branch the misclassified check had been drawn to. Had the plaintiffs known about the defendant's claim of allegedly lacking prior information and notification of the mistake they would had subpoenaed not only Lisa Brewer but also Danielle Johnson and grilled her on the witness stand to prove that such a notification was given or could have been given if and when the DE FCU employees performed their duties according to acceptable standards.     Regrettably, the issue here is not whether the plaintiffs made attempts to notify the employees of DE FCU of its mistake, because they did, but it is the attitudes of the DE FCU employees who do not want to provide proper services or listen to their customers.     In 2003, the DE FCU fleeced our account for two extra (unauthorized) car payments due to a mistake in recording an accounting entry for a total of $ 402.54 (2 x $ 201.27). It took me two weeks of every other day visit to the branch to convince Lisa Brewer that the bank had made a mistake. It was only after the plaintiff refused to leave Lisa's office because of a threat of bouncing checks that Lisa Brewer started to act. She simply did not believe that the bank had made a mistake.

The second point of the defendant's claim that they had offered to correct mistake and we refused that offer not only is not true it is simply absurd because if the DE FCU wanted to pay there was no any impediment to stop them from doing that and they did not need our permission to deposit money back to our account. What actually happened is that the DE FCU made an offer to <u>SETTLE</u> (not to pay or "correct the error") both cases for $ 70 which included only two charges of $ 35 of NSF without any court costs or fees paid by us. Moreover, that offer was made exclusively on the condition that we would close our accounts with the DE FCU.   We could not accept that condition because our checking account was connected to our daughter's checking account (who was a student at Portland State University in Oregon at that time) to which I made regular monthly deposits for her living and educational expenses.  In our turn, we made a counter offer that was rejected by the DE FCU.  In those negotiations the CEO of the DE FCU made insulting and denigrating remarks (which also were not true) to my husband about me (which he had no any legal right to make) that caused my husband to loose his temper, raise his voice, get very upset, have his blood pressure risen and end up at the emergency room of the Kent General Hospital.

### *Complaint against Judge Merrill C. Trader*

- *Circumstances of the Case On Appeal*

In view of these gross violations of our constitutional rights and procedural rules my husband and I appealed to thee Court of Common Pleas.  The appeal was filed for the court costs and interest that had been denied by the JP Court.   The attorney for the DE FCU tried to dismiss the case under different claims and pretexts which did not work so he finally filed a Motion for Summary Judgment attaching to the motion the statement made by the DE FCU employee, Renee Thompson, of the same facts that were claimed in *ex parte* communications in JP Court. Since these facts were in dispute and never proven in court we expected the Motion to be denied because it can only be granted

7

in cases where there is no dispute on matters of fact. This is not what had happened in judge Merrill C. Trader's courtroom.

- *Specifics of the Complaint*

1)  Violation of Canon 1 and 3 Rules of The Delaware Judges' Code of Professional Conduct

Judge proclaimed how he would decide the pending case of the first occurrence of NSF also on appeal at CCP by using the doctrine of *Res Judicata* that actually does not apply to this case because two cases are different cases on two different occurrences with each having some specifics. Making such a proclamation (see COSD, Attachment No. 11) he violated Canon 1, Canon 3 A (4). By proclaiming his bias in future case he disqualified himself under Canon 3C (1) (a).

2)  Violation of Canon 3A(3) Rule of The Delaware Judges' Code of Professional Conduct

Canon 3 of the Delaware Judges' Code of the Professional Conduct in section on Adjudicative Responsibilities specifically mandates a judge in paragraph (3) to "be patient, dignified, respectful and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity". Judge Merrill C. Trader had no patience in his courtroom in this trial. He came without any knowledge of the case and displayed unabated unwillingness to learn in the process of hearing. He interrupted not only me but also the opposing attorney, did not allow completing a sentence, a statement or a logical conclusion. No facts or circumstances of the disputed facts that were presented in opposing versions by the DE FCU in notarized statement attached to the Motion and by the plaintiffs-appellants' in their Motion to Deny Summary Judgment were allowed for discussion, analysis, and determination as to their validity in the courtroom as they should have been in any hearing on Motion for Summary Judgment. Completely different issues were discussed and decided upon. In particular:

- He assumed or concluded things that cannot be assumed or concluded: for example, when I argued that in JP court we were not allowed to present our case he concluded: "Well, you did present your case, he just ruled against you". (see COSF, Attachment 11, page 9 of the transcript)
- He unduly pressured attorney to join both cases in that particular hearing for Motion of Summary Judgment embarrassing attorney and putting him in a very awkward situation with unnecessary and strange apologies from him.
- Although I tried to say that the notarized statement of facts presented to the Court as evidence to support that Motion was perjury, he noted that I needed to prove that. He did not grant me that opportunity though.

3)  Violations of constitutional rights of "due process" and "equal protection" guaranteed by the 14th Amendment of the US Constitution

8

Finally, his decision was based on the answer he posed to me, "Whether the NSF was paid?" to which I answered "yes", but the payment of that fee was irrelevant to our claim on appeal for court costs and interest. I was not allowed to properly present my case and did not have attention and impartiality of the judge. It was "the old boys club" of the judge and the attorney who made all types of false statements and had the sympathetic ear of the judge that listened to his lies (for example, when he mentioned that we refused to accept the payment during hearing in court and that was the reason of the dismissal with prejudice on page 3 in the second paragraph of Mr. Morris's statement, see COSD, Attachment No. 11,) but ridiculed the true statement made by me (for example, when I mentioned that we had been denied the opportunity to present our case to court on pages 8-9 of the transcript, see COSD, Attachment No. 11). The proceedings with that type of arrangements were stacked against me with no chance for a fair trial. We, therefore, were deprived of the three elements of "due process" and "equal protection" by Judge Merrill C. Trader as they are enumerated and analyzed above in nos 3, 4, and 5 in section related to our complaint against the judge Pamela Darling.

4)    In a separate point I would like to request an investigation into irregularities with the transcript of the court proceedings. The last sentence in the transcript was added because the judge did not utter it in the court. There are changes in the amounts of money I said we claimed in our cases and other substantive formats of my claims that completely transformed our claims to something that is very difficult to comprehend. Judge denied me the access to the tape to correct those disputed mistakes, alterations, and additions. My question is whether those modifications were done with his knowledge or upon his direct instructions.

I request a proper process in the Court on Judiciary on all the gross violations of our constitutional rights and procedural rules of the respective courts by the judges as well as violations of professional standards of the judiciary.

I also pose the following questions to this court to answer in its investigation of my complaint:

- Was the decision of the judges based on a demonstrated bias or prejudice?
- Was the purpose of their action to teach someone a lesson or send someone a message extraneous to the enforcement of the law?
- Did the judge display the intemperate conduct?
- Did the judge abuse the judicial power?
- Did the judge abandon his or her role as a neutral and detached magistrate?
- Did a judge have a corrupt motive?
- Did the judge flagrantly disregard important procedural requirements?
- Did the judge deny fundamental rights?
- Were the parties denied a full and fair hearing?

* Did the judge demonstrate an unwillingness to apply the law?

Respectfully submitted by

Nina Shahin, CRA

Notary: Betty Edgar
Date: 8/14/06



**COPIES OF SUPPORTING DOCUMENTS**

## List of Supporting Documents

1.  **Defendant's Answer to the Complaint**
2.  **Answer to the Complaint**
3.  **Notice to Plaintiff and Defendant of Time for Hearing**
4.  **Delaware Federal CU Journal Voucher with Business Card of Renee Thompson**
5.  **Notice of Court Action**
6.  **Subpoena in Civil Case**
7.  **Complaint Against the Judge Honorable Pamela Darling**
8.  **Ernst M. Arndt's Response dated 10/3/2005 with Pamela Darling's Response dated September 23, 2005**
9.  **DE FCU Check Deposit Voucher dated 6/28/2005 and a Copy of the Business Card of Daniele Johnson**
10. **Transcript of Judgment and Execution for Transfer to Kent County Court of Common Pleas**
11. **Transcript of Hearing on Motion for Summary Judgment at CCP on December 21, 2005**

**ATTACHMENT No. 1**

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

COURT ADDRESS:                    CIVIL ACTION NO. J0507004516
JP COURT 16                            RECEIVED
480 BANK LANE
DOVER, DE 19904                    '05 JUL 21 PM 3 35

NINA M SHAHIN
      ----- VS -----
DE FEDERAL CREDIT UNION

### DEFENDANT'S ANSWER TO THE COMPLAINT

CHECK ALL THAT ARE APPROPRIATE:

A. _____ I admit that I owe the debt or claim in the complaint
   and DO NOT WANT A TRIAL. This means that you agree to a judgment
   being entered against you for the amount claimed plus interest
   and costs. Any money owed should be paid directly to the plaintiff.
   YOU WILL BE GIVING UP YOUR RIGHT TO A TRIAL AND WILL NOT HAVE A
   RIGHT TO APPEAL YOUR DECISION TO ADMIT THIS DEBT OR CLAIM.

B. __✓__ I WANT A TRIAL.

   _____ DEBT ACTIONS ONLY: In addition to a trial, I request that the
   plaintiff provide me with a more detailed statement of claim
   (Bill of Particulars).

DATED: __7/20/2005__

DEFENDANT SIGNATURE

DEFENDANT ADDRESS

DEFENDANT CITY, STATE, ZIP

DEFENDANT WORK/HOME PHONE

_____
DEFENDANT ATTORNEY, IF ANY

_____
ATTORNEY ADDRESS

_____
ATTORNEY CITY, STATE, ZIP

Mail this completed form (Answer) to the Justice of the Peace Court
at the address above as soon as possible. This signed document must
be received by the Court within 15 days after the date you received
it or a default judgment may be entered against you.

IF YOU ARE A CORPORATION OR OTHER ARTIFICIAL ENTITY OR PUBLIC BODY:
1. This Answer Must be signed by an attorney or person designtated by
a Certificate of Representation (Form 50) prior to filing this answer
2. Only an attorney or person designated on a Form 50 may represent
you in JP Court. 3. YOU MAY OBTAIN A FORM 50 and further information
from the Court's website at http://courts.state.de.us/jpcourt.
(Click on Form 50). Or you may obtain a Form 50 from your
nearest JP CIVIL COURT.

received on 10/12/2005 from Court Clerk Debbie 11:05 AM

ATTACHMENT No. 2

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

CIVIL ACTION NO. J0507004516 4516

COURT ADDRESS
JP COURT 16
480 BANK LANE
DOVER, DE 19904

ANSWER TO COMPLAINT

Defendant Delaware Federal Credit Union, answers the complaint of the plaintiffs, Nina and Mazeen Shahin, in this action as follows:

Answering item 1, Defendant acknowledges deposit of $320.00 to plaintiffs DEFCU account on 6/20/05. Plaintiff claims that their personal check cleared PNC bank on 06/21/05. Defendant has no knowledge or proof of this claim. Defendant did not make the deposit of said check to PNC until 6/21/05 and gave the member "conditional credit" of $100.00 on that date. We had no proof on the date of our deposit that the check for $320.00 was indeed cleared/paid by PNC at time of deposit. Conditional credit was given per Regulation CC guidelines.

Plaintiff claims Defendant maliciously misclassified and harassed them. Defendant does not admit to such claim as "intentional acts" were never administered by our tellers or check processing procedures.

Defendant admits that an extended hold was placed in error and the fee in question was erroneously posted. However, plaintiff did not contact anyone at the Credit Union regarding this latest fee other than by the serving of this complaint. Defendant was not availed the opportunity to investigate this claim or given ample opportunity to order a copy of the deposited item for investigation proceedings. When check copy was received we realized error and even contacted the plaintiffs on July 21, 2005 to refund the fee. The plaintiff refused our offer stating they wanted "all" monies from all three (3) suits filed within the last 60 days or nothing at all. The plaintiffs added that we had nothing further to discuss.

Defendant has suggested the plaintiffs seek financial services at another institution as they are clearly unsatisfied with the Credit Union after a third suit filing. Plaintiffs have "refused" to close their account with DEFCU.

ATTACHMENT No. 3

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

COURT ADDRESS:                          CIVIL ACTION NO. J0506073516
JP COURT 16
480 BANK LANE
DOVER, DE 19904

NINA SHAHIN , MAZEN SHAHIN
----- VS -----
DE FEDERAL CREDIT UNION

MAZEN SHAHIN
103 SHINNECOCK RD
DOVER , DE 19904-

NOTICE TO PLAINTIFF AND DEFENDANT OF TIME FOR HEARING
(CONTINUANCE)

THE ABOVE ACTION HAS BEEN SCHEDULED AND CONTINUED AT
THE REQUEST OF:

                    THE COURT
                    THE PLAINTIFF(S)(OR PLAINTIFF(S) ATTORNEY)
                    THE DEFENDANT(S)(OR DEFENDANT(S) ATTORNEY)
                    OTHER

THE COURT WILL HOLD A TRIAL ON     Tuesday    , 09/06/2005
AT     01:00 PM     IN THE JUSTICE OF THE PEACE COURT NAMED ABOVE.

IF YOUR CLAIM IS SUPPORTED BY WITNESSES, ACCOUNT BOOKS,
RECEIPTS OR OTHER DOCUMENTS, YOU SHOULD BRING ENOUGH COPIES OF EACH
DOCUMENT TO GIVE ONE TO THE OTHER PARTY AND ONE TO THE COURT.
SUBPOENAS FOR WITNESSES, IF REQUIRED IN ADVANCE, WILL BE ISSUED BY
THE COURT (FOR A FEE FOR EACH PERSON SUBPOENAED).

DATED:   08/16/2005

_____
COURT OFFICIAL

Persons with disabilities should contact the Court 10 days prior
to trial, if possible, to request reasonable accommodations. TDD
telephone numbers of JP Courts for the hearing impaired can be
obtained from the blue pages of your phone book (listed as "TT"
under each court).
J.P. CIVIL FORM NO. 8A (6/15/00)

**Attachment No. 4**

```
SHJE Journal Voucher            09/06/05 03:12PM 22316 21  211 RLT BR:02

     39382-75  SHAHIN/MAZEN M                  EFF DT:09/06/05          0
AMT:         35.00 TO GOLDEN ADVANTAGE
MEMB FEES:   .00 BAL:    7,438.68
DESCRIPTION: FEE REV/JP CRT 6/23

               NF  FEE REV/JP CRT 6/23    EFF DT:09/06/05          0
AMT:       -35.00 FROM F & T TYPE SUM

SWITCH TO E-STATEMENTS AND YOU COULD WIN A DELL COMPUTER AND PRINTER!* VISIT
WWW.DELAWAREFCU.ORG OR ASK A DEFCU REPRESENTATIVE FOR MORE INFORMATION.
*CONDITIONS AND RESTRICTIONS APPLY.

          MAZEN M SHAHIN
          103 SHINNECOCK RD
          DOVER           DE 19904

                    DELAWARE FEDERAL CREDIT UNION       DATE:[09/06/05]
ID:[  ] TRAN CODE:[   ] PARAMETERS:[                                  ]
[                                                                     ]
```

*The following fee has been placed back into your account per Justice of Peace Court decision 9/6/05.*

*Dave*

Attachment 4, page 2

RENEE L. THOMPSON, CUCE,

Delaware
FEDERAL CREDIT UNION
www.delawarefcu.org

<div align="right">**Attachment No. 5**</div>

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16

COURT ADDRESS:                           CIVIL ACTION NO. J0507004516
JP COURT 16
480 BANK LANE
DOVER, DE 19904
NINA M SHAHIN
     ----- VS -----
DE FEDERAL CREDIT UNION

NINA M SHAHIN
103 SHINNECOCK ROAD
DOVER , DE 19904-


NOTICE OF COURT ACTION

THE COURT HAS ENTERED A JUDGMENT OR ORDER IN THE
FOLLOWING FORM:

9/6/05 A DEBT ACTION IS FILED WHEN A PARTY OWES MONEY
AND REFUSED OR DOES NOT PAY. IN THIS CASE THE DEFENDANT
WAS NEVER GIVEN OPPORTUNITY TO PAY THE DEBT PRIOR TO
PLAINTIFF FILING CASE. AFTER FILING DEFENDANT
REVIEWED THEIR RECORDS AND ADMITTED THEY HAD MADE AN
ERROR AND OFFERED TO CORRECT THE ERROR. THIS WAS
REFUSED BY PLAINTIFF. DEFENDANT HAS AGREED TO CREDIT
PLAINTIFF ACCOUNT IN THE AMOUNT OF $35.00. CASE
DISMISSED WITH PREJUDICE.


IT IS SO ORDERED THIS _6_ DAY OF _Dpt_ , 2005

_____ (SEAL)
JUSTICE OF THE PEACE/COURT OFFICIAL

NOTICE OF APPEAL RIGHTS

ANY PARTY HAS THE RIGHT TO APPEAL THE JUDGMENT OF THE JUSTICE OF
THE PEACE COURT TO THE COURT OF COMMON PLEAS OF THE ABOVE COUNTY
WITHIN 15 DAYS OF THE DAY OF JUDGMENT NOT COUNTING THAT DAY AS ONE.
IF THE JUDGMENT INVOLVES AN ACTION FOR SUMMARY POSSESSION IN A
LANDLORD/TENANT CASE, THEN THE APPEAL MUST BE FILED AT THE JUSTICE
OF THE PEACE COURT WHERE THE JUDGMENT WAS ORDERED WITHIN 5 DAYS
AFTER THE DAY OF JUDGMENT TO A THREE JUSTICE OF THE PEACE PANEL. YOU
MUST COMPLETE ALL OF THE APPEAL REQUIREMENTS WITHIN THOSE PERIODS.
TO PREVENT DISMISSAL, THE APPEAL MUST NAME ALL OF THE PARTIES AS
THEY WERE ORIGINALLY NAMED IN THE JUSTICE OF THE PEACE COURT ACTION.
(THIS APPLIES EVEN IF THE ACTION WAS DISMISSED IN THE JUSTICE OF THE
PEACE COURT AGAINST ONE OR MORE OF THE PARTIES.)  ADDITIONAL
INFORMATION ON APPEAL PROCEDURES IS FOUND IN THE ATTACHED SHEET
ENTITLED "JUSTICE OF THE PEACE COURTS CIVIL POST-JUDGMENT
PROCEDURES. (J.P. CIVIL FORM NO. 14A) IF NO APPEAL IS FILED, PARTIES

**ATTACHMENT No. 6**

IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE IN AND FOR   KENT         COUNTY
COURT NO 16

IN RE:                                                    CIVIL ACTION NO. J0506073871

SHAMIL

(Last name(s) or print title(s), complainant(s))

DE FDCU

(Last names of defendants)

## SUBPOENA IN A CIVIL CASE

I request that the Court command the person listed below to come to the Court and give testimony and/or bring certain evidence or permit inspection and copying of the documents or objects listed below.

Name and address of Person to be            These items Which the Person Must
subpoenaed                                   Bring or Permit Inspection Of:
LISA BREWER

150 EAST WATER STREET                        1. Documents to prove the date & time
                                                of SETTLEMENT   of $ 3,220.11Citibank
DOVER, DE 19901
                                                mega arch post

                                             2. Documents to prove date and time
Date                                            check # 559 from PNC Bank for $ 320
                                                was paid (settled) by FCU
                                                                 (Signature of Party)

                                                                 Name (Printed)

TO:    LISA BREWER          (subpoenaed person):

YOU ARE COMMANDED to (check one)   X    (1) appear in the Delaware Justice of the Peace
Court at the place, date, and time specified below to testify in the above case, and bring the items noted
above. OR         (2) produce and permit inspection and copying of certain documents or objects at the
place, date, and time specified below.

| PLACE OF TESTIMONY/INSPECTION | DATE AND TIME |
|---|---|
| JP COURT # 16 | 07/25/2005 at 9:00 am |
| 480 BANK LANE, DOVER DE 19904 | |
| ITEMS TO BE BROUGHT TO COURT OR TO BE INSPECTED: | |

Date                                                                      (SEAL)

                                        Court Official/Attorney

## IN JUSTICE OF PEACE COURT No. 16
## KENT COUNTY STATE OF DELAWARE

Nina & Mazen Shahin  :
          .

  Plaintiffs

          :  **Civil action J0507904516**

  v.         :

          :

Delaware Credit Union   :

## COMPLAINT AGAINST THE JUDGE HONORABLE PAM DARLING

On 9/6/2005 in the court hearing on the above-mentioned case with the judge honorable
Pam Darling presiding, we, the plaintiffs, were not informed of the defendant's response
nor were given the chance to present our side of the story. The decision was taken
through one-sided communications between the judge and the defendant. This is not
what the judicial system is all about. None of the defendant's claims were true but we
were not given the opportunity to present either the facts or the evidence.

In view if these outrageous violations of the court proceedings, we are lodging this
complaint for an investigation and proper administrative measures.

September 14, 2005

             **Nina Shahin**
             **Plaintiff**
             103 Shinnecock Rd.
             Dover, DE 19904

# IN THE JUSTICE OF THE PEACE COURT OF
## THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
### COURT NO. 16

October 3, 2005

**TO:**     Nina Shahin
103 Shinnecock Rd
Dover, DE  19901

**FROM:**     Ernst M. Arndt
Deputy Chief Magistrate Kent County (Acting)
Justice of the Peace Court
480 Bank Lane
Dover, DE  19904

**SUBJECT:** J0507004516

Dear Ms. Shahin:

In response to your letter of complaint against Judge Darling dated September 14, 2005, I have asked Judge Darling to respond as well as I have reviewed the case file.

My investigation reveals there was no violation of Court procedures. A review of the case docket shows the Defendant, Delaware Federal Credit Union, filed an answer to your suit, a copy of which they should have sent to you. Prior to trial, Judge Darling reviewed the case file, as you had two cases scheduled that day against the Defendant.  There is no evidence there was any one-sided communication between Judge Darling and the Defendant. Unless you can provide evidence of an exparte communication,  I am closing this file.  As I advised earlier, I cannot review the Judge's decision to dismiss your suit, your avenue is to file an appeal, which the record reflects you did on September 20, 2005.



STATE OF DELAWARE
JUSTICE OF THE PEACE COURT No. 16
480 BANK LANE
DOVER, DE 19904

TELEPHONE: (302) 739-4316

September 23, 2005

The Honorable Ernst M. Arndt
Acting Deputy Chief Magistrate, Kent County
Justice of the Peace Court
480 Bank Lane
Dover, DE 19904

Dear Judge Arndt,

I've reviewed the complaint filed by Nina Shahin regarding Civil Action J057004516. I am confident that my decision was appropriate and there was no "outrageous violation" of court proceedings.

Mr. & Mrs. Shahin had two cases schedule for trial on September 6, 2005 involving a debt action against the Dover Federal Credit Union. I reviewed the files prior to trial, which can be verified by the correspondence sent to the Shahin's by the court.

The Plaintiffs filed the civil action in question on June 28, 2005 claiming the Defendant owed them $35.00. The Defendant was never notified of the debt until they were served with a copy of the action on July 14, 2005.

Defendant reviewed the Plaintiff's account and realized that they had made an error. Plaintiff was notified of the error and the Defendant offered to return the $35.00 to their account.

There was never a "one sided" conversation with the Defendant by the court. The court merely verified that the Defendant did in fact offer to pay the Plaintiff the $35.00 which they were seeking in their action.

Two issues became very clear. The first issue was that the action should not have been filed because the Defendant was not aware of the debt. Second issue was once the

Defendant admitted that they had made an error and offered to pay the debt there was no reason for the Plaintiff to go forward. The case was dismissed with prejudice.

The court has a responsibility in any action to determine that a complaint is filed correctly and that there is a valid reason to precede forward with the case.

Respectfully submitted,

Pamela A. Darling

Justice of the Peace

Cc The Honorable Alan Davis, Chief Magistrate



# Delaware Federal Credit Union

150 E. WATER ST.
DOVER, DE 19901

AUTHORIZED SIGNATURE



**DANIELLE JOHNSON**
Member Services Representative

635 Bay Road
Dover, DE 19901

Phone  (302) 739-6389 Ext. 20
Fax      (302) 739-6387
E-mail  djohnson@delawarefcu.org

www.delawarefcu.org

ATTACHMENT No. 10

## IN THE JUSTICE OF THE PEACE COURT OF
## THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
## COURT NO. 16

COURT ADDRESS:
~~180 BANK LANE~~
DOVER DE 19904

## TRANSCRIPT OF JUDGMENT AND EXECUTION FOR
## TRANSFER TO KENT COUNTY COURT OF COMMON PLEAS

**PLAINTIFF:**

NINA MAZEN SHAHIN                **CIVIL ACTION NO.** J0507004516
103 SHINNECOCK RD.               JUDGMENT: $35.00
DOVER DE 19901
302-678-1805

     v.

**DEFENDANT:**
DE FEDERAL CREDIT UNION
150 EAST WATER STREET
DOVER DE 19901
302-739-4496

ON SEPTEMBER 6, 2005 JUDGMENT BY TRIAL WAS ENTERED BY JUSTICE OF THE PEACE COURT NO. 16 IN FAVOR OF NINA MAZEN SHAHIN AND AGAINST DE FEDERAL CREDIT UNION FOR $35.00.



This is to certify that this is a true and correct transcript of the judgment and Constable's return of execution.

_____
Justice of the Peace/Court Official

Date: SEPTEMBER 20, 2005

J P Civ Form No. 24 (Rev. 6/15/00)



JUSTICE OF PEACE CIVIL DOCKET - COURT 16
AS OF 09/20/2005                          PAGE

CIVIL ACTION NO. J0507004516

FILED: 06/28/2005                    DEBT ACTION
                                     NON-ARBITRATION
                                     NON-JURY TRIAL

*** L I T I G A N T S ***

NINA M SHAHIN

- - - - - - VS - - - - - -

DE FEDERAL CREDIT UNION

        EVENT
NO.     DATE                   DOCKET TEXT


2   07/06/2005   FILING DATE: 06/28/2005 FEE:  30.00 RELIEF AMT:    35.00
                 PERSONAL PROPERTY VALUE:        OTHER AMT:   15.00
                 PRE INT RATE:     PRE INT AMT:
                 POST INT RATE:
                 OTHER-SUBPOENA FOR LISA BREWER, BRANCH MANAGER

3   07/06/2005   NOTICE(S) GENERATED: 07/06/2005

4   07/06/2005   FORMS GIVEN TO:CONSTABLE COURT 16
                 DATE: 07/07/2005

5   07/18/2005   RETURN OF SERVICE POSITIVE FOR AND DATE SIGNED FOR:
                 DE FEDERAL CREDIT UNION  - 07/14/2005
                 SIGNED BY IF DIFFERENT THAN NAME ABOVE:
                 JANE WASHINGTON

6   07/29/2005   CASE UPDATED: 07/29/2005
                 7/28/05 -PER JUDGE DARLING LETTER SENT TO PLAINTIFF
                 STATING:THE COURT IS REQUIRING THAT WITHIN 15 DAYS
                 YOU SUPPLY THE COURT WITH THE FOLLOWING INFORMATION
                 CONCERNING CASE #'S J0507004516, AND J0506073516:
                 THE AMOUNTS OF THE CHECKS, CHECK NUMBERS AND EXACT
                 DATES IN WHICH YOUR ACCOUNT WAS DEBITED FOR NON-
                 SUFFICIENT FUNDS.  FAILURE TO SUPPLY THE COURT WITH
                 THE ABOVE INFORMATION BY 8/12/05 WILL RESULT IN THE
                 CASES BEING DISMISSED.

7   08/15/2005   TRIAL SCHEDULED:  Tuesday 09/06/2005 01:00 PM
                 TO BE HEARD WITH CA# J0507004516.

8   08/15/2005   NOTICE(S) GENERATED: 08/15/2005

9   09/06/2005   9/6/05 A DEBT ACTION IS FILED WHEN A PARTY OWES MONEY
                 AND REFUSED OR DOES NOT PAY. IN THIS CASE THE DEFENDANT
                 WAS NEVER GIVEN OPPORTUNITY TO PAY THE DEBT PRIOR TO
                 PLAINTIFF FILING CASE. AFTER FILING DEFENDANT
                 REVIEWED THEIR RECORDS AND ADMITTED THEY HAD MADE AN
                 ERROR AND OFFERED TO CORRECT THE ERROR. THIS WAS
                 REFUSED BY PLAINTIFF. DEFENDANT HAS AGREED TO CREDIT

Attachment 11

# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| MAZEN SHAHIN, and<br>NINA SHAHIN, | ) | Civil Action Number<br>05-09-0074AP |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| vs. | ) | |
| | ) | |
| DELAWARE FEDERAL<br>CREDIT UNION, | ) | |
| | ) | |
| Defendant/Appellee, | ) | December 21, 2005 |

- - - - -

**BEFORE:**

HONORABLE MERRILL C. TRADER

- - - - -

**APPEARANCES:**

NINA SHAHIN,
Pro Se.

GREGORY A. MORRIS, ESQUIRE
on behalf of the Defendant.

LINDA A. LAVENDER
Official Court Reporter

2

**Court of Common Pleas**
**December 21, 2005**

Present:  As noted.

THE COURT:  All right.  This is the time, or it's a little past the time, that we scheduled a hearing on a motion for summary judgment.

How do you pronounce your name?

MS. SHAHIN:  Shahin, Nina Shahin.

THE COURT:  Nina Shahin, and Mazen Shahin versus...

MS. SHAHIN:  Shahin, just Shahin.

THE COURT:  Shahin vs. Delaware Federal Credit Union.  It looks like there are two cases, and it looks like one case there was a judgment entered for $35 and another case a judgment was entered on behalf of the defendant.

I suppose there's been some confusion, and that the end result of the case was judgment for the defendant.  Is that right, Mr. Morris?

MR. MORRIS:  Yeah, that's correct, Your Honor, and the motion I filed only deals with the one case, the other one just came up just recently.

THE COURT:  Well, it should really cover both; do you ask that it cover both?

MR. MORRIS:  It could essentially, Your Honor.  I mean both, essentially both decisions were on behalf of the Delaware Federal Credit Union.  It was all concerning this $35 payment, which actually the

Delaware Federal Credit Union made back on September 6, 2005, which credited the account. In fact...

THE COURT:  Did the Magistrate first make one decision, and then later on he made a different decision?

MR. MORRIS:  Well, no, there were two separate cases filed.

THE COURT:  There were two cases?

MR. MORRIS:  They're two separate cases, at least, and she can correct me if I'm wrong, but there were two separate cases filed.

THE COURT:  I see.

MR. MORRIS:  The first one, which I filed the motion for summary judgment on, was actually a defendant's verdict in one respect, and a plaintiffs' verdict in the other respect.

Essentially what happened is the defendant came into court, told the Court that they were willing to credit the plaintiffs' account in the amount of $35, which had been refused by plaintiffs, and then based upon that statement, the Court essentially initially found, or dismissed it with prejudice, but the docket sheet seems to indicate they entered judgment for $35 for the plaintiffs without court costs, and interest.

It was at that point that the plaintiffs then appealed to this court.  Quite frankly the fact that the $35 has been paid since September of 2005, clearly the case is over at that point, and her ability to get court costs, and interest, we would respectfully argue is moot at this point.

4

The second case I didn't file the motion on, because it just came up, so I feel a little unprepared to deal with that one at this point, because I don't know all one hundred percent of the facts, because I didn't represent Delaware Credit Union at either one, at the court below; I've just been taking the cases up once they've been appealed, but at least as to the one at this point, feel that there is no action whatsoever, because...

THE COURT: Okay. Now, the one that...

MS. SHAHIN: Your Honor, can I now correct, and add?

THE COURT: Just let me finish with counsel for a minute, then I'll let you make some kind of statement, or argument.

Well, the October 17th judgment in favor of Dover Federal Credit Union against the plaintiffs, that is the case that apparently your motion does not cover?

MR. MORRIS: That is correct, Your Honor. The one I...

THE COURT: And you don't want to cover it?

MR. MORRIS: Well, again, I didn't even bring that file with me when I filed this motion, in fact. So I don't have it in front of me, but maybe if I could ask the Credit Union.

(PAUSE).

MR. MORRIS: It's my understanding, Your Honor, they're two separate matters.

THE COURT: They're two separate matters?

MR. MORRIS: Two separate matters, even...

5

MS. SHAHIN: It's the same matter, two separate incidents.

MR. MORRIS: Two separate incidents, so I respectfully submit that probably my motion will not be able to address the second one today unfortunately.

THE COURT: But, doesn't it involve the $35 fee?

MR. MORRIS: Yeah, but I think they may have sued for a little bit more, because there was an extended hold, and the first $100 of the thing would have gone to the account, so they weren't just suing for the $35 I don't believe, and maybe she can correct me if I'm wrong in that regards, but I think, they're two separate issues.

THE COURT: The complaint states exactly… well, no, it's a little different.

MR. MORRIS: It's a little different, Your Honor, it's the…

THE COURT: All right. Okay. Tell me what you want to tell me about your motion for summary judgment, and this is the case.

MS. SHAHIN: Now?

THE COURT: No, the defense attorney goes first, he hadn't made an argument yet.

MR. MORRIS: Your Honor, I think, my motion speaks for itself. Essentially what the plaintiffs did, they filed an action against the Delaware Federal Credit Union, for $35, court costs, and interest as a result of it was a hold put on a check, and as such they were debited $35, or they were charged $35.

When Delaware Federal Credit Union agreed to reimburse them the $35 when they realized the error, it was refused by plaintiffs. However, when the Court was informed of that, that the Delaware Federal Credit Union was willing to credit their account for $35, that's when the Court found essentially in favor of the defendant at that point, and in fact, $35 was placed on their account on September 6, 2005 which was the very day that they were in court.

THE COURT:  Well, this is the case where the judgment was entered in their behalf?

MR. MORRIS:  Correct.

THE COURT:  For $35.

MR. MORRIS:  Well, Your Honor, it's really bizarre...

THE COURT:  That's what the transcript...

MR. MORRIS:  ...because if you look at the docket sheet, and the judgment itself, and I think I've attached this one.  Essentially what it said is a debt action... this is the notice of action which is signed by the Justice of the Peace Court, it's not the docket sheets, it's September 6th, 2005, a debt action is filed when a party owes money, refused or does not pay.

In this case, the defendant was not given an opportunity to pay the debt prior to plaintiffs filing the case.  After filing defendant reviewed their records, admitted they made an error, and offered to correct the error; this was refused by plaintiffs.  Defendant has agreed to

credit plaintiffs' account in the amount of $35, case dismissed with prejudice.

THE COURT: Okay. Now, I see that.

MR. MORRIS: And, I think that...

THE COURT: There's some confusion in the...

MR. MORRIS: I agree, Your Honor, that there is a confusion, but I would argue that this is essentially what the true judgment is, and not what the docket says per se.

THE COURT: Okay. All right.

MR. MORRIS: But, either way the plaintiffs appealed it at that point saying they should've been given court costs, and interest. At this point, the fact that it's still pending...

THE COURT: Okay.

MR. MORRIS: The $35 has been paid; I just don't see a reason why...

THE COURT: All right. All right. Now, it's your chance.

MS. SHAHIN: Okay. Thank you, Your Honor.

THE COURT: Now, is it correct that in this case it was dismissed below?

MS. SHAHIN: This is what I want to address, this is correct. On the certified copy, which I attached to my appeal, it says that the judgment was entered in the Justice of the Peace Court in favor of Nina and Mazen Shahin. And this is correct, the original decision of the judge,

it states all the facts that we allegedly didn't give appropriate notice. That they offer to pay, and some other facts, which has never...

THE COURT: Well, was it ultimately dismissed by the Justice of the Peace?

MS. SHAHIN: It was dismissed.

THE COURT: Okay.

MS. SHAHIN: And all these facts, which she claims in her decision, have never been proved in her court.

THE COURT: Well, you sued for $35; they credited the $35 in the court below, didn't they?

MS. SHAHIN: The credited only for 35 after the Court, after this hearing, not before.

THE COURT: Okay.

MS. SHAHIN: So, it means for three months...

THE COURT: But, before you came here they credited it?

MS. SHAHIN: No.  Oh, before I came here?

THE COURT: Yes.

MS. SHAHIN: Yes.

THE COURT: All right.

MS. SHAHIN: But, it was after the court, and the whole premise of our appeal is that we have been denied the right to present our case in the Court of Peace.  We have the right to present, because what the Judge claim, and what the defendant/appellee claim is not true.

9

THE COURT: Well, you did present your case, he just ruled against you.

MS. SHAHIN: No, we didn't present, that's the whole point. She didn't allow us to question the witness, she didn't allow us to present any proofs. As a matter of fact, we even didn't receive the response of the defendant, so when we entered her room we didn't even know what they claimed, so we couldn't even address their claim, because we didn't know what the claims were, so we're denied due process...

THE COURT: Well, okay, what's your second suit about? You've got two suits; it's about something different than this?

MS. SHAHIN: What happened when we deposited our...

THE COURT: Answer my question, what's the second suit about?

MS. SHAHIN: This is what I'm trying to explain.

THE COURT: All right.

MS. SHAHIN: To explain the confusion what is this all about. We deposited our own check from one Delaware bank to another, from PNC Bank to Delaware Credit Union. PNC Bank was a local branch, so it was miscoded by the Delaware Credit Union as not a local check, when in fact it was a local check. So according to their procedures a local check was supposed to have a hold only of three days, they put a hold of seven days.

THE COURT: Okay.

MS. SHAHIN:  And in the course of those three days they bounced two transactions, and charged twice $35.

THE COURT:  They charged two separate...

MS. SHAHIN:  Two separate occasion although it was triggered by the same check, on two separate occasions, and they claim that we didn't notify them when, in fact, we made every effort to notify them of the fact, they just didn't want to listen.

THE COURT:  Okay.

MS. SHAHIN:  And, the Judge didn't allow us to hear the case, so all this in the motion for summary judgment, all these claims are false, all these claims, in fact, are not true.  So this is why we claim that there could be no summary judgment when there is such a wide dispute on the matters of fact, which were not heard in the Justice of Peace Court, because there was no practical hearing.

When we entered the Court, Judge listened and communicated with the defendant only without giving us opportunity even to say a word, and then she dismissed the case, so we didn't have the opportunity to present our part...

THE COURT:  Okay.

MS. SHAHIN:  ...of the evidence or claims.

THE COURT:  That may be.  Were two separate hearings on the two different cases?

MS. SHAHIN:  Yes, there were two separate, and we

11

appealed both of them, and this is actually the second incident, although it was processed by time in the court system as the first. The second one...

THE COURT:  What are you claiming in the second case that you're not claiming in the first case?

MS. SHAHIN:  In the second case we claim plus all the court of appeals fees.

THE COURT:  The one I'm not...

MS. SHAHIN:  And all the interest on all the money.

THE COURT:  You're really claiming the same thing in the second case you're claiming in the first case, aren't you?

MS. SHAHIN:  Not necessarily.  Here I claim only $38 of the courts fees in Justice of the Peace Court, plus the interest on the money.

THE COURT:  Okay.

MS. SHAHIN:  There I claim everything plus court claim fees...

THE COURT:  In this case you're claiming court costs plus interest; the other case you're claiming what, court costs, interest, and what?

MS. SHAHIN:  And any other amounts which Court finds equitable and necessary.

THE COURT:  Any other amount for what?

MS. SHAHIN:  Penalty for false claims, for perjury.

12

THE COURT:  Well, you have to prove that.  It seems to me you're claiming the same thing in both cases.

Have you completed your statement to the Court in this case?

MS. SHAHIN:  Yeah, Your Honor, yeah, I want to say additionally that we practically in the Court of Peace we were denied our constitutional rights of equal protection, and due process, and this is why we want to hear the case de novo in the Court of Common Pleas.

THE COURT:  All right.  Okay.  Thank you.

Anything further Mr. Morris?

MR. MORRIS:  Just briefly, Your Honor.  I don't really know what the heck happened in J. P. Court, all I know is $35 has been paid since September 6th.

If you heard the trial today, on those issues, you would have to find on behalf of the defendant at that point, because...

THE COURT:  Is my decision on this case going to be res judicata on the other one?  It sounds like it would be?

MR. MORRIS:  I think it is, I think, and I apologize to the Court not bringing that file, but I do think there was something a little bit different from this one, and in fact that one just came up recently, but I think ultimately...

THE COURT:  I can't determine what it is, it seems like they're suing for the same thing.

13

MR. MORRIS: It seems like it to me, Your Honor, but factually it's a little different, because there was some issue about a three day period, and whether certain checks should have cleared.

In this one it's all about $35 to their account, and quite frankly that $35 has been paid over three months ago.

THE COURT: Okay. In the case that remains open is 0113, I'll hand that file back to the clerk so we're clear. In the motion for summary judgment is for 0074.

And the question is does the plaintiffs' claim state a claim for which relief can be granted. There must be a principal sum due, or shown to be due before you can get interest, and court costs. In other words, the plaintiffs are going to have to demonstrate from the pleadings, that there is still $35 due in order to recover interest, and court costs.

The $35 has been paid, there's nothing before the Court to indicate that there is a sum due still, at least in this case, from the Delaware Federal Credit Union to these plaintiffs.

MS. SHAHIN: But they paid it three...

THE COURT: Keep quiet, I'm rendering my decision.

You don't get court costs and interest unless you have a claim from which relief can be granted. There is no claim for which relief can be granted in this case. The motion for summary judgment is granted.

- - - -

14

## CERTIFICATE OF REPORTER

I, Linda A. Lavender, Official Court Reporter of

the Court of Common Pleas, State of Delaware, do hereby certify that the

foregoing is an accurate transcript of the testimony adduced and

proceedings had, as monitored and electronically recorded, in the Court

of Common Pleas, in and for Kent County, in the case therein stated, as

the same remains of record in the Court of Common Pleas, Kent County

at Dover, Delaware.

WITNESS my hand this _27th_ day of _Jan.,_

2006 A.D.

Certificate No. 172-PS
Expiration Date:  Permanent

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

**Carvel State Office Building**
**820 North French Street, 11th Floor**
**Wilmington, Delaware 19801**
**(302) 577-7042**
**(302) 577-7048 (Fax)**

**ANDREA L. ROCANELLI**
**Chief Counsel**

**MICHAEL S. McGINNISS**
**MARY SUSAN MUCH**
**PATRICIA BARTLEY SCHWARTZ**
**Disciplinary Counsel**

May 1, 2006

**CONFIDENTIAL**

Ms. Nina Shahin
103 Shinnecock Road
Dover, DE 19904

> Re:    **ODC File No. 06-4-15**
>          **(Gregory A. Morris, Esquire)**

Dear Ms. Shahin:

The Office of Disciplinary Counsel has received your complaint against Gregory A. Morris, Esquire, who represents Delaware Federal Credit Union ("DFCU") in litigation in which you and your spouse are involved as parties. Your complaint alleges that during the course of the litigation, Mr. Morris engaged in conduct which you believe has violated the Delaware Lawyers' Rules of Professional Conduct ("Rules").

This Office is authorized by the Supreme Court of Delaware to evaluate, investigate and, if necessary, prosecute lawyer misconduct as narrowly defined under the Rules. Absent clear and convincing evidence that a lawyer has violated the Rules, there is no basis for disciplinary prosecution for unethical conduct. This Office is neither a trial court nor a court of appeals. We have no authority to review or decide legal disputes or issues, or to decide, influence, or change the outcome of any issues related to a court proceeding.

This Office has carefully reviewed your complaint and its attachments. The allegations you have raised in your complaint concerning Mr. Morris relate to matters in dispute in pending litigation. When allegations of lawyer misconduct relate to matters that already have been presented to or are now pending before a court, this Office does not usurp the court's fact finding or legal analysis of those issues. If the court believes that the record in a matter or a lawyer's conduct in a matter before the court raises issues of ethical misconduct that should be investigated by this Office, the court can refer those issues to this Office.

Ms. Nina Shahin
May 1, 2006
Page Two                                              **CONFIDENTIAL**


    Based upon the foregoing, this file is now closed.  By copy of this letter to Mr. Morris, this Office is informing him of this disposition, and enclosing a copy of your complaint for his information.

    Please be aware that pursuant to Procedural Rules 13 and 25, all records and proceedings in this matter are private and confidential and are not subject to production in any later proceedings before any tribunal.

    Thank you for your attention in this matter.

                                        Very truly yours,


                                        Michael S. McGinniss


MSM:mrm

cc:    Gregory A. Morris, Esquire (enclosing copy of complaint)

**BankersOnline.com**

Regulation CC

___

**Sec. 229.21 Civil liability.**

**(a) Civil liability.** A bank that fails to complywith any requirement imposed under subpart B, and in connection therewith,subpart A, of this part or any provision of state law that supersedes anyprovision of subpart B, and in connection therewith, subpart A, with respectto any person is liable to that person in an amount equal to the sum of--

(1) Any actual damage sustained by that personas a result of the failure;

(2) Such additional amount as the court mayallow, except that--

(i) In the case of an individual action, liabilityunder this paragraph shall not be less than $100 nor greater than $1,000;and

(ii) In the case of a class action--

(A) No minimum recovery shall be applicableto each member of the class; and

(B) The total recovery under this paragraphin any class action or series of class actions arising out of the samefailure to comply by the same depositary bank shall not be more than thelesser of $500,000 or 1 percent of the net worth of the bank involved;and

(3) In the case of a successful action toenforce the foregoing liability, the costs of the action, together witha reasonable attorney's fee as determined by the court.

**(b) Class action awards.** In determining theamount of any award in any class action, the court shall consider, amongother relevant factors--

(1) The amount of any damages awarded;

(2) The frequency and persistence of failuresof compliance;

(3) The resources of the bank;

(4) The number of persons adversely affected;and

(5) The extent to which the failure of compliancewas intentional.

**(c) Bona fide errors--(1) General rule.** Abank is not liable in any action brought under this section for a violationof this subpart if the bank demonstrates by a preponderance of the evidencethat the violation was not intentional and resulted from a bona fide error,notwithstanding the maintenance of procedures reasonably adapted to avoidany such error.

**(2) Examples.** Examples of a bona fide errorinclude clerical, calculation, computer malfunction and programming, andprinting errors, except that an error of legal judgment with respect tothe bank's obligation under this subpart is not a bona fide error.

**(d) Jurisdiction.** Any action under this sectionmay be brought in any United States district court or in any other courtof competent jurisdiction, and shall be brought within one year after thedate of the occurrence of the violation involved.

**(e) Reliance on Board rulings.** No provisionof this subpart imposing any liability shall apply to any act done or omittedin good faith in conformity with any rule, regulation, or interpretationthereof by the Board, regardless of whether such rule, regulation, or interpretationis amended, rescinded, or determined by judicial or other authority tobe invalid for any reason after the EFA Act or omission has occurred.

**(f) Exclusions.** This section does not applyto claims that arise under subpart C of this part or to actions

for wrongfuldishonor.

**(g) Record retention.** (1) A bank shall retainevidence of compliance with the requirements imposed by this subpart fornot less than two years. Records may be stored by use of microfiche, microfilm,magnetic tape, or other methods capable of accurately retaining and reproducinginformation.

(2) If a bank has actual notice that it isbeing investigated, or is subject to an enforcement proceeding by an agencycharged with monitoring that bank's compliance with the EFA Act and this subpart,or has been served with notice of an action filed under this section, itshall retain the records pertaining to the action or proceeding pendingfinal disposition of the matter, unless an earlier time is allowed by orderof the agency or court.

Original Article Located at http://www.bankersonline.com/regs/229/229-21.html
Copyright, 2000-2008, Bankers Online. All rights reserved.
This information was printed from the BankersOnline.com web site located at http://www.bankersonline.com

IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| MAZEN SHAHIN and | ) | Civil Action Number |
| NINA SHAHIN, | ) | 05-10-0113AP |
|        Plaintiffs, | ) | |
| | ) | |
|   vs. | ) | |
| | ) | |
| DELAWARE FEDERAL | ) | |
| CREDIT UNION, | ) | |
|        Defendant. | ) | January 17, 2007 |

- - - - -

BEFORE:

HONORABLE ROSEMARY BETTS BEAUREGARD,

- - - - -

APPEARANCES:

        MAZEN SHAHIN and
        NINA SHAHIN,
        Pro Se,

        GREGORY A. MORRIS, Esquire
        on behalf of the defendant.

TRIAL TRANSCRIPT

LINDA A. LAVENDER
Official Court Reporter

## INDEX

| PLAINTIFFS' EVIDENCE | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Mazden Shahin…….. | 11 | -- | -- | -- |
| Sharon Jones…..….. | 18 | -- | -- | -- |
| Lisa E. Brewer……... | 24 | -- | -- | -- |
| Richard J. Strosser... | 36 | -- | -- | -- |
| Renne Lee Thompson | 52 | 71 | 81 | -- |

## EXHIBITS

**PLAINTTIFFS' EVIDENCE**

| | | |
|---|---|---|
| 1 thru 3 | ......................................... | 17 |
| 4 | ......................................... | 19 |
| 5 | ......................................... | 30 |
| 6 | ......................................... | 61 |
| 7 | ......................................... | 80 |
| 8 | ......................................... | 81 |

**DEFENDANT'S EVIDENCE**

| | | |
|---|---|---|
| 1 | ......................................... | 74 |

PRESENT: As noted.

THE COURT:  Good morning.  You are Nina and Mazen Shahin?

MS. SHAHIN: Yes.

MR. SHAHIN: Yes.

THE COURT:  How are you? I'm Judge Beauregard; I'm going to be hearing this case this morning.

We're in close quarters because we don't have a courtroom this morning.  So this is a little different setup than we usually have, but we will all get through this and it's actually quite close and intimate.

All right.  This case is Nina and Mazen Shahin.  Am I pronouncing that correctly?

MS. SHAHIN:  I'm sorry, hold on one moment.

THE COURT:  Versus Delaware Federal Credit Union.

MS. SHAHIN:  Uh-huh (affirmative response).

THE COURT:  It's a de novo appeal from JP Court.

Are there any pretrial matters that the Court needs to be aware of and/or are there any stipulations as to exhibits or evidence?

MS. SHAHIN:  I'm not so sure.  I do have a lot of exhibits, which I would like to present.

THE COURT:  Mr. Morris, have you seen those?

MR. MORRIS:  I don't know.

Have I seen those, ma'am?

MS. SHAHIN:  Well, probably you didn't see any of them.

MR. MORRIS:  Okay.  Well, I need to see them before I stipulate whether they're coming in.

THE COURT:  At this point --

MS. SHAHIN:  Okay.  Should I --

THE COURT:  All right. If there are that many of them, let's proceed and we'll do this one document at a time.

MS. SHAHIN:  Okay.  I will provide for all the copies, all these things.

THE COURT:  All right.  Are there any pretrial motions?

MR. MORRIS:  I don't believe so, Your Honor.

MS. SHAHIN:  But I don't see all the witnesses I subpoenaed.

MR. MORRIS:  They're out in the waiting room.

MS. SHAHIN:  Oh.

THE COURT:  All right.  We are going to call them in one at a time.

MS. SHAHIN:  Okay.

THE COURT:  For their testimony.

MS. SHAHIN:  Okay.

THE COURT:  All right.  Mr. And Mrs. Shahin, do you have any opening statement that you would like the Court to hear before we

begin testimony in this case?

      MS. SHAHIN:  Absolutely, I have opening statement and

need time for opening statement.

      THE COURT:  Proceed.

      MS. SHAHIN:  Thank you, Your Honor.

      In his decision of the JP Court, the Judge wrote that

agreement of the parties is that $100 of the local check deposited, available

the next business day.  The remainder of the funds are available the

following business day.

      The evidence is that the plaintiff withdrew funds in excess of

$100 the day after deposit was made.  This effectively overdrew the

account.  The incorrect qualification of his check is not local is irrelevant.

The defendant is compliant with its contractual obligations, unquote.

      We, as plaintiffs, consider this conclusion is wrong application

of law to this case and appealed to the Court of Common Pleas.  And I

would like to lay the ground, legal grounds, for why we concede that

conclusion as the wrong application of law and the law non-controlling in

this case.

      The reference in this conclusion, is apparently made to

paragraph 229.10(c)(1)V, of the Regulation CC issued by the Board of

Governors of the Federal Reserve System that enacted by this regulation

that Expedited Funds Availability/act, EFA, enacted on August 10, 1987.

This is not the controlling law in this case.

Section 229.20 of this Regulation CC, specifies a relationship of this regulation to the State law in Section 2292(b) provides that other provisions of State law that are inconsistent with Federal law are preempted.

Section 229.20(a) holds that if a State has a shorter hold for a certain category of checks than is provided for under Federal law, the State requirement will supersede the Federal provision.

First of all, we as plaintiffs, would like to indicate that the demand deposits are not a form of a regular contract. But are the what is called quote unquote standard form contracts that are referred to as adhesion contract or boilerplate contract, and a contract between two parties that do not allow for negotiation and are entered into, between unequal bargaining partners where one side dictates all the terms.

These contracts are subject to a greater scrutiny by authorities and courts for possible violations as situations of unfair enrichment. And in this courtroom I will pursue that particular venue and try to prove that unfair enrichment occurred in this case.

Besides that, it is also the reason why the government and its differing bodies and agencies issue laws and regulations in this area. The major law besides cited above to the Regulation CC, that regulates the bank deposits and collections, is the Uniform Commercial Code, that was adopted in general form by all states.

I will work inside the Delaware Uniform Commercial Code and cite

that is part of Delaware Constitution of 1897 as amended in Title 6, Article

4 of the Title 6 devoted exclusively to banks, deposits and collections.

Section 4-103 entitled Variation by Agreement, measure of

damages; action constituting ordinary care. In (a), stipulates that the

effect of the provisions of this Article may be varied by agreement, but the

parties to the agreement, and I would like to emphasize, cannot disclaim a

bank's responsibility for its lack of good faith or failure to exercise

ordinary care or limit the measure of damages for the lack or failure.

Subsection B of the same section, indicates that Federal

Reserve regulations and operating circulars, clearing-house rules, and the

like have the effect of agreement under the (a), which I quoted, whether or

not specifically assented by all parties interested in items handled.

So, all the Regulation CC's considered as an agreement

between parties, it does not shield bank from responsibilities of either lack

of good faith or failure to exercise good care.

In our case, both lack of good faith and failure for ordinary

care, not only present but also are outrageous.  The standard of ordinary

care is defined in Article 3, called, Negotiable Instruments, of which drafts

are part of.  In Section 3, 107(a)[7], "in the case of a person engaged in

business, means observance of reasonable commercial standards,

prevailing in the area in which the person is located".

With respect to the business in which the person is engaged,

and I would like to emphasize again this specific part which says about

prevailing in the area in which the person is located, because I will produce
*employed*
a proof that other banks in the area employee completely different

timeframes and procedures and would question why that Dover Credit

Union has completely different standards.

Lack of good faith in our case is so egregious as to reach the

level of felony of perjury when the Delaware Federal Credit Union

submitted to the Court a written affidavit that contains only false

statements of fact made with intention to sway the decision of the Court.

And it's on Exhibit 1, which was attached during our

conference session that we will use to prove that, that perjury occurred.

So, in conclusion, I would like to say that in our case we need

to prove that the standard of ordinary care was violated at all levels at

Delaware Credit Union, starting with that teller who processed the
*Officer*
transaction to the chief operating C.O., again, whatever, operating officer,

as well as a standard of good faith, which reached the level of perjury, to

hold the bank responsible for its mistakes.

That's all, Your Honor.

THE COURT:  All right, thank you.

Mr. Morris, do you have anything to say?

MR. MORRIS:  And I'll be brief.  This case is very limited on

what should be presented here today.  It's an appeal from a JP Court

action in which the plaintiff filed a debt section against Delaware Federal

Credit Union for a $35 non-sufficient fund fee with court costs and interest

at that point, which would have been $30 and whatever coin amount of interest. The Court ruled against the plaintiff, of which they have now appealed and that's what the de novo is based upon quite frankly, which the plaintiff has cited, the JP Court judge hit it dead on.

There's an issue whether a deposit, which was made on June 20, 2005 in the amount of $320, was local or non-local. Quite frankly, the bank did mess up and they misclassified it non-local. But as the Court decided, in the court below, and which I'm going to tell you today, that issue is irrelevant, because whether it was classified local or non-local, a check, which was written or a withdraw which was made on June 21, 2005, would have not have cleared whether it was a local or non-local. That's the issue today.

I will present one witness who will testify in fifteen, twenty minutes, at best, which will detail the time periods from June 20th to June 21st, as to what was deposited, what was debited and whether an insufficient funds issue existed. That's the issue in this case, Your Honor, so we're going to be asking that there be at least, understanding she's pro se, that she be limited to those issues.

Also, Your Honor, and I think you have to be a little bit aware of the background setting. This is the third lawsuit essentially which are now pending against Delaware Federal Credit Union. Two initial ones were filed in JP Court, the other one came up to this court, I made a motion for summary judgment, it also involved a $35 fee. The Court ruled

in our favor, and Superior Court affirmed, once in Supreme Court, I filed a motion to affirm, we're waiting on this. This case was filed in JP Court action again involving a different $35 insufficient fee, we're now before. They have now filed a third separate law action in Superior Court, essentially making the same allegations but adding a personal injury status to it.

At some point, Your Honor, the plaintiffs have to understand that abuse or harassment of the system cannot be permitted and it's got to be stopped at some point. And that's what it's become to. And at the end of this case, if the Court rules in our favor, we will be asking for attorney fees because quite frankly, we think there is no factual or legal basis whatsoever for them to even prevail on a claim today and that it's being maintained on a malicious basis.

Other than that, Your Honor, that's it.

THE COURT:  All right, thank you.

Mr. and Mrs. Shahin, call your first witness.

MS. SHAHIN:  I would like before anyone comes in, my husband also is a plaintiff and he is the witness I would like to, before anybody else testifies, I would like him to testify because he will listen to everybody else.

THE COURT:  All right.  Mr. Shahin, I'm going to place you under oath and --

MS. SHAHIN:  I'm sorry, he is not -- a Muslim, he cannot use

that.

THE COURT:  He will affirm.

THE BAILIFF:  He will affirm.

### PLAINTIFF'S EVIDENCE

### MAZDEN SHAHIN

having been first duly affirmed, was examined and testified as follows:

### DIRECT EXAMINATION

BY MS. SHAHIN:

Q.    So, we received the first notice of non-sufficient check from

Delaware Credit Union dated June 21, and I ask you to tell, because I was

working early morning, I ask you to go to the branch, talk to the manager

and try to sort it out.

Would you be so kind to explain what exactly happened in the

meeting with that manager, what was his name, what did you discuss, what

was the outcome of the discussions?

A.    I went to the bank and I met with the manager, Miss Lisa

~~Poore,~~ *Brewer* and I asked her what is all the issue and help me in removing this

non-sufficient fund, which was testified first.  So she explained to me that

she cannot help because the laws of the bank and she gave me the

brochure, this one, and she highlighted, highlighted sections there.  And so

I told her, why you cannot remove this?  And she explained the reasons

and she cannot do anything here.

So I told her, can you give me a copy of the check, cancel the check?  And she said, we don't keep the cancel the check, but we can, you have to pay for it, and we can get copy of it.  How much it costs, I asked her, she said I don't know that.  But she said, I can figure it out and I will call you with that.  I gave her my work number and she promised to call me and she didn't call me.

Q.     Okay.

THE COURT:  Any other questions?

MS. SHAHIN:  Yes.

BY MS. SHAHIN:

Q.     Let's talk about, after that, one month later exactly, on July 21st, you talked to C.O. of Federal Credit Union, Duke Strosser.  Would you give us, first of all, background of how it happened that, who contact who and when and how, and what was the full whole conversation about with Duke Strosser on June 21, 2005?  I'm sorry, July 21, 2005.

A.     Before that date he left a message on my machine, he said he wants to talk with me about the case.  And I called him back and I couldn't get into him so I left a message to him and I told him my timeframe and etcetera.  But I think on 21st, we were able to communicate.

So, he offered to settle two cases.  I mean he offered to settle and he -- $70, which is two non-sufficient fund, $35 plus $35, which is $70, but his offer didn't include the other case, and he refused to pay the court fees which is $60 plus $5 for to subpoena Lisa Poore.  And most

importantly, his offer to settle only these cases was contingent upon me close that account with Federal Credit Union.

---

I had made a counter-offer to settle all cases and pay all court fees. So he declined to do that. And I was thoroughly insulted when, I told him well, you need to talk with my wife because she's the one that handles all these cases. He said, I cannot talk to your wife, your wife doesn't tell you the truth. So I got, I lost my temper after that because it was a complete insult to me that your wife doesn't tell you the truth, which implies that my wife is a liar -- and he said, one statement, I thought that you are reasonable and this why I talk to you, but you are like your wife, not reasonable, so I was very, very mad then. And I told him nothing to speak about and I ended the conversation. But it was a long conversation because we went over it.

THE COURT: All right. Any other questions?

MS. SHAHIN: No, not now.

THE COURT: All right. Mr. Morris, cross-examination?

MR. MORRIS: I have no questions, Your Honor.

THE COURT: All right. Mr. Shahin, thank you for your testimony.

(WHEREUPON, THE WITNESS STEPPED DOWN).

MS. SHAHIN: I would like to call then, the teller processed the transaction.

THE COURT: All right. And her name is?

14

MS. SHAHIN:  Sharon Jones.

THE COURT:  May we have Miss Jones brought in.

MS. SHAHIN:  Your Honor, at this point I would like to introduce two more exhibits, possibly Exhibit No. 2 and Exhibit No. 3. No. 2 will be to the witness I will present the original of the cancelled check, to you and attorney, I would present a copy of both sides and the Exhibit No. 3, I would like to present the receipt which my husband received when he deposited that check.  To the witness I will present the original to you, and the attorney, I will present copies.

MR. MORRIS:  No objections.

THE COURT:  Have you marked those as exhibits by number already?

MS. SHAHIN:  No, I made a sticker, but I can do that if you want me to.

THE COURT:  No, I want the court clerk to.

MS. SHAHIN:  All right.  Then  is --

THE COURT:  All right.  Mr. Morris, you have seen both of these documents?  Would you like to look at them to make sure?

MR. MORRIS:  I have seen a copy of the check because I have a copy of that.  And I take it that is the-- is that the bank deposit, or--

MS. SHAHIN:  This is original.  This is the copies for the Judge and for you; do you want it?

15

MR. MORRIS: Yes, please.  Well, I suspect all it is is the deposit, Your Honor.

MS. SHAHIN: The deposit too and those two.

THE COURT: All right.  We will --

MS. SHAHIN: Please, tell me, because I have only stickers so, that if you permanently mark something, I want to know which one is your mark.  We have one number one and now it will --

THE COURT: You have submitted, your numbers are not relevant at this point.

MS. SHAHIN: Well, I'm talking about the court number, in the pre-conference session, we marked one exhibit as number one.

THE COURT: You did?

MS. SHAHIN: Yes, the Court now marked, so --

THE COURT: This one?

MS. SHAHIN: Yes, that's the one.  If attorney doesn't have --

THE COURT: Okay.  This is the answer to the complaint?

MS. SHAHIN: Attorney didn't get it at that point, so I think I can provide --

THE COURT: Were there other exhibits marked in the pretrial conference?

MS. SHAHIN: No.

THE COURT: Just number one?

MS. SHAHIN: That's number one.

THE COURT:  All right.

MS. SHAHIN:  This is why, if I refer to Exhibit 1, then I --

THE COURT:  Okay, and you're going to use this as an exhibit?  I mean it's a pleading.

MR. MORRIS:  It's a pleading from the Court below.  This is a de novo, so whatever relevance it has I'm going to argue, but I'm not going to fight over it becoming an exhibit.

THE COURT:  All right.  I'm just trying to figure out a systematic way of marking these exhibits.

Are you going to ask the Court to consider this as Exhibit No. 1?

MS. SHAHIN:  Absolutely, Your Honor.

THE COURT:  All right.  Do you have any objection?

MR. MORRIS:  No objection, Your Honor.

THE COURT:  All right.  The answer to the complaint will be marked as Exhibit No. 1.  The check dated June 20th, '05, check number 559, will be marked as Plaintiff's Exhibit No. 2.  And the receipt, the check deposit voucher dated 06/20/05 will be marked as Plaintiff's Exhibit 3.

Now, Miss Shahin, I would typically be marking the originals.

MS. SHAHIN:  Yes, please.  If, you will take originals from me, right?  I will not have them after the court session?

THE COURT:  They will become exhibits of the Court and part of the court record.

MS. SHAHIN:  Okay.  Fine.

THE COURT:  In the alternative, I can mark copies if Mr.

Morris has no objection.

MR. MORRIS:  I have no objection to that.

MS. SHAHIN:  Mr. Morris, I can provide you with that

because you didn't get copies, so --

MR. MORRIS:  Okay.  Thank you.

THE COURT:  Would you prefer that these documents be

marked in copy form versus original?

MS. SHAHIN:  I would prefer and I would like to keep

originals absolutely.

THE COURT:  All right, and Mr. Morris, you don't have any

objection to that?

MR. MORRIS:  I don't have any objection to that, Your

Honor.

THE COURT:  All right.  Well, we will mark the copies as I

have just stated.  And we will pass these documents back to Miss Shahin.

MS. SHAHIN:  All right.  Now, I would ask your permission

to present these documents to the witness?

THE COURT:  You may.

(WHEREUPON, PLAINTIFFS' EXHIBIT NOS. 1

THROUGH 3 WERE MARKED).

### SHARON JONES

**having been first duly sworn, was examined and testified as follows:**

### DIRECT EXAMINATION

BY MS. SHAHIN:

Q.    Here you are.  Do you recognize those two documents?

A.    Yes.

Q.    You definitely processed those, right?

A.    Yes.

Q.    And this is marked you as --

MS. SHAHIN:  Your Honor, at that point, I might also would like to present those information about the accounts, the withdrawal policies.  I think they wanted to -- we concur, I guess, with the attorney about that this needs to be --

THE COURT:  All right.  Do you have any objection to the pamphlet that -- I'm not sure what it's called.

MR. MORRIS:  It's the --

THE WITNESS:  It's truth in savings.

THE COURT:  Truth in savings pamphlet be marked as Plaintiff's Exhibit 4?

MR. MORRIS:  No objection, Your Honor.

MS. SHAHIN:  So this one will be No. 4.  Okay, that one, and I will pass one for you.

MR. MORRIS:  All right.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 4 WAS

MARKED).

BY MS. SHAHIN:

    Q.    So, that check, you code it as a non-local.  According to this,

your pamphlet, is this routing number, is a non-local, local?  Can you find

it and tell me?  Is it local or non-local?

    A.    It's a local hold.

    Q.    It's a local hold.  So, what procedures --

    THE COURT:  You need to tell me what number you're

referring to.

    MS. SHAHIN:  Could you say that number?  This is the

second number, no, first number, this is a routing code, I'm on the check,

which is 031100089.  This is a --

    THE COURT:  Thank you.

    MS. SHAHIN:  -- routing code.

    MR. MORRIS:  Your Honor, we have no objection, we're

willing to stipulate this was a local check.

    THE COURT:  All right.

    MS. SHAHIN:  Okay.

    THE COURT:  It has been stipulated that it was a local check,

despite the classification otherwise.

    MR. MORRIS:  Correct.

BY MS. SHAHIN:

Q.    Okay.  Would you be so kind as to tell us what procedures you were supposed to follow to correctly classify the check?

MR. MORRIS:  Objection, relevance, we've admitted that it's a local.

MS. SHAHIN:  Your Honor, it goes to the core of my argument, what are the ordinary care which the procedures they are supposed to be which was --

THE COURT:  All right.  I'm going to let her pursue that. You may answer the question.  Ask the question again so she knows what it was.

BY MS. SHAHIN:

Q.    Would you be so kind as to explain what are the procedure the bank placed in order to correctly classify the check?

A.    The procedure to correct the check?

Q.    Yes, what you were supposed to check?  What are the procedures that when you classify the check, what you have to check against?

A.    We look --

Q.    Monitors to classify it correctly?

A.    We look at the routing number to determine what type of hold to place on the checks, non-local or local.

Q.    So why then, that one, which is definitely is a local check, was misclassified?

A.    All I can say it was a human error.

Q.    Okay. Is there any safeguards in the bank's procedures to avoid such misclassification?

A.    I mean we do have the procedure that we do follow by.

Q.    What are they?

A.    The whole procedures.

Q.    Yeah, but in order--what a double-check, what safeguards? If you make, let's say, you make a mistake, what are the procedures to double-check that whether you made correct classification?

A.    I'm sorry, I'm not really understanding the question, because we get the member a receipt. And unfortunately, you know, there was a human error, the member did not double-check the receipt. If the member would have double-checked the receipt then we could have caught the error that same day.

Q.    Okay. Then there is here, the authorization signature. So, who was supposed to sign here?

A.    The member, but that's when a member does a withdrawal. It doesn't say that they have to sign it for a deposit.

Q.    Are you supposed to ask the member to sign?

A.    When they do a withdrawal.

Q.     Okay.  Are you supposed to tell him that, and notify the member that you put a non-local hold on the check?  You do tell that to the person?

A.     It's on his receipt.

Q.     He didn't notice.  He doesn't understand, I do and I didn't deposit.

MR. MORRIS:  Objection, if she's going to ask a question, that's fine.

THE COURT:  All right.  Ask it in question form.  You're offering testimony as to his knowledge and statement.

BY MS. SHAHIN:

Q.     Is your obligation in any way, according to the bank's procedure, to notify the client that you put a non-local hold on the check?

A.     When I give the member his receipt back, he is informed and it's on his receipt that the check is non-local.

Q.     But are you required, verbally, to tell him that?

A.     I'm not required.

Q.     You're not required?  It's not the bank procedures?

A.     Well, I'm not sure.  I mean, because -- I'm not sure.

Q.     Is it required, in bank procedures, to notify the client what is non-local check and that there is extended hold on availability of fund, are you required to tell it in verbally to the client about that?

A.    No, we're not required to tell the member that their check is

on hold because it's stated on the receipt that their check is on a hold.  If

there's an extended hold where we have verified a check and the funds are

not available, then yes, we then send out a notification to the member.  We

first try to contact that member within 24 hours because we have to verify

a check.  And when the check is not available then we send out a

notification to that member saying that check has been placed on an

extended hold, which would be considered 11 business days.

Q.    So you currently are not required to notify verbally?  So

you're not required to get the signature?

A.    Not for a deposit.

Q.    Not for a deposit.   Only for a withdrawal?

A.    Yes.

Q.    Okay.

MS. SHAHIN:  I don't have any further questions, Your

Honor.

THE COURT:  All right.  Mr. Morris, do you have any

questions?

MR. MORRIS:  No questions, Your Honor.

THE COURT:  Miss Jones, thank you for your testimony, you

may stand down.

MR. MORRIS:  Can she be excused, Your Honor?

THE COURT: Miss Shahin, do you anticipate calling this witness again?

MS. SHAHIN: No, I don't think so.

THE COURT: All right. Miss Jones, I'm going to release you from the court. You're free to go. Thank you for your testimony.

(WHEREUPON, THE WITNESS STEPPED DOWN).

MS. SHAHIN: I would like to call now Lisa Brewer.

THE COURT: You may proceed.

MS. SHAHIN: Okay, Your Honor.

LISA E. BREWER

having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. SHAHIN:

Q.    Lisa, it is my understanding that my husband met you on June 23rd about the non-sufficient fund notice, which he received and he asked you to look into the matter, and do you remember what happened?

A.    I don't remember that it was the 23rd of June, but I remember when he came and it was a busy day, and he was upset and I tried to explain to him that the check had already left the office, so we couldn't verify if it was local or non-local. But my teller put it on a hold and that's what we had to stand by.

Q.    Was there any issue of local or non-local raised at that point?

A.    I believe he had said it shouldn't have been on a hold and I couldn't debate him with it because I didn't, we didn't have a copy of the check.

Q.    And he asked you to get him a copy of the check, right?

A.    Right.

Q.    And what did you promise him to do?

A.    I told him I would request a copy of the check.

Q.    Did you tell him how much does this cost?

A.    No, I told him I didn't know, but I would let him know if there was a cost.

Q.    Did you promise to call him the same day?

A.    I don't remember promising him.

Q.    You don't remember?

A.    No.

Q.    In the previous court session you confirmed that you promised to call him the same day.

A.    I don't remember that.

Q.    Now you don't remember that?

A.    No, ma'am.

Q.    You confirmed that in the previous session of that court in the JP Court, you confirmed that you promised him to call the same day and you did not?

A.    I don't remember that.

MS. SHAHIN: So, Your Honor, I would like to state that she confirmed that in the previous court that she promised to call him about the price of the check the very same day.

THE COURT: All right. This is a --

MS. SHAHIN: And she didn't call him.

THE COURT: This is a brand new hearing. Her testimony is being presented to this court for the first time. You have utilized your recollection of her testimony to cross-examine her and to try to jog her memory. Do you have a transcript of the testimony below?

MS. SHAHIN: No, there are no transcripts in the JP Court. So, the only thing, which I can check off, is just, because in that court she said that she doesn't remember that she denied assist the client. And I would like to jog her memory. That's my copy of the same document that he has all the markings, I would like to present to her.

THE COURT: Well, she remembers meeting with your husband.

MS. SHAHIN: Okay.

THE COURT: She has testified to that and she remembers basically the discussion --

BY MS. SHAHIN:

Q.    So, do you remember that you --

THE COURT: Miss Shahin?

MS. SHAHIN: Yeah?

THE COURT: I am talking.

MS. SHAHIN: Okay, I'm sorry.

THE COURT: We do this process, one person talks at a time. I know that you're anxious to get everything in and I know that you're not happy with her answer. But that is her answer.

MS. SHAHIN: Okay.

THE COURT: And I'll consider the fact that she may have testified differently, but I'm not going to use your recollection of the testimony as the law.

MS. SHAHIN: Okay.

THE COURT: All right. You may proceed.

BY MS. SHAHIN:

Q.    Okay. Could you tell us also what are the procedures, in the bank, to safeguard the misclassification of the checks?

A.    Well, tellers are trained and we usually have them make a note of what checks are local and they know how to determine a local or non-local check based on the routing ID.

Q.    So would you be so kind to explain to me, what would you consider as ordinary care in this case, procedures of ordinary care, to secure correct classification of the checks?

A.    Ordinary care, they examine the check and determine if it's local or non-local and place the appropriate hold.

Q.    Appropriate hold.  Okay, so what is the appropriate hold for the local checks?

A.    Two business days if it's not a new account.

Q.    If it's not a new account.  So, the first 100 when is it available?

A.    The next day, if it's put into the checking.

MS. SHAHIN:  Your Honor, that what I would like now to question, because first of all, if the client was notified that it's a non-local check classification, because he didn't notice that, that if he were told that by teller or if manager did something to classify it correctly, the money would have been available.

I would like to introduce now, there is original of the PNC bank statement from our account and I made a copy for each party.  I would like to introduce it as Exhibit No. 5.  First of all, it shows that when the money was withdrawn from the bank, and also later on it shows where bank is at, and I will pursue that unfair enrichment theory on the basis of that document.  So, I'm asking that --

THE COURT:  Mr. Morris, have you seen this document?

MR. MORRIS:  I haven't.  If I could see a copy, I don't foresee it's going to be a problem.

THE COURT:  All right.  Miss Shahin, you want copies of that account statement marked?

MS. SHAHIN:  Right, as No. 5.

THE COURT:  All right.  Show them to Mr. Morris.

MS. SHAHIN:  So, I would like to say that that particular branch is located five minutes from Delaware Credit Union, so if my husband knew that there was extended hold placed on the check, if he was told, because after that happened and we filed a lawsuit, every teller asked me to sign and verbally told me that it's a non-local check.

So, I would assume that that would have been a normal procedure.  That was not followed with my husband, so he wasn't told that check was misclassified.  So, if he knew that, he would have gone to the bank, got cash and brought it.

So, what we are claiming here is that because the ordinary care was not administered at the bank, the lapse of that allowed that mistake to occur, not corrected, and obviously resulted in adverse action by the bank.

BY MS. SHAHIN:

Q.    The other thing which I would like to ask, when was the check, that check which was --

THE COURT:  All right.  Miss Shahin, let's mark the exhibit we've been talking about.

MS. SHAHIN:  Oh, okay.

MR. MORRIS:  I have no objection, Your Honor, as the matter, expediting the matter.

THE COURT:  There is this one page document?

MS. SHAHIN:  Right.

MR. MORRIS:  Both sided, Your Honor.

THE COURT:  All right, we will mark as Plaintiffs' Exhibit 5.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 5 WAS

MARKED).

THE COURT:  All right.  Are you going to question Miss

Brewer about this document?

MS. SHAHIN:  Yes, eventually, but I have some other

questions.

THE COURT:  Okay.  You may proceed.

MS. SHAHIN:  It will relate to that document.

BY MS. SHAHIN:

Q.     When this check, which was presented on June 20, was

presented for payment to PNC bank?

A.     You ask me when?

Q.     Yeah.  Was it the same day, the following day?

A.     When did we make our deposit, the next day.

Q.     The next day.  Is it a normal, regular procedure to deposit the

check the next day?

A.     Yes.

MS. SHAHIN:  Your Honor, Title 6 of Delaware Code

constitution, subtitle 1, article 4, bank deposits and collections, part 2,

collections of, a, items depository and collecting banks, in Section 4-202,

entitled responsibility for collection or return when action timely, in part b

says the following: a collecting bank exercise ordinary care under (a) by taking proper action before its midnight deadline following the receipt of an item, notice or settlement. Taking proper action within a reasonable, longer time may constitute an exercise of ordinary care but the bank has the burden of establishing time limit.

So, practically that particular code section of Delaware constitution demands the action by the midnight of the day of deposit.

BY MS. SHAHIN:

Q.    Would you be so kind to tell me what exactly was done in accordance with that requirement of Delaware constitution?

A.    What was done?

Q.    Yeah, there was supposed to be action done by midnight of June 20, by the bank, what was done?

A.    Well, we couldn't take our deposit until the next day because we're open until 6:30. So our deposit is not finished until 6:30 that night, and then we come in the next day and take the deposit to the bank.

Q.    So practically, you do not follow the requirement of Delaware constitution to make an action by midnight of that date?

A.    I'm not familiar with that or if we're even required to.

Q.    So, you practically, it's a standard procedure that you always deposit checks the following day?

A.    Pretty much.

Q.     So you never deposit checks on the same day when you receive them, no matter when the check's deposited?

A.     Normally we don't, no.

Q.     So do you have anything what is called cut-off time?

A.     A cut-off time?

Q.     Uh-huh (affirmative response).  When you record check with one day or another date?

A.     No, we have the whole day is considered one day.

Q.     One day, so the whole day until 6:00 you will accept checks with the same date?

A.     Yes.

Q.     Not with the following date?

A.     Yes.

Q.     Okay.  Did you talk to anybody in the head office about your conversation with Dr. Shahin and his request for a copy of the check?

A.     Yes, I did.

Q.     When did you know that the check was misclassified?

A.     I can't remember.  I didn't know it for a while though.  It takes a while to get a copy of a check, so, I didn't know it right away.

Q.     So a while?

A.     I couldn't tell you when --

Q.     Okay.  Not right away, but how long --

A.     I couldn't tell you.  I --

Q.    Was it two weeks, one month?

A.    I don't remember.

Q.    What is the usual procedure?  How long you expect to get the check?

A.    I don't --

Q.    When you request?

A.    I've never requested a check before this.

Q.    You have never requested a check before?

A.    No.

Q.    So when this particular check arrived?

A.    I don't remember.

Q.    Approximately?

A.    I don't believe that I was the first person notified.  I don't believe I found out until possibly we went to trial.

Q.    So until you reached the trial, you didn't know that the check was misclassified?

A.    I don't remember.  I don't remember that part.  Just, yeah, there's been a lot of trials, so, I don't remember.

Q.    Okay.  This is the check, it was cleared on the 21st of June. Have you idea when the money was deposited to the Delaware Credit Union account?

A.    No, I don't.

Q.    You don't know?

THE COURT:  All right.  What document are you referring

to?

MS. SHAHIN:  It's exhibit, the last exhibit, No. 5.

THE COURT:  Thank you.

BY MS. SHAHIN:

Q.    It's written in, you can see that, the check 320, check 559, was

cleared on June 21st?

A.    We normally --

Q.    So the money --

A.    -- don't know when checks --

Q.    You don't know?

A.    No.

Q.    Okay.  It was cleared on June 21st.  It was withdrawn.  We

deposited on June 20 --

MR. MORRIS:  Objection to the form of the question.

MS. SHAHIN:  -- and even if it was deposited on--

THE COURT:  All right.  Is this a question for the witness --

MS. SHAHIN:  No.  No.  I'm clarifying.

THE COURT:  -- or are you clarifying?

MS. SHAHIN:  No, I am clarifying it with you.  I'm just

telling you that.

THE COURT:  You have a witness on the stand and you need

to question the witness.

MS. SHAHIN:  Okay.  No, I'm just stating she didn't know, and I'm stating the fact, which is reflected in that statement.

THE COURT:  All right.  You can offer that in testimony yourself, but her answer is she does not know.

MS. SHAHIN:  Oh, okay.  Okay.  That's it.  Yeah, that's it, Your Honor.

THE COURT:  Okay.  No further questions for Miss Brewer, Miss Shahin?

MS. SHAHIN:  No, not of Miss Brewer.

MR. MORRIS:  No questions, Your Honor, and if she could be excused?

THE COURT:  All right. Miss Shahin, do you anticipate recalling Miss Brewer for further testimony in these proceedings?

MS. SHAHIN:  I'm not so sure about that.

THE COURT:  All right.  Then I'll have her wait.

MS. SHAHIN:  Okay.  Thank you.

THE COURT:  All right, take a seat out there.

(WHEREUPON, THE WITNESS STEPPED DOWN).

THE COURT:  Your next witness?

MS. SHAHIN:  Mr. Strosser.

THE COURT:  All right.  Miss Shahin, you may question the witness.

MS. SHAHIN: Yes. This I would like to present that which is marked as Exhibit 1, because that will be about that document.

THE COURT: All right. That would be the answer to the complaint.

MS. SHAHIN: Answer to the complaint. Yes.

### RICHARD J. STROSSER

having been first duly sworn, was examined and testified as follows:

### DIRECT EXAMINATION

BY MS. SHAHIN:

Q.    Mr. Strosser, would you be so kind to tell me who was the author of that document? Who wrote that document?

A.    Probably -- I refer to the document, I don't know who wrote it, there's no signature at the end of it. Is this two pages or is this one page?

Q.    That's how I was given it --

A.    There's obviously no signature attached.

Q.    -- so I don't know.

A.    When we get complaints, this is a response to the Justice of the Peace Court, my compliance officer would probably investigate it and then it would be a joint effort. So, probably my compliance officer and I were involved in the answer to this complaint.

Q.    So, do you think that there was supposed to be a page two to that document? You mean that it was supposed to be signed?

A.     Can I read the whole document then?  I mean, I don't know what she's -- do you have specific questions or --

Q.     No --

THE COURT:  Wait a minute, folks.

THE WITNESS:  Okay.  I'm sorry.

THE COURT:  Don't ask --

THE WITNESS:  I --

THE COURT:  If you don't understand the question --

THE WITNESS:  Okay.

THE COURT:  -- or if you can't answer her question based on --

THE WITNESS:  I don't --

THE COURT:  -- the document in front of you, advise that you cannot do that.

THE WITNESS:  Okay.

THE COURT:  Is there anything, is this document complete, this exhibit?

MS. SHAHIN:  I don't know, Your Honor.  I have never received --

THE WITNESS:  I don't know.

MS. SHAHIN:  --this document officially.

MR. MORRIS:  And, Your Honor, I didn't represent at the JP Court, I don't know if it is or not.

38

MS. SHAHIN:  So that document has never been given us

officially.  So I have no idea whether it's complete or not.  This is the first

time I have come across.

           MR. MORRIS:  I have conferred with Miss Thompson and

she confirms that this is the complete document.

           MS. SHAHIN:  Oh, okay.

           THE COURT:  All right.  This is the complete document, Mr.

Strosser.

           THE WITNESS:  There was an answer.  Yep.  Okay, so I

don't know the answer to your question, but that's my answer.

BY MS. SHAHIN:

      Q.     So you don't know who wrote that document?

      A.     I would say it was a joint effort by compliance and myself.

I'm sure I reviewed it.

      Q.     You're sure that you reviewed it, so you have --

      A.     Yes, I would have looked at it before it went to court, yes.

      Q.     Okay.  Okay.  Then, would you be so kind, you claim that on

July 21st, you had a conversation with the plaintiff, Dr. Shahin, would you

be so kind to give us the salient point of that conversation?

      A.     Yes, I do remember a conversation with Mazen.  It was a

phone call based on a requirement to appear in court for the $35 fee in

question.  It was my intent to try to settle the matter out of court because

we had been in court previously in which the court ruled in the Credit

Union's favor.

First I explained the Credit Union's, how the transaction was

processed correctly. And then that was upsetting to Mazen and I said, all

right, what if the Credit Union paid you for $35, would you drop the case

and save the court and the Credit Union time and resources. He responded

by saying, well, what about the last cases, they've already been decided by

the court. And I think the response was for a significant sum of money, is

what I recollect. And I said, well, if the Credit Union, in discussing this,

we're discussing settling the case, I said, if the Credit Union were to give

you that sum of money, would you be willing to close your account? And

he responded in that that was unacceptable.

Q.    So, let's try to clarify. Your offer was to pay or to settle?

A.    It was all discussion; my phone call was to explain how the

Credit Union processed the transaction correctly. I did offer $35 to settle

the case in question. But Mazen took it back to the last case --

Q.    So you offered --

A.    -- that was already decided.

THE COURT: Let him finish the answer to the question.

THE WITNESS: Mazen took the discussed back to a case

that was already decided in which I responded that we might be willing to

do that if he were willing to close his account.

BY MS. SHAHIN:

Q.    All right.  So --

A.    So it was all discuss --

Q.    Mazen testified that you offered to pay $70, not $35, so, what exactly?  Was it $70 or $35?

A.    I don't recollect dollar amounts.  My recollection is that it was $35.

Q.    For which case?

A.    For the case in question that was scheduled for July 20 -- the next day, I think.

Q.    They both were scheduled for the same day.  The JP Court heard both cases in one day.  So, which case then were you referring to; was it one case or both cases?

A.    I only recollect that there was one case.  There is a third case, I don't know the timeframe of that.  I'm responding to the case in question today.  The third case, there was a -- the third case which I don't know if it's part of the proceedings today, was what I recollect to be a $35 transaction also, that was never communicated to us and we ended up in court and we told the --

Q.    I'm sorry, but you didn't answer the question.  I'm asking about only $35 and I want to figure it out; $35, which case it relates, because the original hearing, was on both  cases, at that point, the Judge separated both cases and --

A.    It was the $35 that were charged on 06/21.

Q.    06/21?

A.    Yes.

Q.    So you didn't offer $70, that's what you are saying?

A.    Yes.

Q.    You offered only $35?

A.    Yes.

Q.    So you didn't offer to pay another $35?

A.    Yes, that is my recollection, yes, it was just the $35.

Q.    So, practically –

MS. SHAHIN:  It's so important, Your Honor, I will ask a few more times.

BY MS. SHAHIN:

Q.    I just want to make sure that you offered to pay was only for the first case, which is the subject of this, today's proceeding?

MR. MORRIS:  Objection, that's been answered two or three times.

MS. SHAHIN:  And I want three times answer, just to make sure.

THE COURT:  It's been asked and answered.

MS. SHAHIN:  Okay.

THE COURT:  I know it's not the answer you want.

MS. SHAHIN:  No, it's what I want.   No, it's what I want.

THE COURT:  I know that your husband has testified differently.

MS. SHAHIN:  I understand.

THE COURT:  So I'm going to have to figure that out --

MS. SHAHIN:  No, but it's what I want --

THE COURT:  -- if it's a --

THE COURT REPORTER:  Excuse me, you have to talk one at a time, I'm recording.

THE COURT:  If it's an important fact, this Court will have to weigh the testimony of Dr. Shahin and Mr. Strosser.

MS. SHAHIN:  Okay.

THE COURT:  All right.

MS. SHAHIN:  Okay.

BY MS. SHAHIN:

Q.     So you offered only $35 only for the first case, which is the subject of this case.  So he offered to settle that.  So, I want to make sure that you offered to settle only for $35, you didn't offer for the court costs, or $5 for the subpoena?

A.     On July 21st, when I called you, I did not know about a third case that was $35.  You keep calling things first case, second case, third case.  This call was about $35.  On July 21st.

Q.     Did you --

A.     There is a third case for $35.  You filed numerous cases.

MS. SHAHIN:  Your Honor, the subject of that proceedings, there are checks which were misclassified, and if we refer to the first and second, so we're talking about only those two cases.  It looks like that there's some misunderstanding and I would like to clarify it.

THE COURT:  I only care about this case.

MS. SHAHIN:  Yeah, I understand.  The third case, if we're talking about a third case, it's the previous case, and it's out of discussion right now.

THE WITNESS:  Okay.

MS. SHAHIN:  I just want to make it clear.

THE WITNESS:  Thank you.

BY MS. SHAHIN:

Q.     So when we're talking about the first and the second, we're talking about the deposited check for $325, which was misclassified.  So, the first occurrence and the first case we are talking about, is that when the charge was non-sufficient was made on June 21st, and this is the subject of this hearing.  So when we're talking that you offered to pay $35, it was for that particular case and you didn't offer for the second to pay anything.  That's it.

I want to make sure that we understood each other correctly; that you offered to settle that case for $35 without court costs and without subpoenas?

A.    There was no discussion on court costs or subpoena, only a request for additional money for the very first case.

Q.    For the third case?

A.    Out of three. No, the very first one.

Q.    So we --

A.    So there was no discussion on subpoena or court costs.

Q.    So, but you acknowledge that you didn't offer to pay for those?

A.    It was not discussed is what I acknowledge. I offered to pay the $35 fee so we could avoid court.

Q.    Okay, without court costs and subpoena, that's clear because my husband understood that you didn't want to pay that.

A.    It was, I don't -- there was no discussion to my memory on those things.

Q.    There was no discussion --

A.    It went down a whole other path.

Q.    The second thing that Dr. Shahin testified is that he offered you, he made a counter-offer, which you declined. Sorry, scrape that. He says that when you offered to pay $35, that payment of $35 was contingent of the closure of the account?

A.    That is not correct. It was to avoid court.

Q.    No, he said that you wanted him to close that account and then you'd pay $35; so you deny that?

A.    Can you repeat the question?

Q.    Mr. Shahin testified that you offered to pay $35.

A.    That' correct.

Q.    You specifically refused to pay $30 court costs and $5 for subpoena, but you also specifically mentioned that you will pay that $35 only if we closed the account?

A.    That is not correct.

Q.    That is not correct?

A.    Yes.

Q.    Okay.  Then my husband says that he was -- you told him that you cannot talk to me because I'm unreasonable and he became unreasonable when he asked for settlement of the case, which you said, the previous, the very first one?  Is it true?

A.    No.

Q.    It's not true?

A.    No.

Q.    Did you imply that I don't tell him the truth?

A.    What you just said previously was not true.

Q.    Did you imply to him that I don't tell him the truth, that I don't inform him of all what is going on correctly?

A.    No.

Q.    You didn't tell him that either?

A.    No.

Q.    Okay.  But here it's written, defendant has suggested the plaintiff seek financial services at another institution, as they're clearly unsatisfied with the Credit Union.  When did you do that, because you obviously deny that?

A.    As the note says, it was after the third suit filing.

Q.    So does it mean that after July 21st you had another conversation with Dr. Shahin when you offered to close his account?

A.    No, there was only one conversation that I remember with Dr. Shahin.

Q.    And you didn't offer him to close the account?

A.    There was discussion that if we were to pay his request, would he be willing to close the account.

Q.    And you --

A.    That discussion was rejected by him.

Q.    Okay.  But this does not, it doesn't say, here it says that defendant has suggested that the plaintiff seek financial services at another institution as they are clearly unsatisfied, after the third lawsuit filing.  Plaintiff has refused to close their account with Delaware Federal Credit Union.

A.    That's accurately stated.

Q.    So you made that offer to close the account?

A.    We suggested.

Q.    You suggested?  Okay.

A.    And even the judge in the other trial suggested.

Q.    Okay.

MS. SHAHIN:  Your Honor, may I in front of that, ask my husband again about the same subject?

THE COURT:  Are you finished questioning this witness?

MS. SHAHIN:  I'm not sure.  I just want to -- I'm not sure, because that was my understanding.

THE COURT:  Well, Mr. Morris gets to cross-examine this witness first.

MS. SHAHIN:  Okay.  Okay.

THE COURT:  And you can excuse the witness and recall him.

MS. SHAHIN:  Oh, okay.  Okay.  I wasn't sure about procedure.

THE COURT:  All right.

MS. SHAHIN:  Can I have a drink?

THE COURT:  Are you finished with this witness at this time?

MS. SHAHIN:  With him, yes.

THE COURT:  Any questions?

MR. MORRIS:  I have no questions of Mr. Strosser.

THE COURT:  All right.  Mr. Strosser, thank you for your testimony.

Mrs. Shahin, what is your intent, to actually recall Dr. Shahin and then recall Mr. Strosser, or are you finished with Mr. Strosser?

MS. SHAHIN:  I'm not sure.  I want to ask my husband to --

THE COURT:  Well, for practical purposes, I'm wondering whether I'm going to have him step out of the room, but if you're only going to ask your husband one or two questions, my inclination would have him remain in the room.

BY MS. SHAHIN:

Q.    Okay.  What I want to logically follow up how the conversation was going on, so, you offered him to pay $35?

MR. MORRIS:  Asked and answered.

BY MS. SHAHIN:

Q.    That was the beginning, that was the first, which you made an offer, right?

A.    That was the subject of our conversation.  After explaining why the transaction --

Q.    I mean, what exactly he answered you when you made an offer?

A.    He refused.  He refused.

Q.    He refused.

A.    He refused all offers or discussion items.

Q.    Just a moment.  Was it one offer or many offers?

A.    There was, like I've already answered these questions.

THE COURT:  All right.

THE WITNESS:  All right.  One more time.

MS. SHAHIN:  I'm trying to --

THE WITNESS:  We called --

THE COURT:  If you interrupt me one more time, I'm going to penalize you.  Do you understand?

MS. SHAHIN:  Yes.

THE COURT:  I understand how important this is to you.

MS. SHAHIN:  Okay.

THE COURT:  I understand that you want me to hear everything that you think is relevant.  And I promise you I'm going to give you that opportunity.

MS. SHAHIN:  Okay.

THE COURT:  But, please, do not interrupt me again.

MS. SHAHIN:  Okay.

THE COURT:  All right.  Mr. Strosser, she's asked the question many times.

THE WITNESS:  Okay.

THE COURT:  Would you, please, one final time, ask him this question, he is going to answer it.  And we're not going to ask it again.

Ask the question.

MS. SHAHIN:  No, what I want to trail now, what was the logic of conversation.

THE COURT: All right.

THE WITNESS: Okay.

THE COURT: He's going to try to answer that question.

MS. SHAHIN: Okay.

THE COURT: I think he has.

MS. SHAHIN: Okay.

THE COURT: I'm going to give you the opportunity to clarify it in your mind.

MS. SHAHIN: Okay.

BY MS. SHAHIN:

Q.    So, he refused, you offered him $35 to pay, what offer else you made?  What other offers you made in that conversation?

A.    He responded to the offer of $35 by bringing back the very, very first case, not these two $35 fee cases.

Q.    Uh-huh (affirmative response).

A.    Asking for a significant sum of money.

Q.    Okay.

A.    My response was, well, if the Credit Union was willing, it wasn't an offer, was willing to do that, would you be willing to close your account.

Q.    Uh-huh (affirmative response).

A.    And I use the words to clarify because he was not responsive to that.  I mean, he didn't say, I reject that; he was frustrated and kind of that was the end of the phone call.

Q.    Okay.  Okay.

MS. SHAHIN:  That's all, Your Honor.  I would most probably ask other questions, but I want to call Dr. Mazen to clarify what exactly was the conversation.

THE COURT:  Is it going to be any different from what he testified originally?  He's testified to that.

MS. SHAHIN:  You think that it's unnecessary?

THE COURT:  He's testified that he talked to Mr. Strosser on 07/21.  He was offered to settle two cases for $75 to cover two non-sufficient funds.

MS. SHAHIN:  Uh-huh (affirmative response).

THE COURT:  But that offer did not include the third case and that the bank refused to pay the court fees and costs for subpoenas for the witnesses.  The offer was also contingent on Dr. Shahin closing the account.  Dr. Shahin says he made a counter-offer to settle all cases and pay all court fees and the bank declined.  Is his testimony going to be any different?

MS. SHAHIN:  Yes, he did.  That's fine.  That's it.

THE COURT:  Then let's move on.

MS. SHAHIN: That's it. Then let's say went down with Mr. Strosser.

THE COURT: All right. Are you finished questioning this witness?

MS. SHAHIN: Yes.

THE COURT: Are you sure?

MS. SHAHIN: Yeah.

THE COURT: All right. Mr. Morris?

MR. MORRIS: I have no questions and I would ask that he be excused.

THE COURT: All right. Mrs. Shahin, do you think you would be calling Mr. Strosser again for further testimony?

MS. SHAHIN: No, I don't think so.

THE COURT: Can we excuse him?

MS. SHAHIN: Yes.

THE COURT: All right. Mr. Strosser, thank you for your testimony.

THE WITNESS: Thank you.

THE COURT: You may stand down and you are excused.

THE WITNESS: Thank you.

(WHEREUPON, THE WITNESS STEPPED DOWN).

MS. SHAHIN: Your Honor, I would like to question Renee Thompson now.

THE COURT: All right. Miss Shahin, you may question Miss Thompson.

MS. SHAHIN: All the questions will be related to that answer to complaint and I would like to present a copy to her, so that she can have it.

THE COURT: All right.

RENEE LEE THOMPSON

having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. SHAHIN:

Q.    Let's start with the first one, the first paragraph, answering Item 1, defendant acknowledges deposit of 320 to plaintiffs' account on 06/20/05. Plaintiff claims that their personal check cleared PNC Bank on 06/21/05. Defendant has no knowledge of proof of this claim. Defendant didn't make the deposit of said check to PNC until 06/21, and gave the member conditional credit of 100 on that day. We had no proof on the date of our deposit that the check for 320 was indeed cleared, paid by PNC, at the time of deposit.

How we should understand that, that if you are not aware of the clearance of $320 on 06/21/05, then it never happened, because if the banker is not aware then it's not true? Or you just didn't bother to check, or what? What is the issue?

54

A.    No, ma'am.  Based on my comment as stipulated in the answer to my complaint, essentially what happens is that what happened that day on 06/20, at the Blue Hen branch, you made the deposit of $320 and we understand that that did happen.  But we actually did not make the full deposit for the complete branch total until 06/21.  Now, we just happen to bank at PNC but we didn't actually take your check to PNC and cash it. It doesn't work that way.

Essentially what happens is we take the stack of deposits to PNC, they're all deposited with PNC, and then we don't actually receive notification of the clearing of those items until a day or two after that. Maximum two days after that, from Mid Atlantic, because these items are all processed electronically.  So we have no way of knowing when your check was settled.  We don't receive notification.

Q.    There is no way, no way to know when it was cleared?

A.    There is no regulatory requirement that requires PNC to notify us when your check has cleared.  They process millions of checks per day.

Q.    No, I understand that, but if you want to find out, is there a way for you to find out?

A.    I've just explained to you how we find out.  I spoke to my director of finance and she said exactly that's how it occurs.  We're given at the maximum two days after the date of our deposit.  That's when we're notified as to whether or not this item's cleared.  Basically, the way it's

stipulated is we work on a no news is good news. So if we don't hear anything back from PNC after two days of our deposit, we assume your check is good and by then all of your funds have been released.

Now, what would happen is if we were notified within two business days after our deposit at PNC, if we're notified that your check has been returned, then, in turn, we would back that check back out of your account. Because at that point we --

Q.    I don't think you answered my question. My question is: whether there is a way for you to find out if you want to, it's not if you don't do anything, but if you want to find out --

A.    There isn't.

Q.    -- is there a way to find out?

A.    Not to the best of my knowledge, no.

Q.    Not to the best of your knowledge. Defendant admits that then -- this is the third paragraph I'm reading. The defendant admits that an extended hold was placed in error and fee in question was erroneously posted. However, plaintiff didn't contact anyone at the Credit Union regarding this latest fee, other than the serving of this complaint.

A.    Uh-huh (affirmative response).

Q.    We already established that my husband came to Lisa and asked her for help.

A.    At the time when this answer was written, this is the information that I was given based on my investigation. So at that particular time, that's the way I understood this answer to be completed.

Q.    Okay. Would you be so kind to explain what does it mean your investigation?

A.    Because I'm the compliance officer and I'm responsible for investigating any member disputes or complaints.

Q.    I understand. Did you contact the branch manager or did you talk to Lisa Brewer?

A.    I was contacted by the branch manager, but it wasn't -- we didn't have a conversation about Mr. Shahin coming in and what he requested until after this complaint was written, to the best of my knowledge. I'm just trying to, you know, I, like everyone else who has testified today, am having a lot of difficulty understanding because there have been so many cases, that they're all intermingling now. We're all having a hard time recollecting what happened at each of these trials. 

Q.    But, did you talk to Lisa about that particular incident?

A.    Yes.

Q.    And did she tell you that she met Dr. Shahin?

A.    At some point she did, yes.

Q.    At some point?

A.     Before this complaint?  I cannot answer that, I cannot answer that yes or no, I do not know at this time.  But I do know that she did speak to Mr. Shahin.

Q.     However, you wrote down that he didn't contact, we didn't contact anybody?  So --

A.     There was one --

Q.     So that means this is not a true statement.

A.     There was one case, and I'm guessing it was this one, that you gave us absolutely no time to investigate this claim.  You literally went right to the courts, filed paperwork on us, and we had no time to respond to your complaint --

Q.     Okay.

A.     -- other than through the courts.

Q.     For example, why I filed a lawsuit, in 2003, when the bank made again mistake, I was running for two weeks and bank didn't do anything.

A.     I can't testify to that, I cannot testify.

Q.     You can't testify to that.  Okay.  So, practically this is not a correct statement?

A.     I guess I don't understand; are you saying the whole paragraph is a misstatement, because that is not correct, if you're stipulating the whole paragraph is incorrect.

Q.     So what is correct in that statement?

A.    I don't know, that's what -- well--

Q.    What is the correct statement then?

A.    Are we looking at paragraph three?

Q.    Yes.

A.    Defendant admits the extended hold was placed in error and the fee was erroneously posted. Yes. However, you did not contact anyone regarding this other than the serving of this complaint. To the best of my knowledge that was correct, you did not give me time to investigate it. You went and you filed a complaint and did not allow me time to investigate.

Check copy was received? Yes, because during my investigation I received a copy of the check. We realized the error and then you were contacted by Mr. Strosser about refunding of the fee. So, I'm not --

Q.    What about defendant has suggested that plaintiffs seek financial services at another institution; do you remember how that was offered?

A.    We've already heard testimony from Mr. Strosser.

Q.    Were you present when Mr. Strosser talked to Dr. Shahin?

A.    Yes, I was.

Q.    You were present?

A.    Uh-huh (affirmative response), and we told Mr. Shahin that I was present. Because we always do that on telephone calls, we'll say, this is the CEO and present with me is Renee Thompson, my compliance officer.

Q.    So you heard --

A.    I was there the entire conversation.

Q.    -- on the phone that's exactly Mr. Strosser said?

A.    That is correct.

Q.    That's exactly what happened?

A.    That is correct.

Q.    Okay.

MS. SHAHIN:  Just a moment.

(PAUSE).

MS. SHAHIN:  Your Honor, I would like to introduce now account information from the PNC bank, because it's slightly different but it's from the same area and it has a slightly different rules for timelines.

MR. MORRIS:  And I would object, there's no relevance here.  The issue is what's the policy and procedures for Delaware Federal Credit Union, because that's who the claim is against.

MS. SHAHIN:  Your Honor, I already referred that to the constitution of Delaware which says that ordinary care also includes prevailing standards in the area in which the person is located.  And also, that circular CC, which they refer to in subpart c, collection of checks, says that, about the relationship to the State laws.

If a State has a shorter hold for certain category of checks that is provided for under the Federal law then the State requirements supercede the Federal provision.

And if another bank in that area has a different rules, then I would ask why the State has different rules for the banks in that area. Especially it says here is EFA, which stands for that, I said, it's expedited availability act, which regulations CC incorporate, which states any State law providing availability in a shorter period of time then required by the Federal law is applicable to all Federally insured institutions in that State.

So, if PNC has a different procedure I would question why then Federal Credit Union has a different standard when in that area, it's supposed to be the same.

THE COURT:  I'm supposed to assume that PNC is setting the standard, or should I assume the Federal Credit Union is?

MS. SHAHIN:  I would assume the State has standards which all the banks in that area are supposed to follow.  So, that standard might be different from the standard which circular CC, which is federal agency act.  So, State law has preempted the Federal law, so, that's what I'm trying to establish here, that the State has a different timelines and PNC follows that timeline, Federal Credit Union does not.

THE WITNESS:  May I say something, Your Honor?

MR. MORRIS:  No, you can't.

THE COURT:  You can say something to your attorney.

THE WITNESS:  Okay.

(PAUSE).

THE COURT: I suspect this is going to have little to no value to the Court as far as it helping me decide the issue in controversy. I understand the objection. I'm going to let Miss Shahin give me everything she possibly thinks I might consider noteworthy in this case. So we'll go ahead and let her mark it as Plaintiffs' Exhibit 7.

THE COURT CLERK: Six.

THE COURT: Six.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 6 WAS MARKED).

THE COURT: And they are the PNC --

MS. SHAHIN: It's exactly --

THE COURT: -- account information.

MS. SHAHIN: Yeah, it's exactly. That's equivalent to --

MR. SHAHIN: Two?

MS. SHAHIN: Yeah, for the attorney and for the Judge. I think, Your Honor, I marked -- I'm sorry.

THE COURT: Okay. Just so the record is clear, Miss Shahin, you have highlighted in yellow.

MS. SHAHIN: Yes.

THE COURT: Those portions that you want the court to determine reference prevailing practice in the area.

MS. SHAHIN: Well, I will ask now that -- this is what I want to show. That PNC says that initial 100 of any deposit will be available on

the evening of your deposit, to pay checks you have written that are

presented to us --

THE COURT: Please tell me exactly where you're reading

from.

MS. SHAHIN: It's page fourteen.

THE COURT: Uh-huh (affirmative response).

MS. SHAHIN: And it's in the middle of the paragraph where

it says initial $100 of your deposit.

THE COURT: Okay.

MS. SHAHIN: So, this is where it says the initial 100 of any

deposit will be available on the evening of your deposit to pay checks you

have written that are presented to us that evening for posting.

And then on the next page, under other check deposits, under

capital letter "a", local checks, here. The initial 100 will be available as

discussed above. The remaining funds, if any, will be available the first

business day for all purposes unless your deposit is a large deposit, dollar

deposit, as defined in that section of this procure.

So, practically there, PNC bank, which is five-minute drive

from Delaware Credit Union, has a different availability policy. So they

make $100 available the same day; the rest of the deposit they make

available, on the local check, the next business day. This is not what

Delaware Federal Credit has.

THE COURT: All right. Ask her a question.

MS. SHAHIN: Yes.

THE COURT: You've set up the question, now ask her.

BY MS. SHAHIN:

Q.    Would you explain why the State law provides for the opportunity for the shorter time and Delaware Credit Union doesn't have that?

A.    Just for the record, I worked in Regulatory Compliance for seven years and my understanding of Reg CC is that it's a Federal law and we are a federally regulated credit union, we are not a bank. Banks and credit unions have different laws. Not to say that State law still doesn't affect our credit union, it does. But what I'm saying is that according to Reg CC guidelines, that the very minimum you need to follow the regulatory, Reg CC guidelines, which stipulates for a local hold. Funds are available the second business day after date of deposit. Now, under State law if you want to do less than the Federal guidelines, you're permitted to do that. But, we chose to follow Federal Regulatory law.

Q.    I understand, but this is relation to the State law. Regulation CC acknowledges that State law has a superiority over the Federal law.

A.    Without further investigation, I cannot confirm or deny that. I'm just aware that --

Q.    Again, I will state here that Section 229.20(b) provides that the State law has preempt, preemption over the Federal law and it says that, for example here, in the Section 229.20(a), it says, if a State contains

64

more than one check processing region, the State's hold period for in state

checks may be shorter than the Federal maximum hold period for non-

local checks, non-local. They don't talk about local.

Accordingly the State schedule would supersede Federal

schedule to the extent that it is applicable to in state non-local checks. So,

practically, the Regulation CC specifically states that the State law and

State practice is more important than Federal. And we're talking here

about ordinary care.

THE COURT: Do you have any further questions for Miss

Thompson?

MS. SHAHIN: Yes. I requested Miss Thompson to present

the proof of when the money, because that money, $320 deposit, left our

account on June 21st, but we were not given the full credit for that money,

which left our account on that date. PNC bank cannot possibly hold that

money. If they left our account, it made available immediately in our era

of electronic transfer, that money became immediately available to Federal

Credit Union. They were --

THE COURT: Are you testifying as a banking official for

PNC?

MS. SHAHIN: Yeah, so this is why I asked--

THE COURT: Are you a banking official for PNC?

MS. SHAHIN: No.

THE COURT: Are you asking this witness a question?

MS. SHAHIN: Yes.

THE COURT: Or --

MS. SHAHIN: This is the prelude to my question.

THE COURT: All right.

BY MS. SHAHIN:

Q.    Okay. So, I ask Mrs. Thompson in a subpoena to provide some proof of when the money became available to Delaware Credit Union?

A.    And I understand your question and I explained earlier that we have no proof. There's no regulatory requirement for PNC to provide us with proof of your item, when it cleared. They are not required to tell us that.

Q.    I understand that you're not required. In subpoena I asked you to prepare that.

A.    I have nothing to present. PNC is not required to give us anything. This is all done electronically. There is no way that we could have received your money from PNC on the 21st, unless we literally took your check, walked it to PNC, and cashed it and then took it back and deposited it into the Credit Union. And that is not how our procedures are handled at the Credit Union. That's the only way that we could have received your money that day.

Q.    So practically what you are saying is you did not receive that money on that day?

A.    No, we did not.  That's why we --

Q.    When did you receive the money?

A.    We have to assume that by the second business day after the date of our deposit, meaning June 23rd, we would have received full credit, full settlement on your account.

Q.    So if the money left my account on 21st, when did they disappear for two days?

A.    What it has to do is it has to go through Mid-Atlantic, which is our processing center and then it has to be processed through the Federal Reserve before it actually comes back to us.

Q.    And how long does it take you then?

A.    Approximately two business days.

Q.    But if the State mandates shorter period, why then you don't follow that procedure?

A.    That is not our control.  That is an electronic processed item. We cannot control that.  Once it leaves our hands and goes to PNC, we do not control that.  Maybe that's a PNC issue.  Why does it take two days for PNC to notify or not even notify us, why are we not even notified?  Maybe that's a PNC question.  It's not a Delaware Federal Credit Union question. We have no way of knowing that.

Q.    I'm sorry, I don't have problems with regard to PNC; I do have problems with Delaware Federal Credit Union.

A.    I understand.

67

Q.    And all the rules within Regulation CC, which you quote,

indicates that the State is regulating this issues and State customs and laws

supersede Federal.

A.    I'm actually not saying that, you are.  I'm not saying that that

supersedes --

Q.    I'm saying because I'm reading here Regulation CC.

A.    I'm not sure what you're reading and that could be construed

any way.  There are several different exceptionaries to regulations --

Q.    It's Section 229-20

A.    I understand.

Q.    (a) and (b).

A.    I'm sorry, Miss Shahin, I was not prepared to come in and

discuss the regulation today.  Not this regulation.

Q.    I subpoenaed you exactly --

THE COURT:  All right.  Miss Shahin, do you want her to

read it so that she is prepared to answer your questions?

MS. SHAHIN:  Yes, I would, just read that, please.

This is the one.  Could you read that?

THE WITNESS:  Would you like me to read it out loud?

THE COURT:  Put it on the record.  Read it out loud.

THE WITNESS:  Relation to State law, 229.20, general law,

Section 229.20(a) contains a general list as to how Reg CC regulates to

State laws addressing expedited funds availability.

Okay. Expedited fund availability, to me, is Uniform Commercial Code. And we're not talking about Uniform Commercial Code. We're talking about Reg CC. These are two totally separate regulations.

BY MS. SHAHIN:

Q.    This is analysis of Regulation CC.

A.    I thought the expedited funds availability, Funds Availability Act, yes, is Reg CC.

Q.    Right, that's what it is.

A.    Okay. Expedited -- I'm sorry, I thought it was UCC.

Q.    No, it's ACC. That's exactly what it is. This is analysis of regulation.

A.    Where did you? I'm sorry, may I ask, where you actually received this because --

Q.    Go and look, be my guest, look at that.

A.    Office of Thrift Supervision. Well, this is for all banks, this is not saying Delaware law.

Q.    Yes, it doesn't. But it says that's superiority of State law and that's what it says.

A.    Okay. I have to respectfully disagree because Delaware has their own code.

Q.    Exactly. And I read the code. I made all the references to the code.

69

A.    So, Delaware code, as long as they don't do more than the Federal regulation requires, they can do at least or less than.   It depends on the State.

Q.    Exactly.  And I read to Lisa, the requirement that Delaware Federal Credit Union was supposed to action my check on the same day and you didn't.  That was the Federal Credit --

A.    I'll give you this back.  I'd just like to say for the record that when you signed up at the Credit Union, you did receive the CIF and you stated that earlier, that you did receive it.  On the back of the CIF it explains our policy and procedures as to how we handle our check deposits.  And it specifically reads, verbatim, Reg CC, that stipulates your funds on the local hold are available to you two days, two business days after the date of deposit.  So, if you deposited your item on the 20th, your funds were not available on the 20th, $100 provisional credit was given to you on the 21st, but your total funds were not available to you until 06/22.  That is two business days after the date of deposit.  That is our policy and procedures.

Q.    First of all, I understand that, but, the uniform commercial code, which us part of the constitution of Delaware, has a little bit different requirement.

A.    Okay.

Q.    And Delaware Credit Union doesn't hold that requirement and they have to.

A.     I did not come to court today prepared to discuss the Uniform Commercial Code. If you would like to hold another hearing at time to discuss that I'm certainly willing to do that. I've got to have time to investigate it.

Q.     No, we are not ready, because --

THE COURT:  There is the way for us not to argue legal theory.

MS. SHAHIN:  Okay. No --

THE COURT:  And whether we all agree that the particular section or particular law says the same thing. You've read the UCC Delaware, Uniform Commercial Code. Miss Shahin, after reading that section, do you have specific questions reference the facts of this case that would be applicable to the law that you're referring to?

MS. SHAHIN:  No, hold on. I'll grab it.

(PAUSE).

BY MS. SHAHIN:

Q.     Title 6, Subtitle 1, Article 4, bank deposits and collections of Delaware Uniform Commercial Code, part 2, collection of items, depository and collecting banks, in Section 4-202, entitled responsibilities of collections or return: when action timely, states the following: collecting bank exercise ordinary care under (a) by taking proper action before each midnight deadline following the receipt of the item noted in settlement.

You didn't do anything on June 21st, when the Delaware constitution requires you to do that.

A.    We offered you $100 provisional credit under ACC guidelines on the 21st.

Q.    But the code specifically asked you to deposit that check before the deadline.

A.    That check was deposited by the 21st.  It was deposited 12:16 on the 21st.

Q.    It was deposited on the 20th and Delaware code asks you to deposit it on the same day by midnight of that date.

A.    I think there might be something in the technical, because I thought I read something about 24 hours and if it's a 24 hour requirement, then that was fulfilled.

Q.    No, it says by midnight, deadline, of the same day.

A.    Okay.  Then I have to ask you a question.  If our bank is not closing until 6:00, our deposit is not ready until 6:30, who do you suggest we take it to?  PNC is closed.  Then how do you --

Q.    PNC has a deposit box.

A.    Okay, and I'm sure that that is a possibility, but your item still isn't going to go to PNC until the 21st.

Q.    But the action has been taken, the rest is none of your business.  You were supposed to take an action by the midnight of that date and you didn't.

A.    Okay.  I cannot testify or attest to whether or not they take it and what time they take it.

Q.    Okay.

MS. SHAHIN:  Your Honor, that's all.

MR. MORRIS:  I do have some questions of this witness.

CROSS-EXAMINATION

BY MR. MORRIS:

Q.    First of all, Renee, by whom are you employed?

A.    Delaware Federal Credit Union.

Q.    And how long have you been employed with them?

A.    Almost seven years.

Q.    And what's your position with Delaware Federal Credit Union?

A.    Regulatory Compliance Officer.

Q.    Essentially, what does that mean?

A.    It means that I'm responsible for making sure that the Credit Union adheres to all State and Federal requirements, law, the statutes, regulations.  And I also handle member complaints/disputes.

Q.    All right.  You, in fact, became involved in Mr. and Mrs. Shahin's many cases that they have filed, is that correct?

A.    That is correct.

Q.    And you've investigated every one of them, is that correct?

A.    That is correct.

Q.    Okay.  And, in fact, did you testify below at the Justice of the Peace Court in this case?

A.    Yes, I did.

Q.    Okay.  First of all, I'm going to hand you a document, and I'll hand a copy to Miss Shahin, and ask you to tell me what that document is.

A.    This is our funds availability policy.  This is posted in each of our branch locations; we have six branch locations throughout the State and they're at every branch.  And this is what we adhere to per our Regs CC guidelines.

Q.    Okay.  And was this specific policy in effect in June of 2001, when this incident, this issue arose?

A.    Yes, it was.

Q.    Okay.  Can you tell me specifically, again, the significance into the local check and when the availability of funds are available?

A.    Yes.  Under Reg CC guidelines, it stipulates that withdraw against the accounts are available the second business day after the date of deposit and for non-local holds, funds are available for withdraw the fifth business day after the date of deposit.

Q.    Is there a provision for local checks that the first $100 will be available the first business day after the deposit?

A.    Yes, that is for local and non-local holds.

Q.    And, again, this was posted at all branches?

A.    Yes.

MR. MORRIS:  Your Honor, I would ask that this be Defendant's 1.

THE COURT:  All right.  Miss Shahin, you have seen this document?

MS. SHAHIN:  Yeah, it practically duplicates what is written inside the policy which was in the --

THE COURT:  In the pamphlet.

MS. SHAHIN:  -- pamphlet.  So I don't--

THE COURT:  All right.  So, without objection, we will mark as Defendant's Exhibit No. 1, the funds availability policy.

MR. MORRIS:  Thank you, Your Honor.

(WHEREUPON, DEFENDANT'S EXHIBIT NO. 1 WAS MARKED).

BY MR. MORRIS:

Q.    And am I correct the plaintiff, I think, has stated under oath, but you correct me if I'm wrong, that this pamphlet that's been offered is given to all members --

A.    Yes.

Q.    -- when they are signed up and accepted as members of the Delaware Federal Credit Union?

A.    That is correct.

Q.    And do the policies that are stated in that poster the same that are in this pamphlet?

A.    Yes, they are.

Q.    Concerning local and non-local checks?

A.    Yes.

Q.    Okay.  I'm going to hand you a document, bear with me here for a second -- there's a copy of that.  And if you could look at that document.  No, no, no, the --

A.    I'm sorry.

Q.    Have you seen this document before, ma'am?

A.    Yes, I have.

Q.    Okay.  Who created this document?

A.    It's a system-generated report, but I printed this out during my investigation.

Q.    Okay.  And essentially what is disclosed on this document, not specifics, but essentially what's set out in this document?

A.    This document is the history of our member's accounts.

Q.    Okay.  And is it for Mazen Shahin at the top?

A.    Yes, it is.

Q.    And does it discuss or at least detail June 20, 2005 until at least June 23, 2005?

A.    Yes, it does.

Q.    Okay.  First of all, did it show a deposit of $320, which was made on June 20, 2005?

A.    Yes, it does.

76

Q.    Is there any other items on June 20, 2005 that took place?

A.    Yes, there was one share draft, or check as you will, that cleared the account at 6:30 that evening.

Q.    Okay.  So on June 20, 2005, taking into account the $320 and the debit for $52.24, what was the real balance at the end of the day for June 20, 2005?

A.    The actual balance with the hold would have been $1,814 and I believe 29 cents.

Q.    Seventy-nine cents you're talking about?

A.    Seventy-nine cents.   Yeah.

Q.    Now, I see on June 20th, when the deposit was made, that it lists the balance as $2,134.79, what does that figure represent, ma'am?

A.    That actually represents the total amount; it does not include the hold.

Q.    Okay.  So, in reality, at that point, on June 20, 2005, the only available funds at that point are $1,814.79?

A.    That is correct.

Q.    Okay.  Can you tell me what transactions occurred on June 21st, please?

A.    Yes.  On June 21st, there was an ACH credit that came through, actually it was like a deposit, came through electronically via our automatic clearing house for $1,300.  Looks like it was from ING Direct.

Q.    And then that acted as a deposit at that point?

A.    That is correct.  And those funds were made available immediately because deposits of that nature are made available immediately.

Q.    So when you took into account at that point in time when that deposit was made, what were the available funds on June 21, 2005?

A.    The $1,300 deposit via ACH and $100 provisional credit granted through Reg CC.

Q.    And if my math is correct, the -- hold on one second.

MS. SHAHIN:  Your Honor, may I offer the statement, which is much clearer picture of everything than this one?

THE COURT:  Not at this point.

MS. SHAHIN:  Okay.

THE COURT:  You can if you want to ask questions of this witness after Mr. Morris is done.

BY MR. MORRIS:

Q.    So if my math is correct, the available funds at that point was $3,162.55?

A.    Yes, that is correct.

Q.    Am I correct about that?

A.    Yes.

Q.    Was there a debit made on June 21, 2005?

A.    Yes, there was.

Q.    Okay.  How much was that debit?

A.      Three thousand, two hundred, twenty dollars, eleven cents.

Q.      Okay.  So, was there at that point available funds to cover that $3,220.11 debit?

A.      No, there was not.

Q.      And as a result of that debit, what did the bank do?

A.      At that point, the account became negative $57.56 and we charged a $35 non-sufficient fund fee.

Q.      Did the Credit Union pay that debit?

A.      Yes, we did.

Q.      But you still issued the $35 insufficient fee?

A.      That is correct.  We have a program called courtesy pay that we allow our members if they make a mistake, then we'll pay the item for them, save them the embarrassment on the other side and there's a one fee of $35.

Q.      Okay.  Would there have been any difference whether the check was classified local or non-local?  Meaning, did that have any true effect of this debit bouncing essentially?

A.      No, it did not.

Q.      Okay.

        MS. SHAHIN:  I know that.

BY MR. MORRIS:

Q.      Because essentially the first $100, whether it's local or non-local is available the next business day, am I correct?

A.    That's correct.

Q.    And the remaining part of the deposit, the 220, would not have been available through the local check until June 22nd, is that correct?

A.    That is correct.

Q.    But there would have been a longer hold if it was non-local?

A.    That's correct.

Q.    Okay.  So on June 21st, the issue about local and non-local had no bearing whatsoever whether this check or debit would have bounced?

A.    That is correct.

Q.    Okay.

MR. MORRIS:  I have no further questions, Your Honor.

MS. SHAHIN:  Your Honor, may I ask to redirect?

THE COURT:  Just a moment, please.

(PAUSE).

THE COURT:  All right.  You have further questions?

MS. SHAHIN:  Yes, I would like to distribute now as an exhibit the statement from the bank for that May and June, which is a lot more clearer indicates what exactly happened in my account on a day by day basis.  And this will be exhibit, what No. 7?

THE COURT:  All right.  Have you seen this?

MR. MORRIS: I haven't seen it, Your Honor. And I'm sorry, I would ask that that be marked as Defendant's 1 if I haven't done that, Your Honor.

MS. SHAHIN: Two copies; one for the judge and one for the attorney.

And also I would like to distribute as an Exhibit 8, that's a notice that of non-sufficient funds which was sent to us dated June 21, 2005.

MR. MORRIS: There is no objection to that.

MS. SHAHIN: Okay. There's that.

THE COURT: All right. Miss Shahin, Mr. Morris has asked that this document, which was referred to in testimony, be marked as Defendant's Exhibit 2. Do you have any objection?

MS. SHAHIN: I don't object, no.

THE COURT: All right. And then we will mark as Plaintiffs' Exhibit 7, the account statement, 06/01/05 through 06/30/05, without objection.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 7 WAS MARKED).

MS. SHAHIN: Your Honor, as you can see from the notice, there was no, any negative balance, as you can see that.

THE COURT: Did you have another document that you wanted marked?

MS. SHAHIN: Yes, I introduced 7 as the bank statement, and another one 8 as --

THE COURT: All right. Let's mark that. I'm sorry. This is a one-page document, mark that showing the $35 fee, 06/21/05, marked as 8, Plaintiffs' 8.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 8 WAS MARKED).

THE COURT: All right. Would you like to ask Miss Thompson questions regarding these documents?

### REDIRECT EXAMINATION

BY MS. SHAHIN:

Q.    Miss Thompson, could you show us anywhere on the statement a negative balance which you were talking about?

A.    Not on this particular document, no. Again, because our system, these balances do not reflect your check hold.

Q.    Okay, and the same is on the Federal Credit Union notice, there is no negative balance there either, ending balance $127.44, right?

A.    That's correct.

Q.    Nothing. The other question, which I wanted to ask you, I wanted very clarified here, related to your answer to complaint. When Mr. Strosser made the offer, was it offer to pay or offer to settle; that is a very substantial question.

A.    It was simply a discussion.  It was not a settlement.  It was

simply a discussion between the two gentlemen as to a way to avoid going

to court.

Q.    Was it offered to pay or offered to settle?

A.    There was no offer to settle.

Q.    So --

A.    There was no offer to settle because Mr. Shahin refused to

discuss it any further.

Q.    Was it offered though?  In the very beginning, was it offered

to settle or offered to pay?

A.    There was no offer to settle at all.

Q.    He didn't offer to settle anything?

A.    There was a discussion about paying a $35 fee to avoid going

to court, that is correct.  Mr. Shahin obviously did not care for that.  The

way that I remember the conversation, Mr. Shahin wanted money from the

very first court case, that was decided by the court and closed.  And Mr.

Strosser tried to inform Mr. Shahin that that case was closed and done and

that we were not going to pay any money on that first case.

However, if we were to offer to pay, which I believe that

amount was $1,005 that you were claiming on the first court case, plus the

$35.  So he offered, you know, that suggestion.  Well, then if he were to do

that would you, you know, would you possibly close your account.  Because

that is a lose to our membership, that's money that we're losing to our members.

So, we felt at that time that for all parties involved, because you weren't happy with the service of the Credit Union, so we thought that, well, if we gave you the $1,005, plus the $35, would you be willing to close your account. That was the suggested offer. There was no settlement.

Q.    Should I conclude, then, that it was neither offered to pay nor offered to settle?

A.    I don't understand what you're question is about the difference between offer and settle. I mean, I think --

Q.    Do you have any legal background?

A.    Yes, I do. I have a Bachelor's degree in legal studies.

Q.    Okay. Do you understand the difference between offer to pay and offer to settle?

MR. MORRIS: Objection, Your Honor. I don't really know what the difference is off the top of my head. But --

THE COURT: She's just told you that she doesn't understand how you're using that terminology in regards to this question. So, specifically ask a question so she understands what you mean by offer to pay versus offer to settle.

BY MS. SHAHIN:

Q.    Offer to pay is just -- you would pay that, no matter what. An

offer to settle, I will pay you if you don't come to court or settle the case
and it will end here.

     A.    It sounds like you're trying to may it sound say that it was a
conditional

offer.  It was not a conditional offer.  It was one --

     Q.    It was an unconditional offer?

     A.    It was simply a discussion to avoid going to court.  That's all it
was.

     Q.    Okay.

     MS. SHAHIN:  No further questions, Your Honor.

     MR. MORRIS:  I have no further questions, Your Honor.

     THE COURT:  All right.  Miss Thompson, thank you for
your testimony.

     (WHEREUPON, THE WITNESS STEPPED DOWN).

     THE COURT:  Anything further?

     MS. SHAHIN:  Nothing further, Your Honor.

     THE COURT:  Do you close your case?

     MS. SHAHIN:  Is it possible for closing the case to divide the
issues between my husband and me, we both address each part of the
claim?

     THE COURT:  You want to make closing arguments?

     MS. SHAHIN:  Yes, I do.

THE COURT: Well, you're both plaintiffs, so I suppose you can both offer whatever closing you want.

MS. SHAHIN: So but I want to address that particular issue of the conversation on July 21st.

THE COURT: Okay.

MS. SHAHIN: Which was --

THE COURT: Do you have anything further to present?

MR. MORRIS: I have no further witnesses. We're not going to present any further witnesses. I got everything I need out of Miss Thompson, Your Honor, so --

THE COURT: Then the defense rests as well, correct?

MR. MORRIS: That is correct, Your Honor.

MR. SHAHIN: Can I say something? Very briefly?

I remember very clearly that, the offer from--

THE COURT: Okay. I'm going to allow you to address that in your closing statement because that is the point of the proceedings where we are at this point. Miss Thompson was actually called by the plaintiffs and I did not know if Mr. Morris had any other witnesses to call.

MR. MORRIS: We do not have any further witnesses.

THE COURT: All right. Miss Shahin and Dr. Shahin, you may present your closing statements now.

MS. SHAHIN:  So, I would like him to conclude about that conversation with Mr. Strosser because I wasn't a witness so I want him to say what he thinks and I will conclude after that.

THE COURT:  All right.  You may proceed.

MR. SHAHIN:  It's very, very briefly because I said it before in my testimony.   The offer from Mr. Strosser was small, to close my account, if they pay that.  The offer was to pay the $70, to my recollection, and to close the account.  There was no talk about paying the 1,000 for the previous case.  This was very clear and this is why it caused me very upset. That why I am as a member and I didn't do anything wrong, and if they have mistake and instead of apologizing to me and resolve the issue, he wants to kick me out from the account, I mean, from the Credit Union, this was so upset, not acceptable for me.

And the other thing that he tried to imply that my wife is lying to me and also part of not reasonable, that was outrageous for me.  That's it.

THE COURT:  All right.  Thank you.

Miss Shahin?

MS. SHAHIN:  Your Honor, I already indicated to you that this is an adhesion contract where all the power is on the Delaware Credit Union's side.  So they dictated the rules, which they wanted to dictate in which are in this case are in contradiction to the State requirements,

Delaware State constitution and it has a superiority of the law. That's one thing.

The second thing I would like to say is that they provided statements here and answer to complaint, which were not given properly. We received it on October 19, 2005 from the court clerk. Nobody bothered to present it to us. And this is all wrong statements: $320 cleared out account on June 21st, but we were not given opportunity to use that funds. The misclassification of the check actually was not done properly. The procedures, obviously, for following classification were violated.

If my husband would have noticed that or known that, he would have gone to the PNC Bank, which was five-minute drive and got cash. And that is the ordinary care of the people, where done properly it would have been noticed and corrected and have never reached any point of gravity the way it reached.

The Delaware Code squarely put that responsibility for ordinary care people in the business of banking on the bank, to properly classify the checks. And if it's not done like put it additional hold it was supposed to draw the attention of the client. And they didn't do that.

The second thing, they claim it happened to be and conveniently they don't remember anything what they said in the previous court. Lisa Brewer confirmed that she promised to call Dr. Shahin and tell him how much does it cost. If she had called, she would have been told right there and then that the bank had made a mistake.

Because when my husband came, after the meeting, and called me and told me that the check, because Lisa Brewer told him that check account, the trouble. He told me that the check was misclassified and if she called him on the same day, by exercising ordinary care, which was in her responsibility to call as she promised, he would have told her, nothing would have reached the court. But she didn't. And she testified in that court and I asked her whether you called that day, she said, no. I asked her whether you called him the next day, she said no. I asked her whether you called him in a week, she said no. I asked her whether you ever called him, she said no. She conveniently doesn't remember that now.

I understand that this case de novo, but she has somehow, and everybody else on the defendant's side, have very selective memory today. They remember what they want to remember. They made false claimant of what they never happened in conversation on July 21st, because we are reasonable people.

In 2003, the bank, by mistake, deducted from our account close to $500. I was whining for two weeks, begging them to do something and nothing has been done, until I told Lisa Brewer that I will not leave her office. So this is not the first time, this is not the second time, and whenever I try to complain to different authorities within Credit Union and they cover up.

Mr. Strosser called me before, and why he couldn't talk to me before, because he wanted to accept that level of services. And we cannot

accept that level of services, which the bank provides.  They make consistently mistakes in accounting mistakes, which goes to core of their ordinary care standards, which is defined by the Delaware Code.

They ignore, they're not prepared to discuss neither Regulation CC, in length, today, nor the Delaware Code, because they don't know and they don't want to know the provision.  They violated this provision but they don't want to know that.

When the PNC Bank deducted that $320 on June 21, we were supposed to be given the opportunity to use that.  PNC Bank has different rule, it means the Delaware Federal Credit Union were supposed to have the same rules, they are in the same area, they are in the same district and the Delaware Code is demanding that all banks in the same area use the same principle the same business practices.

That's all, Your Honor.

THE COURT:  Thank you.

MR. MORRIS:  Just briefly, Your Honor.  First of all, even though it's not significant in the whole scheme of things, but it is interesting to note that on the deposit slip or voucher which was given to Mr. Shahin, clearly noted or indicated it was non-local.

In reality it really had no effect but to say that they weren't aware of it, well, maybe they should read what's given to them when they're making deposits, because had he done so, he would have realized it

was non-local. But in all reality, it still would have had no effect whatsoever on the overdrawn account which took place on June 21, 2005.

The issue is whether there was available funds on June 21, 2005 of $3,220.11, which was a debit, which processed through the Delaware Federal Credit Union. Clearly, based on the evidence presented and specifically by the documents submitted by Miss Thompson, the only available funds on June 21, 2005 was $3,162.55. Clearly there was not sufficient funds to pay that $3,220.11. As a courtesy, or as part given to their members, they, in fact, paid the debit but issued the non-sufficient funds notice to the Shahins.

The issues of settlement or what was discussed, normally I would have objected, because normally such evidence is not admissible, but in this case, I think it goes to the reasonable nature or unreasonable nature of the plaintiffs in this case, in that this case could have been resolved long ago, because based upon Mr. Strosser's testimony and confirmed by Miss Thompson, he agreed to pay $35, which was not accepted. Now, I understand that Mr. Shahin has a different recollection, but at least we have two witnesses that say otherwise.

It was only then when Mr. Shahin, according to Mrs. Thompson and Mr. Strosser, interjected that he wanted $1,000 from the previous case and though I would have never advised him to do that, he offered, or at least was going to consider paying that if they, essentially, agreed to go their separate ways.

Clearly, the Shahins have not been happy with the services of the Delaware Federal Credit Union. And though it may not have been the wisest thing to do, Mr. Strosser took that position because he wanted to resolve all issues at one time and be done with this case, all the cases. Unfortunately that didn't happen.

But that gets back to my main point, we wouldn't be here today if Mr. Shahin would have accepted the $35, which was offered way back when and we wouldn't have gone through two separate trials. And that goes, again, to the unreasonable basis of this claim. Especially when you take into account that they are wrong, with the facts, and they are wrong with the law. They had insufficient funds on June 21, 2005.

And the Delaware Federal Credit Union was proper in probably saying, we're not going to pay you anything, but in the matter of trying to resolve the issue, and you heard Mr. Strosser testify, the $35 wasn't contingent on them closing their account, it was just to resolve this one claim. And had that been done, over a year ago, we wouldn't be here today.

The members of Delaware Federal Credit Union wouldn't be paying my bills, including the Shahins. Again, the members are the ones that are being hurt here by them having to defend meritless cases. And again, Your Honor, I understand the attorney's fees are rarely ever granted. And I understand and especially in cases involving pro se plaintiffs or defendants, but it's come to the point where someone has to

say, not only are you wrong, but these cases have got to stop, because if not, they're just going to keep moving on and moving on.

It's not costing them a dime, it's costing the members of the Delaware Federal Credit Union to defend the cases, that one, should have been resolved before, and two, they shouldn't be proceeding when there's no basis for it.

Again, the policies, which they were aware of, one was posted at all the facilities at all the branches, and it was also mentioned in the pamphlet, which they acknowledge, they received. To me, the Justice of the Peace Court got it dead on. The issue of non-local and local had really no bearing. The issue was whether available funds on June 21st, and clearly there wasn't. And the right to impose the $35 fee was appropriate.

THE COURT: All right. Thank you.

MS. SHAHIN: Your Honor, will I be allowed to add something?

THE COURT: Yes, you will, because you have the burden of proof in this case. Miss Shahin, tell me exactly what the damages are that you're seeking, other than the $35 fee?

MS. SHAHIN: In this particular case, that's practically whatever the court costs, that's all.

THE COURT: The court costs?

MS. SHAHIN: The court costs in both courts and $35.

THE COURT: Okay. Anything else you want me to consider?

MS. SHAHIN: Yes, Your Honor. There are two cases here and this is why I asked so many times about the $35. Because in the previous case, which is now at Supreme Court, it possibly goes to Supreme Court of the United States on the constitutional violation.

They claim that they offered to pay $35 and they claim that $35 was offered to pay in that case, not this case. So, if this is the case, this is perjury because they offered to pay $35 only once. So if this $35 offered to pay applies only to that case, then offer to pay $35 in the previous case does not apply. So, that was a perjury if Miss Thompson claimed that; that they offered to pay.

So, we are talking serious matters here. They say that it's a superficial, no, it's a matter of principle. We came and they misclassified the check. They promised to call, they didn't call. When they make mistake, I run for weeks and can get nothing. And then it takes them months to restore that money.

It's not the way, how the bank should work. Why we don't have any problems with the PNC Bank? And they always ask and are willing to help. They listen. Here you come, you talk to the people and you can see that everything goes beyond their attention. It's not the first time. It's all the time.

They say they offered to settle?  No, they didn't offer to settle. They insulted my husband to the degree that he got to the hospital, to emergency room of the hospital and they deny that that happened.  It's not a simple issue.  It's a very serious issue when not only they don't provide proper services, they insult people on a regular basis and they want to accept that level of services.  This is not acceptable.  They serve not only to us; they serve to the public.  And this is why we're trying to hold them responsible and improve the services.

All our lawsuit is not to get any type of personal gain.  We want to show them that the service, which they offer are unacceptable level.  Are of unacceptable quality.  And the Delaware constitution holds them responsible for the quality of services, which they provide when they are working that type of industry.

That's all, Your Honor.

THE COURT:  All right.  I'm going to take some time to review my notes, and hopefully I'm going to come back with a decision today.

(WHEREUPON, A RECESS WAS TAKEN).

THE COURT:  All right.  Well, I want to thank all of you for thoroughly presenting your positions.  The documents, the exhibits were helpful to me, as well as the testimony.  I know this has been a difficult case for all parties, because it seems to be a case or a series of cases, which cannot get resolution to the satisfaction of everyone.

The plaintiffs are arguing several things. They are arguing, number one, that the Delaware Federal Credit Union, the defendant in this matter, acted illegally in the processing of a deposit that they made from their PNC Bank account into the Delaware Federal Credit Union. And Mrs. Shahin has done extensive research into the Article 4, UCC, Reg CC, and her interpretation as she applies those laws and regulations to the fact are that the defendant in this matter did not follow the law. And, in fact, did it maliciously in an attempt to harass the plaintiffs.

There have been several exhibits, which have been presented to the Court. Defendant's Exhibit No. 1, which is the funds availability process of the Delaware Federal Credit Union is one of those exhibits. It's posted in every branch. In addition, when the Shahins opened their account, they received the Important Information for our Members, Terms and Conditions, Truth in Savings, that also reiterates what's posted in the bank as the policy regarding deposits, when funds are available based on designation of local or non-local.

Mrs. Shahin argues that these policies, which they agreed to when they signed up as members of the Federal Credit Union, and were aware of, are in contravention of Article 4 and Reg CC. She argues that because these funds, according to Delaware Federal Credit Union, were not available until two business days after the deposit that they are in non-compliance with the Federal regs and the prevailing practice and procedure of other local banks. She argues that this was an adhesion

contract, therefore, the defendant has a more significant obligation to explain these processes and procedures that they have. And she argues that, again, they are in non-compliance with Article 4, and Reg CC.

She submits as proof that the prevailing practice and procedure in this location is different than what the Delaware Federal Credit Union follows and therefore they have not met the burden of showing that their practices are reasonable or that they use ordinary care. Mrs. Shahin submits that PNC Bank, which is Plaintiff's Exhibit No. 6, as proof as the prevailing practice and procedure in this area.

Article 4 says that if you are going to do, if you do not -- and she argues the midnight rule. And Article 4 states that if you are not going to follow the midnight rule, you may have a larger burden of showing that your practice and procedure is reasonable. So those basically are the arguments as I understand the Shahins as making.

The explanation as to why we don't follow the midnight rule is that because we extend hours to our customers, to a time much later than most other banks, I think 6:30 is the time of close, or 6:00, and that the processing at that point cannot really be accomplished until the following day. The fact that PNC does something differently does not in and of itself convince me that they are setting the standard as far as the practice and procedure prevailing in this community, and the differences are slight to insignificant.

Clearly plaintiffs understood the process and procedure,

because in 2003 they had a similar problem.  So they understood exactly what the policy and procedure was going to be at the time this transaction took place in 2005.

But the bottom line is this:  clearly there was an error on the part of Delaware Federal Credit Union in designating or classifying the check in question as a non-local check.  They admit it; it was stipulated to. Clearly there was an error on the part of their customer in not reading the receipt, which clearly stated that the bank was in error, but nonetheless, considering this a non-local check.  So there was human error on both sides.

Dr. Shahin testified that he talked to one of the tellers when it became apparent to him that a mistake had been made.  He was told to talk to a bank manager, Miss Brewer, which he did, 06/23.  They were going to try to find this check, figure out if there had been an error.  But Lisa Brewer said, I assumed there was because it was on hold and on 06/23 had it been a local check, it would not have been.  Funds would have been available.  So she believed what Dr. Shahin was saying but didn't have the paper proof, but at that point in time the problem had already occurred, because it occurred on 06/21.  And that is the question, really, to me.

I find, based on all I've heard and my knowledge of the law in this area, that the fact that Delaware Federal Credit Union does not follow PNC's policy and procedure, is irrelevant.  Their policy and procedure is posted.  The plaintiffs understood it.  They've had a problem with them in

the past, so they clearly understood it.  They knew what the policy and procedure was.

The fact that another bank may make funds available a day earlier is not, in itself, tell me that their practice, procedures and policies are in violation of Federal law, or that they're unreasonable, or that they did not use ordinary care.

It really doesn't matter in this case that an error occurred, because under either of the scenarios the money was not available, at the earliest it would have been available 06/23, under availability of funds, at the earliest.  The withdrawal took place -- I'm sorry, the earliest it would have been 06/22, because we will count the day of deposit despite the fact that it didn't get to PNC Bank for deposit until the 21st.  Clearly the day of deposit, as far as they were concerned, was the 20th.  Provisional funds were available on the 20th and 21st.  The rest of the monies would have been available on the 22nd.

The account was overdrawn by the Shahins on 06/21.  So the error would have made no difference in this case whatsoever, as far as the insufficient funds and the application of the non-sufficient fund fee.

The error occurred, but the error was not the cause of the damages alleged in this case; the damages that were alleged to have been owed were caused by withdrawing the account the day prior to those funds being available and I have to assume that the Shahins understood that because they continue to be Credit Union members, they continue to use

the bank despite the fact that they've had similar problems in the past. There's no question that they were familiar with what that process and procedure was.

Timing is everything. In this case it was tight and it was close. But I don't find any negligence on the part of the bank that was the proximate cause of the fee being applied in this account. The fee was applied because the Shahins withdrew a day too early.

So I do find in favor of the defendant and against Mr. and Miss Shahin.

And just as a point of reference, I do note that the complaint in this case was filed 06/27, very quickly after the transaction in question.

So that is my ruling.

The only other thing I'm going to say is this: It is disheartening to this Court that this type of minor business error transaction, whatever you want to call it, has generated the number of lawsuits that I'm advised are out there pending. And I don't really care whether there's three, five, ten; I don't care.

It's disheartening to this Court that Mrs. Shahin has taken this case so personally. It's clearly been a learning process. She's read Federal law and regulations and there is some benefits of it.

But the tone that was presented, through her questioning and the questioning of her husband, is indicative to this Court that this has become a major part of her life. And I'm sad that this, this very intelligent,

articulate -- better ways to use those talents than chasing a $35 non-

sufficient fund fees over and over and over again.  Because the facts,

factually, the facts of this case are that funds were withdrawn at a time

they should not have been and not based on any error by this bank.

      That's my ruling.  I'm not ordering attorney's fees, Mr.

Morris, in this case, although I understand the frustration of the bank in

having to defend this matter over and over again.  But that's my decision.

      MR. MORRIS:  Good enough.

      THE COURT:  All right.  We are recessed.  Thank you all.

- - - - -

## CERTIFICATE OF REPORTER

I, Linda A. Lavender, Official Court Reporter of

the Court of Common Pleas, State of Delaware, do hereby certify that the

foregoing is an accurate transcript of the testimony adduced and

proceedings had, as monitored and electronically recorded, in the Court

of Common Pleas, in and for Kent County, in the case therein stated, as

the same remains of record in the Prothonotary's Office, Kent County, at

Dover, Delaware.

WITNESS my hand this 27th day of Feb.,

2007, A.D.

Certificate No. 172-PS
Expiration Date: Permanent

A.    That's correct.

Q.    And the remaining part of the deposit, the 220, would not have been available through the local check until June 22nd, is that correct?

A.    That is correct.

Q.    But there would have been a longer hold if it was non-local?

A.    That's correct.

Q.    Okay. So on June 21st, the issue about local and non-local had no bearing whatsoever whether this check or debit would have bounced?

A.    That is correct.

Q.    Okay.

MR. MORRIS:  I have no further questions, Your Honor.

MS. SHAHIN:  Your Honor, may I ask to redirect?

THE COURT:  Just a moment, please.

(PAUSE).

THE COURT:  All right. You have further questions?

MS. SHAHIN:  Yes, I would like to distribute now as an exhibit the statement from the bank for that May and June, which is a lot more clearer indicates what exactly happened in my account on a day by day basis. And this will be exhibit, what No. 7?

THE COURT:  All right. Have you seen this?

MR. MORRIS: I haven't seen it, Your Honor. And I'm sorry, I would ask that that be marked as Defendant's 1 if I haven't done that, Your Honor.

MS. SHAHIN: Two copies; one for the judge and one for the attorney.

And also I would like to distribute as an Exhibit 8, that's a notice that of non-sufficient funds which was sent to us dated June 21, 2005.

MR. MORRIS: There is no objection to that.

MS. SHAHIN: Okay. There's that.

THE COURT: All right. Miss Shahin, Mr. Morris has asked that this document, which was referred to in testimony, be marked as Defendant's Exhibit 2. Do you have any objection?

MS. SHAHIN: I don't object, no.

THE COURT: All right. And then we will mark as Plaintiffs' Exhibit 7, the account statement, 06/01/05 through 06/30/05, without objection.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 7 WAS MARKED).

MS. SHAHIN: Your Honor, as you can see from the notice, there was no, any negative balance, as you can see that.

THE COURT: Did you have another document that you wanted marked?

MS. SHAHIN:  Yes, I introduced 7 as the bank statement, and another one 8 as --

THE COURT:  All right.  Let's mark that.  I'm sorry.  This is a one-page document, mark that showing the $35 fee, 06/21/05, marked as 8, Plaintiffs' 8.

(WHEREUPON, PLAINTIFFS' EXHIBIT NO. 8 WAS MARKED).

THE COURT:  All right.  Would you like to ask Miss Thompson questions regarding these documents?

REDIRECT EXAMINATION

BY MS. SHAHIN:

Q.     Miss Thompson, could you show us anywhere on the statement a negative balance which you were talking about?

A.     Not on this particular document, no.  Again, because our system, these balances do not reflect your check hold.

Q.     Okay, and the same is on the Federal Credit Union notice, there is no negative balance there either, ending balance $127.44, right?

A.     That's correct.

Q.  .  Nothing.  The other question, which I wanted to ask you, I wanted very clarified here, related to your answer to complaint.  When Mr. Strosser made the offer, was it offer to pay or offer to settle; that is a very substantial question.

A.    It was simply a discussion.  It was not a settlement.  It was simply a discussion between the two gentlemen as to a way to avoid going to court.

Q.    Was it offered to pay or offered to settle?

A.    There was no offer to settle.

Q.    So --

A.    There was no offer to settle because Mr. Shahin refused to discuss it any further.

Q.    Was it offered though?  In the very beginning, was it offered to settle or offered to pay?

A.    There was no offer to settle at all.

Q.    He didn't offer to settle anything?

A.    There was a discussion about paying a $35 fee to avoid going to court, that is correct.  Mr. Shahin obviously did not care for that.  The way that I remember the conversation, Mr. Shahin wanted money from the very first court case, that was decided by the court and closed.  And Mr. Strosser tried to inform Mr. Shahin that that case was closed and done and that we were not going to pay any money on that first case.

However, if we were to offer to pay, which I believe that amount was $1,005 that you were claiming on the first court case, plus the $35.  So he offered, you know, that suggestion.  Well, then if he were to do that would you, you know, would you possibly close your account.  Because

that is a lose to our membership, that's money that we're losing to our members.

So, we felt at that time that for all parties involved, because you weren't happy with the service of the Credit Union, so we thought that, well, if we gave you the $1,005, plus the $35, would you be willing to close your account. That was the suggested offer. There was no settlement.

Q.    Should I conclude, then, that it was neither offered to pay nor offered to settle?

A.    I don't understand what you're question is about the difference between offer and settle. I mean, I think --

Q.    Do you have any legal background?

A.    Yes, I do. I have a Bachelor's degree in legal studies.

Q.    Okay. Do you understand the difference between offer to pay and offer to settle?

MR. MORRIS: Objection, Your Honor. I don't really know what the difference is off the top of my head. But --

THE COURT: She's just told you that she doesn't understand how you're using that terminology in regards to this question. So, specifically ask a question so she understands what you mean by offer to pay versus offer to settle.

BY MS. SHAHIN:

Q.    Offer to pay is just -- you would pay that, no matter what. An

offer to settle, I will pay you if you don't come to court or settle the case

and it will end here.

     A.     It sounds like you're trying to may it sound say that it was a conditional

offer.  It was not a conditional offer.  It was one --

     Q.     It was an unconditional offer?

     A.     It was simply a discussion to avoid going to court.  That's all it was.

     Q.     Okay.

     MS. SHAHIN:  No further questions, Your Honor.

     MR. MORRIS:  I have no further questions, Your Honor.

     THE COURT:  All right.  Miss Thompson, thank you for your testimony.

     (WHEREUPON, THE WITNESS STEPPED DOWN).

     THE COURT:  Anything further?

     MS. SHAHIN:  Nothing further, Your Honor.

     THE COURT:  Do you close your case?

     MS. SHAHIN:  Is it possible for closing the case to divide the issues between my husband and me, we both address each part of the claim?

     THE COURT:  You want to make closing arguments?

     MS. SHAHIN:  Yes, I do.

THE COURT: Well, you're both plaintiffs, so I suppose you can both offer whatever closing you want.

MS. SHAHIN: So but I want to address that particular issue of the conversation on July 21st.

THE COURT: Okay.

MS. SHAHIN: Which was --

THE COURT: Do you have anything further to present?

MR. MORRIS: I have no further witnesses. We're not going to present any further witnesses. I got everything I need out of Miss Thompson, Your Honor, so --

THE COURT: Then the defense rests as well, correct?

MR. MORRIS: That is correct, Your Honor.

MR. SHAHIN: Can I say something? Very briefly?

I remember very clearly that, the offer from--

THE COURT: Okay. I'm going to allow you to address that in your closing statement because that is the point of the proceedings where we are at this point. Miss Thompson was actually called by the plaintiffs and I did not know if Mr. Morris had any other witnesses to call.

MR. MORRIS: We do not have any further witnesses.

THE COURT: All right. Miss Shahin and Dr. Shahin, you may present your closing statements now.

MS. SHAHIN: So, I would like him to conclude about that conversation with Mr. Strosser because I wasn't a witness so I want him to say what he thinks and I will conclude after that.

THE COURT: All right. You may proceed.

MR. SHAHIN: It's very, very briefly because I said it before in my testimony. The offer from Mr. Strosser was small, to close my account, if they pay that. The offer was to pay the $70, to my recollection, and to close the account. There was no talk about paying the 1,000 for the previous case. This was very clear and this is why it caused me very upset. That why I am as a member and I didn't do anything wrong, and if they have mistake and instead of apologizing to me and resolve the issue, he wants to kick me out from the account, I mean, from the Credit Union, this was so upset, not acceptable for me.

And the other thing that he tried to imply that my wife is lying to me and also part of not reasonable, that was outrageous for me. That's it.

THE COURT: All right. Thank you.

Miss Shahin?

MS. SHAHIN: Your Honor, I already indicated to you that this is an adhesion contract where all the power is on the Delaware Credit Union's side. So they dictated the rules, which they wanted to dictate in which are in this case are in contradiction to the State requirements,

Delaware State constitution and it has a superiority of the law. That's one thing.

The second thing I would like to say is that they provided statements here and answer to complaint, which were not given properly. We received it on October 19, 2005 from the court clerk. Nobody bothered to present it to us. And this is all wrong statements: $320 cleared out account on June 21st, but we were not given opportunity to use that funds. The misclassification of the check actually was not done properly. The procedures, obviously, for following classification were violated.

If my husband would have noticed that or known that, he would have gone to the PNC Bank, which was five-minute drive and got cash. And that is the ordinary care of the people, where done properly it would have been noticed and corrected and have never reached any point of gravity the way it reached.

The Delaware Code squarely put that responsibility for ordinary care people in the business of banking on the bank, to properly classify the checks. And if it's not done like put it additional hold it was supposed to draw the attention of the client. And they didn't do that.

The second thing, they claim it happened to be and conveniently they don't remember anything what they said in the previous court. Lisa Brewer confirmed that she promised to call Dr. Shahin and tell him how much does it cost. If she had called, she would have been told right there and then that the bank had made a mistake.

Because when my husband came, after the meeting, and called me and told me that the check, because Lisa Brewer told him that check account, the trouble. He told me that the check was misclassified and if she called him on the same day, by exercising ordinary care, which was in her responsibility to call as she promised, he would have told her, nothing would have reached the court. But she didn't. And she testified in that court and I asked her whether you called that day, she said, no. I asked her whether you called him the next day, she said no. I asked her whether you called him in a week, she said no. I asked her whether you ever called him, she said no. She conveniently doesn't remember that now.

I understand that this case de novo, but she has somehow, and everybody else on the defendant's side, have very selective memory today. They remember what they want to remember. They made false claimant of what they never happened in conversation on July 21st, because we are reasonable people.

In 2003, the bank, by mistake, deducted from our account close to $500. I was whining for two weeks, begging them to do something and nothing has been done, until I told Lisa Brewer that I will not leave her office. So this is not the first time, this is not the second time, and whenever I try to complain to different authorities within Credit Union and they cover up.

Mr. Strosser called me before, and why he couldn't talk to me before, because he wanted to accept that level of services. And we cannot

accept that level of services, which the bank provides. They make consistently mistakes in accounting mistakes, which goes to core of their ordinary care standards, which is defined by the Delaware Code.

They ignore, they're not prepared to discuss neither Regulation CC, in length, today, nor the Delaware Code, because they don't know and they don't want to know the provision. They violated this provision but they don't want to know that.

When the PNC Bank deducted that $320 on June 21, we were supposed to be given the opportunity to use that. PNC Bank has different rule, it means the Delaware Federal Credit Union were supposed to have the same rules, they are in the same area, they are in the same district and the Delaware Code is demanding that all banks in the same area use the same principle the same business practices.

That's all, Your Honor.

THE COURT: Thank you.

MR. MORRIS: Just briefly, Your Honor. First of all, even though it's not significant in the whole scheme of things, but it is interesting to note that on the deposit slip or voucher which was given to Mr. Shahin, clearly noted or indicated it was non-local.

In reality it really had no effect but to say that they weren't aware of it, well, maybe they should read what's given to them when they're making deposits, because had he done so, he would have realized it

was non-local. But in all reality, it still would have had no effect whatsoever on the overdrawn account which took place on June 21, 2005.

The issue is whether there was available funds on June 21, 2005 of $3,220.11, which was a debit, which processed through the Delaware Federal Credit Union. Clearly, based on the evidence presented and specifically by the documents submitted by Miss Thompson, the only available funds on June 21, 2005 was $3,162.55. Clearly there was not sufficient funds to pay that $3,220.11. As a courtesy, or as part given to their members, they, in fact, paid the debit but issued the non-sufficient funds notice to the Shahins.

The issues of settlement or what was discussed, normally I would have objected, because normally such evidence is not admissible, but in this case, I think it goes to the reasonable nature or unreasonable nature of the plaintiffs in this case, in that this case could have been resolved long ago, because based upon Mr. Strosser's testimony and confirmed by Miss Thompson, he agreed to pay $35, which was not accepted. Now, I understand that Mr. Shahin has a different recollection, but at least we have two witnesses that say otherwise.

It was only then when Mr. Shahin, according to Mrs. Thompson and Mr. Strosser, interjected that he wanted $1,000 from the previous case and though I would have never advised him to do that, he offered, or at least was going to consider paying that if they, essentially, agreed to go their separate ways.

Clearly, the Shahins have not been happy with the services of the Delaware Federal Credit Union. And though it may not have been the wisest thing to do, Mr. Strosser took that position because he wanted to resolve all issues at one time and be done with this case, all the cases. Unfortunately that didn't happen.

But that gets back to my main point, we wouldn't be here today if Mr. Shahin would have accepted the $35, which was offered way back when and we wouldn't have gone through two separate trials. And that goes, again, to the unreasonable basis of this claim. Especially when you take into account that they are wrong, with the facts, and they are wrong with the law. They had insufficient funds on June 21, 2005.

And the Delaware Federal Credit Union was proper in probably saying, we're not going to pay you anything, but in the matter of trying to resolve the issue, and you heard Mr. Strosser testify, the $35 wasn't contingent on them closing their account, it was just to resolve this one claim. And had that been done, over a year ago, we wouldn't be here today.

The members of Delaware Federal Credit Union wouldn't be paying my bills, including the Shahins. Again, the members are the ones that are being hurt here by them having to defend meritless cases. And again, Your Honor, I understand the attorney's fees are rarely ever granted. And I understand and especially in cases involving pro se plaintiffs or defendants, but it's come to the point where someone has to

say, not only are you wrong, but these cases have got to stop, because if not, they're just going to keep moving on and moving on.

It's not costing them a dime, it's costing the members of the Delaware Federal Credit Union to defend the cases, that one, should have been resolved before, and two, they shouldn't be proceeding when there's no basis for it.

Again, the policies, which they were aware of, one was posted at all the facilities at all the branches, and it was also mentioned in the pamphlet, which they acknowledge, they received. To me, the Justice of the Peace Court got it dead on. The issue of non-local and local had really no bearing. The issue was whether available funds on June 21st, and clearly there wasn't. And the right to impose the $35 fee was appropriate.

THE COURT: All right. Thank you.

MS. SHAHIN: Your Honor, will I be allowed to add something?

THE COURT: Yes, you will, because you have the burden of proof in this case. Miss Shahin, tell me exactly what the damages are that you're seeking, other than the $35 fee?

MS. SHAHIN: In this particular case, that's practically whatever the court costs, that's all.

THE COURT: The court costs?

MS. SHAHIN: The court costs in both courts and $35.

THE COURT: Okay. Anything else you want me to consider?

MS. SHAHIN: Yes, Your Honor. There are two cases here and this is why I asked so many times about the $35. Because in the previous case, which is now at Supreme Court, it possibly goes to Supreme Court of the United States on the constitutional violation.

They claim that they offered to pay $35 and they claim that $35 was offered to pay in that case, not this case. So, if this is the case, this is perjury because they offered to pay $35 only once. So if this $35 offered to pay applies only to that case, then offer to pay $35 in the previous case does not apply. So, that was a perjury if Miss Thompson claimed that; that they offered to pay.

So, we are talking serious matters here. They say that it's a superficial, no, it's a matter of principle. We came and they misclassified the check. They promised to call, they didn't call. When they make mistake, I run for weeks and can get nothing. And then it takes them months to restore that money.

It's not the way, how the bank should work. Why we don't have any problems with the PNC Bank? And they always ask and are willing to help. They listen. Here you come, you talk to the people and you can see that everything goes beyond their attention. It's not the first time. It's all the time.

They say they offered to settle? No, they didn't offer to settle. They insulted my husband to the degree that he got to the hospital, to emergency room of the hospital and they deny that that happened. It's not a simple issue. It's a very serious issue when not only they don't provide proper services, they insult people on a regular basis and they want to accept that level of services. This is not acceptable. They serve not only to us; they serve to the public. And this is why we're trying to hold them responsible and improve the services.

All our lawsuit is not to get any type of personal gain. We want to show them that the service, which they offer are unacceptable level. Are of unacceptable quality. And the Delaware constitution holds them responsible for the quality of services, which they provide when they are working that type of industry.

That's all, Your Honor.

THE COURT: All right. I'm going to take some time to review my notes, and hopefully I'm going to come back with a decision today.

(WHEREUPON, A RECESS WAS TAKEN).

THE COURT: All right. Well, I want to thank all of you for thoroughly presenting your positions. The documents, the exhibits were helpful to me, as well as the testimony. I know this has been a difficult case for all parties, because it seems to be a case or a series of cases, which cannot get resolution to the satisfaction of everyone.

The plaintiffs are arguing several things. They are arguing, number one, that the Delaware Federal Credit Union, the defendant in this matter, acted illegally in the processing of a deposit that they made from their PNC Bank account into the Delaware Federal Credit Union. And Mrs. Shahin has done extensive research into the Article 4, UCC, Reg CC, and her interpretation as she applies those laws and regulations to the fact are that the defendant in this matter did not follow the law. And, in fact, did it maliciously in an attempt to harass the plaintiffs.

There have been several exhibits, which have been presented to the Court. Defendant's Exhibit No. 1, which is the funds availability process of the Delaware Federal Credit Union is one of those exhibits. It's posted in every branch. In addition, when the Shahins opened their account, they received the Important Information for our Members, Terms and Conditions, Truth in Savings, that also reiterates what's posted in the bank as the policy regarding deposits, when funds are available based on designation of local or non-local.

Mrs. Shahin argues that these policies, which they agreed to when they signed up as members of the Federal Credit Union, and were aware of, are in contravention of Article 4 and Reg CC. She argues that because these funds, according to Delaware Federal Credit Union, were not available until two business days after the deposit that they are in non-compliance with the Federal regs and the prevailing practice and procedure of other local banks. She argues that this was an adhesion

contract, therefore, the defendant has a more significant obligation to explain these processes and procedures that they have. And she argues that, again, they are in non-compliance with Article 4, and Reg CC.

She submits as proof that the prevailing practice and procedure in this location is different than what the Delaware Federal Credit Union follows and therefore they have not met the burden of showing that their practices are reasonable or that they use ordinary care. Mrs. Shahin submits that PNC Bank, which is Plaintiff's Exhibit No. 6, as proof as the prevailing practice and procedure in this area.

Article 4 says that if you are going to do, if you do not -- and she argues the midnight rule. And Article 4 states that if you are not going to follow the midnight rule, you may have a larger burden of showing that your practice and procedure is reasonable. So those basically are the arguments as I understand the Shahins as making.

The explanation as to why we don't follow the midnight rule is that because we extend hours to our customers, to a time much later than most other banks, I think 6:30 is the time of close, or 6:00, and that the processing at that point cannot really be accomplished until the following day. The fact that PNC does something differently does not in and of itself convince me that they are setting the standard as far as the practice and procedure prevailing in this community, and the differences are slight to insignificant.

Clearly plaintiffs understood the process and procedure,

because in 2003 they had a similar problem.  So they understood exactly
what the policy and procedure was going to be at the time this transaction
took place in 2005.

But the bottom line is this:  clearly there was an error on the
part of Delaware Federal Credit Union in designating or classifying the
check in question as a non-local check.  They admit it; it was stipulated to.
Clearly there was an error on the part of their customer in not reading the
receipt, which clearly stated that the bank was in error, but nonetheless,
considering this a non-local check.  So there was human error on both
sides.

Dr. Shahin testified that he talked to one of the tellers when it
became apparent to him that a mistake had been made.  He was told to talk
to a bank manager, Miss Brewer, which he did, 06/23.  They were going to
try to find this check, figure out if there had been an error.  But Lisa
Brewer said, I assumed there was because it was on hold and on 06/23 had
it been a local check, it would not have been.  Funds would have been
available.  So she believed what Dr. Shahin was saying but didn't have the
paper proof, but at that point in time the problem had already occurred,
because it occurred on 06/21.  And that is the question, really, to me.

I find, based on all I've heard and my knowledge of the law in
this area, that the fact that Delaware Federal Credit Union does not follow
PNC's policy and procedure, is irrelevant.  Their policy and procedure is
posted.  The plaintiffs understood it.  They've had a problem with them in

the past, so they clearly understood it.  They knew what the policy and procedure was.

The fact that another bank may make funds available a day earlier is not, in itself, tell me that their practice, procedures and policies are in violation of Federal law, or that they're unreasonable, or that they did not use ordinary care.

It really doesn't matter in this case that an error occurred, because under either of the scenarios the money was not available, at the earliest it would have been available 06/23, under availability of funds, at the earliest.  The withdrawal took place -- I'm sorry, the earliest it would have been 06/22, because we will count the day of deposit despite the fact that it didn't get to PNC Bank for deposit until the 21st.  Clearly the day of deposit, as far as they were concerned, was the 20th.  Provisional funds were available on the 20th and 21st.  The rest of the monies would have been available on the 22nd.

The account was overdrawn by the Shahins on 06/21.  So the error would have made no difference in this case whatsoever, as far as the insufficient funds and the application of the non-sufficient fund fee.

The error occurred, but the error was not the cause of the damages alleged in this case; the damages that were alleged to have been owed were caused by withdrawing the account the day prior to those funds being available and I have to assume that the Shahins understood that because they continue to be Credit Union members, they continue to use

the bank despite the fact that they've had similar problems in the past. There's no question that they were familiar with what that process and procedure was.

Timing is everything.  In this case it was tight and it was close. But I don't find any negligence on the part of the bank that was the proximate cause of the fee being applied in this account.  The fee was applied because the Shahins withdrew a day too early.

So I do find in favor of the defendant and against Mr. and Miss Shahin.

And just as a point of reference, I do note that the complaint in this case was filed 06/27, very quickly after the transaction in question.

So that is my ruling.

The only other thing I'm going to say is this:  It is disheartening to this Court that this type of minor business error transaction, whatever you want to call it, has generated the number of lawsuits that I'm advised are out there pending.  And I don't really care whether there's three, five, ten; I don't care.

It's disheartening to this Court that Mrs. Shahin has taken this case so personally.  It's clearly been a learning process.  She's read Federal law and regulations and there is some benefits of it.

But the tone that was presented, through her questioning and the questioning of her husband, is indicative to this Court that this has become a major part of her life.  And I'm sad that this, this very intelligent,

articulate -- better ways to use those talents than chasing a $35 non-sufficient fund fees over and over and over again. Because the facts, factually, the facts of this case are that funds were withdrawn at a time they should not have been and not based on any error by this bank.

That's my ruling. I'm not ordering attorney's fees, Mr. Morris, in this case, although I understand the frustration of the bank in having to defend this matter over and over again. But that's my decision.

MR. MORRIS: Good enough.

THE COURT: All right. We are recessed. Thank you all.

- - - - -

## CERTIFICATE OF REPORTER

I, Linda A. Lavender, Official Court Reporter of
the Court of Common Pleas, State of Delaware, do hereby certify that the
foregoing is an accurate transcript of the testimony adduced and
proceedings had, as monitored and electronically recorded, in the Court
of Common Pleas, in and for Kent County, in the case therein stated, as
the same remains of record in the Prothonotary's Office,  Kent County, at
Dover, Delaware.

WITNESS my hand this 27 day of Feb.,

2007, A.D.

Certificate No. 172-PS
Expiration Date:  Permanent

IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

MAZEN SHAHIN AND             :
NINA SHAHIN                    :
         Plaintiffs           :

      Vs.                     :        **C.A. No: 05-10-0113AP**

DELAWARE FEDERAL         :
CREDIT UNION               :
         Defendants

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE RECORD AND TO OBTAIN THE AUDIO TAPES OF THE HEARING

The Plaintiffs in this matter have motioned the Court to amend portions of the record from the trial held on January 17th of this year, and to obtain access to the audiotape of those proceedings. For the reasons set forth below, the motion is denied.

### BACKGROUND

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders." *CCP Civ. R. 60(a)*. Under *10 Delaware Code § 4101*, the Court before whom a record is, ***may*** order the amendment of any clerical error in any part of such record, which will ***tend to the furtherance of justice***. (Emphasis Added).

Here, the Plaintiffs requests do not tend to the furtherance of justice as required by the statute. They are inconsequential proofreading which serves no legitimate purpose. The Court Reporter made several changes to the transcript that she found to be important, but has refused to make the additional modifications that the Plaintiffs request. After reviewing the proposed amendments set forth by the Plaintiffs, I agree that changes are not necessary. I therefore decline to order that the transcript be amended.

As to the request for access to the audiotape, I deny this motion as well since the Plaintiffs have failed to set forth any legal grounds to support a right to have access to these records.

For the foregoing reasons, the motion is **DENIED.**

It is so **ORDERED**, this $\underline{10}^{th}$ day of May, 2007.

Rosemary Betts-Beauregard, Judge

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA and MAZEN SHAHIN, | : | |
| | : | C.A. No. 07A-02-001 WLW |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| DELAWARE FEDERAL CREDIT | : | |
| UNION, | : | |
| | : | |
| Appellee. | : | |

Submitted: September 21, 2007
Decided: December 31, 2007

### ORDER

Upon Appellants' Motion to Override the Court of
Common Pleas' Decision. Denied.
Upon Appellants' Motion Requesting a Stay of Case
Briefing. Denied.

Nina Shahin and Mazen Shahin, *pro se.*

Gregory A. Morris, Esquire of Liguori Morris & Yiengst, Dover, Delaware; attorneys
for the Appellee.

WITHAM, R.J.

*Shahin v. DFCU*
**C.A. No. 07A-02-001 WLW**
December 31, 2007

Defendant is in compliance with its contractual obligation.[5]

Appellants appealed this decision to the Court of Common Pleas, arguing again that the check had been misclassified as "non local," and also arguing that they disagree with the Justice of the Peace Court's finding that there had been a contractual relationship between Appellee and Appellants.[6] The court held that the facts do not find any negligence on the part of Defendant and entered judgment in favor of the Defendant.[7] On February 27, 2007, Appellants appealed the decision to this Court.

For this appeal, Appellants motioned the Court of Common Pleas to amend portions of the record from the hearing held on January 17, 2007 and to obtain access to the audiotape of those proceedings. Appellants claimed that there were errors in the transcript for which they wanted cured by listening to the audio tape. The Court of Common Pleas denied their motion, providing the following analysis:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders. CCP Civ. R. 60(a). Under 10 *Del.C.* § 4101, the Court before a record is, *may* order the amendment of any clerical error in any part of such record, which will *tend to the furtherance of justice*. (Emphasis added.)

---

[5]*Id.*

[6]Complaint ¶¶ 3-4, *Shahin v. Delaware Federal Credit Union*, No. 05-10-0113AP (Del. Com. Pl.). The Court understands that Appellants are pro se but must note that an absence of a contractual relationship may be an issue for this Court to decide on appeal.

[7]*Shahin v. Delaware Federal Credit Union*, No. 05-10-0113AP (Del. Com. Pl. Jan. 17, 2007).

3

*Shahin v. DFCU*
C.A. No. 07A-02-001 WLW
December 31, 2007

are 'adequately supported by the record and are the product of an orderly and logical deductive process.'"[10] This Court must accept any decision of the Court of Common Pleas that is supported by sufficient evidence.[11]

## DISCUSSION

Regarding Appellants' Motion to Overrule, the Court has carefully reviewed the Record and finds that the well-reasoned decision of the court below must stand. As quoted above, "the Court before a record is, *may* order the amendment of any clerical error in any part of such record, which will *tend to the furtherance of justice*."[12] Even if all the proposed changes requested by Appellants at the oral arguments held on September 21, 2007 were incorporated into the transcript, the result would not materially change the facts that the Court of Common Pleas used to base its decision. The changes are minor, such as adding an "is" after an "and." In other words, the changes would not tend to the furtherance of justice. Further, Appellants have not furnished any evidence or support that the audio tape would

---

[10]*Romain v. State Farm Mutual Auto. Ins. Co.*, 1999 WL 1427801, at *1 (Del.Super. December 02, 1999) (*citing Wyatt v. Motorola, Inc.*, 1994 WL 714006 at *2 (Del. Super. Mar. 11, 1994).

[11]*Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972); *Wilson v. Klabe Construction Co.*, 2004 WL 1732217, at *2 (Del. Super. July 29, 2004).

[12]10 *Del.C.* § 4101 (emphasis added).

5

*Shahin v. DFCU*
**C.A. No. 07A-02-001 WLW**
December 31, 2007

## CONCLUSION

Based on the above conclusions of fact and law, the Court *denies* Appellants'
motions. IT IS SO ORDERED.

R.J.

WLW/dmh
oc:   Prothonotary
xc:   Order Distribution

7

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

**Mazen & Nina Shahin**

      **Plaintiffs Below,**
      **Appellant,**

      **v.**

**Delaware Federal Credit Union**

      **Defendant Below,**
      **Appellee,**

**No. 47, 2008**

## RESPONSE TO THE NOTICE TO SHOW CAUSE

      **HERE COME THE PLAINTIFFS-APPELLANTS** and provide the response to the Supreme Court Notice to show cause:

      **UNDER CHAPTER 73 'OBSTRUCTION OF JUSTICE' OF THE US CODE**

**I.  CAUSE UNDER § 1512 'Tempering with a witness, victim or an informant'**

**A. Alterations made in the transcript of hearing in the Court of Common Pleas (18 U.S.C. §1512(c) (1))**

The judge of the Superior Court found substantive omission in the sworn testimony of the witness, CEO of the Delaware Federal Credit Union (DEFCU) Mr. Strosser, and unauthorized additions made to the words spoken in the courtroom by another witness, DEFCU compliance officer, their attorney, and one of the plaintiffs with intention to prevent the charges of perjury being brought against these DEFCU officers as "inconsequential proofreading which serves no legitimate purpose". The

1

Appellants disagree. §1512 (c) of the chapter 73 'Obstruction of Justice' of Title 18 of the US Code states "Whoever corruptly – (1) alters, destroys, mutilates or conceals a record, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceedings; or (2) otherwise obstructs, influences, or impedes official proceedings, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both". Delaware Criminal Code (Title 11, Chapter 5 'Specific Offenses') in §1244(5) specifies that a person is guilty of class A misdemeanor if that person "suppresses, by an act of concealment, alteration or destruction, any physical evidence which might aid in the discovery or apprehension of the person or in the lodging of a criminal charge against the person".

**B. Alterations made in the transcript of hearing at Superior Court (U.S.C. 18 §1512 (c) (2))**

- R.J. Witham, the presiding judge, also claimed that "The Court Reporter made several changes to the transcript that she found to be important, but has refused to make the additional modifications that the Plaintiffs request." The judge after making the above-mentioned statement concluded that "after reviewing the proposed amendments set forth by the Plaintiffs, I agree that changes are not necessary". The Appellant's remarks made during the hearing on the Motion held on September 21, 2007 that the Reporter refused to make modifications that would restore the 'integrity' of the witness' testimony without any explanations of the reason and even refused to confirm or deny that the alterations took place were completely omitted from the transcript of hearing at the Superior Court.

2

- The last words of the Appellant in that hearing that the modifications they had requested "are going to the heart of their accusation of perjury in all three of their cases" were the last words uttered in that courtroom, after which the judge grabbed his papers and left the courtroom without saying a word and then held up his judgment until the Plaintiffs-Appellant specifically requested him to render one in the last days of December of 2007 were completely obstructed by the altered layout of the transcript of the hearing in which a completely different conclusion of the hearing is presented with a specific words that had never been spoken by the Appellant in that courtroom on that day.

- As a matter of fact, the conclusion of the hearing is completely fabricated and did not take place because the Appellant in that hearing was severely limited in what she was allowed to say. She was not allowed to make any reference to the law because "the judge knew the law". She was not allowed to talk about other cases "because they are irrelevant to this case". She was not allowed to talk about violations of the process "because she was trying to argue the case in court and the Superior Court is the court of "record" not "argument". But the alleged concluding argument reveals that the court was well informed of other cases and infused that information into the transcript although that information was not discussed in that courtroom. This is not simple alteration, this is falsification and fraud and indication that the communications between judges of different courts go across different court levels and above and beyond the matters discussed on those courtrooms.

3

- The words of the attorney that he had never seen the request made by the Appellants to the Court Reporter for the modifications is completely falsified because the attorney specifically mentioned in the courtroom that he had seen the request. As a matter of fact, that request was attached to Appellants Motion to the Court of Common Pleas access to the tape and requesting these modifications and the attorney received two copies of that Motion with relevant attachments.

- Attorney's words about consent to the Appellants' access to the tape were extended above and beyond of what the attorney actually said changing the contents, manner and character of his remarks.

- Attorney's words about the place in which he, the DEFCU compliance officer, and the witnesses stayed before and after the court hearing at the Court of Common Pleas were completely modified to change the place from a "reception" which he specifically mentioned and where nobody was present except for the receptionist who the Appellants saw in those times when they repeatedly asked for the permission to leave after the court hearing in January of 2007.

- Appellants' references to the law (especially violations of the rule on witnesses) that she made before the judge cut her off are completely omitted from the transcript as well as all other references of the court-imposed limitations on the Appellant's speech.

Taking into consideration that hearing at the Court of Common Pleas took place in private chambers of a judge, Merrill C. Trader, and had obvious *ex parte* communications

4

between the judge and the Defendant-Appellee before and after the court hearing, violations of the rules on witnesses, the resulting falsifications of the transcripts is an evidence of a collusion between the judge and the attorney representing DEFCU in the Court of Common Pleas and the judge and the attorney at the Superior Court for obvious cover-up of that collusion.

And the last but not least, there is a relevant issue of overcharges made by the court reporters in both cases representing intentional financial pressure exerted by courts. CCP court reporter originally charged $ 450 of which $ 145 she later refunded (see Exhibits 1 and 2). The reporter of the Superior Court added to the transcript a lot of discussions that had never took place in order to justify her charge of $ 90 of which she refunded only $ 3. All these falsifications (there are three transcripts that grossly falsified either the substance, character or the form of hearing or all the three) demonstrated a criminal activity between the judges, attorneys, and court reporters to cover up abuse of process, fraud and perjury committed by the party represented by attorneys thus depriving the party represented *pro se* of justice.      Chapter 96 of the US Code entitled "Racketeer Influenced and Corrupt Organization Act' in § 1961 (1) 'Definitions'     specifically classifies actions falling under provisions of § 1512 of the US Code as a "racketeering activity".

In the view of gravity and seriousness of the above-mentioned accusations made by the Plaintiffs-Appellants' of obstruction of justice they request the access to the tape of hearing of the Court of Common Pleas to fix the alterations made to the two sworn witnesses' testimonies, attorney and the Appellant that would restore the integrity of the witnesses' testimonies which is needed for the case that is on appeal at the Supreme

5

Court and is necessary for charge of perjury of those witnesses. Appellants' request, therefore, is made under the Rule 42(v) of the Supreme Court Rules of Civil Procedure which determines the 'Case dispositive issue" as "A review of the interlocutory order may terminate the litigation or **may otherwise serve consideration of justice" (emphasis added by the Appellants).**

The Appellants specifically request the access to the tapes of both hearings in the presence of the representative from the office of the Attorney General of Delaware in view of aggravated and systematic activity of fraudulent modifications of transcripts in the courts of the state of Delaware and the extraterritorial Federal jurisdiction over the offense under § 1512 (h) of Title 18 of US Code and the Appellant's current appeal to the Third Circuit Court of Appeals against the State of Delaware, the Defendant, which is represented by the office of the Attorney the General.

Respectfully submitted on this 11the day of February, 2008.

Dated. Feb 11, 2008

**Below-Appellants**

**Mazen Shahin**

**Nina Shahin**

*Pro se* **representation**

**103 Shinnecock Rd.**
**Dover, DE 19904**

# EXHIBIT 1

MAZEN M SHAHIN
NINA SHAHIN
103 SHINNECOCK RD
DOVER DE 19904

2066

62-7655/2311

Jan 19, 2007
Date

Pay to the
Order of    Linda Lavender

$ 450.00

Four hundred & fifty only    Dollars

*Del-One*
Delaware Federal Credit Union
DOVER, DE 19901

For  transcript case 05-10-0113AD    MP

⑆231176554⑆ 750039382 8⑈    2066

LIBERTY

# EXHIBIT 2

# LINDA A. LAVENDER
## COURT OF COMMON PLEAS
### 38 THE GREEN
### DOVER, DE 19901
### 302-739-4620
### ext. 613

TO:  Nina Shahin

DATE:  February 27, 2007

RE:  Shahin v. DFCU

Transcript of proceedings held on January 17, 2007

0&1 copy
Kent County

Deposti:     $450.00
Transcript:  $303.00
Refund:      $147.00

Thank you,
Linda A. Lavender

# EXHIBIT 3

**LINDA A LAVENDER**    12/04
30 LAKE ST
SMYRNA, DE 19977-1747

2582

62-114/311
324

Date _2-27-07_

Pay to the
order of _Nina Shahin_                    $ _147.00_

_One hundred + forty seven o /100_ Dollars

CITIZENS BANK                    Citizens Circle Account

For _Tran. Refund_

⑈031101143⑈ 8200468443⑈    2582

## CERTIFICATE OF SERVICE

I, NINA SHAHIN, CPA

Hereby certify that two copies of the RESPONSE TO THE NOTICE TO SHOW CAUSE were served by hand delivery on this 11th day of February, 2008 upon the following person in the office of Mr. Gregory Morris:

Theresa Crendat

(name)

Legal Secretary of Greg Morris

(position)

Theresa Grindoy

(signature)

Date: Feb 11, 2008                    N. Shahin

(signature)

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NINA and MAZEN SHAHIN, | § | |
| | § | |
| | § | |
| Appellants Below- | § | No. 47, 2008 |
| Appellants, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| DELAWARE FEDERAL CREDIT | § | in and for Kent County |
| UNION, | § | C.A. No. 07A-02-001 |
| | § | |
| Appellee Below- | § | |
| Appellee. | § | |

Submitted: February 11, 2008
Decided:   March 7, 2008

Before **BERGER**, **JACOBS**, and **RIDGELY**, Justices.

## O R D E R

This 7th day of March 2008, it appears to the Court that:

(1)    On January 28, 2008, the Court received the appellants' notice of appeal from a Superior Court order denying their motions entitled, "Motion to Override the Court of Common Pleas' Decision Denying Appellants Access to the Tape of Hearing of January 17, 2007" and "Motion Requesting a Stay of Case Briefing Scheduled for September 24, 2007." The Assistant Clerk of this Court issued a notice pursuant to Supreme Court Rule 29(b) directing the appellants to show cause why the appeal should not

be dismissed for their failure to comply with Supreme Court Rule 42 in seeking to take an interlocutory appeal.

(2)    The appellants filed a response to the notice to show cause on February 11, 2008, which sets forth the reasons why they believe they are entitled to the relief denied by the Superior Court. They offer no explanation, however, for their failure to make any attempt to comply with Rule 42 in seeking to appeal the Superior Court's interlocutory ruling.

(3)    The ruling from which the appeal is taken is interlocutory in nature because it did not finally determine and terminate the cause before the Superior Court.[1]    Absent compliance with Supreme Court Rule 42, this Court lacks jurisdiction to consider an appeal from the Superior Court's interim order.

NOW, THEREFORE, IT IS ORDERED, pursuant to Supreme Court Rule 29(b), that the within appeal is DISMISSED.

BY THE COURT:

/s/ Jack B. Jacobs
Justice

---

[1] *See Julian v. State*, 440 A.2d 990 (Del. 1982).



## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NINA and MAZEN SHAHIN | § | No. 47, 2008 |
| | § | |
| v. | § | Superior Court |
| | § | |
| DELAWARE FEDERAL CREDIT | § | Kent County |
| UNION | § | |
| | § | C.A. No. 07A-02-001 |

The following docket entry has been e-filed the above cause.

March 25, 2008.                    Certified copy of Order dated March 7,
                                   2008, to Clerk of Court Below. **Case
                                   Closed**.

cc:  The Honorable William L. Witham, Jr.
     Mazen Shahin
     Nina Shahin
     Gregory A. Morris, Esquire

                         Prothonotary
                         Received Above

                         By _____

                         Date _____

Date:  March 25, 2008

                         _____
                         /s/ Audrey F. Bacino
                         Assistant Clerk of Supreme Court

**STATE OF DELAWARE**         }
                              } ss.
**KENT COUNTY**              }

     I, Audrey F. Bacino, Assistant Clerk of the Supreme Court of the State of Delaware, do hereby certify that the foregoing is a true and correct copy of the Order dated March 7, 2008, in ***Nina and Mazen Shahin v. Delaware Federal Credit Union,*** No. 47, 2008, as it remains on file and of record in said Court.

                            **IN TESTIMONY WHEREOF,**

                            I have hereunto set my hand and affixed the seal of said Court at Dover this 25th day of March A.D. 2008.

                            _____

                            /s/ Audrey F. Bacino
                            Assistant Clerk of Supreme Court

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | |
|---|---|
| NINA SHAHIN, | : CASE NUMBER: 06C-10-027 RBY |
| | : |
| v. | : NON-ARBITRATION |
| | : |
| DEL-ONE DELAWARE FEDERAL CREDIT UNION, | : TRIAL BY JURY DEMANDED |
| | : |
| | : |
| Defendant. | : |

### SUBSTITUTION OF COUNSEL

   **PLEASE ENTER THE APPEARANCE** of Monté T. Squire, Esquire, of the law firm

of Young Conaway Stargatt & Taylor, LLP, as attorney for Defendant Del-One Delaware

Federal Credit Union.

   **PLEASE WITHDRAW THE APPEARANCE** of Gregory A. Morris, Esquire, as

attorney for the Defendant Del-One Delaware Federal Credit Union.


**LIGUORI, MORRIS & YIENGST**          **YOUNG CONAWAY STARGATT & TAYLOR, LLP**


**/s/Gregory A. Morris**                **/s/ Monté T. Squire**_____ ___
**GREGORY A. MORRIS, ESQ.**            **MONTÉ T. SQUIRE, ESQUIRE**
46 The Green                           The Brandywine Building
Dover, Delaware  19901                 1000 West Street, 17th Floor
(302) 678-9900                         P.O. Box 391
Bar ID. 3014                           Wilmington, DE 19899-0391
Attorney for Defendant                 (302)571-6713
                                       Bar ID. 4764

      **SO ORDERED** this _____ day of _____, 2006.


                                    _____
                                    **JUDGE**

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY**

| | |
|---|---|
| **NINA SHAHIN,** | **: CASE NUMBER:  06C-10-027 RBY** |
| | **:** |
| **v.** | **: NON-ARBITRATION** |
| | **:** |
| **DEL-ONE DELAWARE FEDERAL** | **:  TRIAL BY JURY DEMANDED** |
| **CREDIT UNION,** | **:** |
| | **:** |
| **Defendant.** | **:** |

## CERTIFICATE OF SERVICE

This is to certify that the Defendant's Substitution of Counsel was served

to:

Nina Shahin
103 Shinnecock Rd.
Dover, DE 19904

via First-Class Mail on the __22__ day of __November____, 2006.


**LIGUORI, MORRIS & YIENGST**


**/s/Gregory A. Morris**
**GREGORY A. MORRIS, ESQ.**
46 The Green
Dover, Delaware  19901
(302) 678-9900
DATED:11/22/06            Bar ID. 3014
Attorney for Defendant

Click to Print                                    Printed on: Monday, April 16, 2007 12:06:36 EDT

## Case History Search
Search Created:
Monday, April 16, 2007 12:06:36 EDT

| Court: | DE Superior Court-Kent County | Judge: | Young, Robert B | File & Serve Live Date: | 10/20/2006 |
|---|---|---|---|---|---|
| Division: | Civil | **Case Number:** 06C-10-027-RBY | | **Document(s) Filed:** 53 | |
| Case Type: | CPIN - Personal Injury | **Case Name:** | Shahin, Nina vs Del One Delaware Federal | **Date Range:** | All |

1-21 of 21 transactions   <<Prev Page 1 of 1 Next>>

| Transaction ▼Date/Time | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|---|
| 14166613 | 3/19/2007 11:44 AM EDT | File Only | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 37 | Order | Moot (Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs)<br>• Linked to (1) | 0.1MB |
| 14166575 | 3/19/2007 11:43 AM EDT | File Only | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 36 | Order | Moot (Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs)<br>• Linked to (1) | 0.1MB |
| 14148327 | 3/16/2007 10:44 AM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 35 | Order | Order | 0.3MB |
| 13928862 | 2/26/2007 5:05 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 34 | Motion | Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs<br>• Linked to (1) | 0.1MB |
| | | | | | Notice | Notice of Motion for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs<br>• Linked from (1) | 0.1MB |
| | | | | | Affidavit | Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Exhibits | Exhibit A to Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's | 0.1MB |

| | | | | | | Motion For Attorney's Fees and Costs | |
|---|---|---|---|---|---|---|---|
| 13924109 | 2/26/2007 2:02 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 33 Letter | Letter | 0.2MB |
| 13907437 | 2/23/2007 3:04 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 32 Motion | Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked to (1) | 0.1MB |
| | | | | | Notice | Defendant Del-One Delaware Federal Credit Union's Notice of Motion for Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked from (1) | 0.1MB |
| | | | | | Affidavit | Defendant Del-One Delaware Federal Credit Union's Declaration of Counsel to Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Exhibits | Exhibit A to Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| 13541435 | 1/22/2007 3:29 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 26 Appendix | Exhibit A | 0.5MB |
| | | | | | 27 Appendix | Exhibit B | 0.7MB |
| | | | | | 28 Appendix | Exhibit C | 0.7MB |
| | | | | | 29 Appendix | Exhibit D | 3.5MB |
| | | | | | 30 Appendix | Exhibit E | 0.3MB |
| | | | | | 31 Appendix | Exhibit F | 0.9MB |
| 13540353 | 1/22/2007 2:39 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 25 Reply Brief | Plaintiff's reply to motion for judgment on pleadings | 1.4MB |
| 13534469 | 1/22/2007 11:03 AM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 24 Order | Order re: Defendants' Motion for Judgment on the Pleadings or Motion to Dismiss | 0.1MB |
| 13259356 | 12/21/2006 2:59 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 12 Motion | Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings • Linked to (1) | 0.2MB |
| | | | | | 13 Notice | Defendant Del-One | 0.1MB |

| | | | | | | Delaware Federal Credit Union's Notice of Motion for Motion For Judgment On The Pleadings | |
|---|---|---|---|---|---|---|---|
| | | | | 14 Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | 15 Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | 16 Exhibits | Exhibit A of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | 17 Exhibits | Exhibit B of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | 18 Exhibits | Exhibit C of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | 19 Exhibits | Exhibit D of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | 20 Exhibits | Exhibit E of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | 21 Exhibits | Exhibit F of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | 22 Exhibits | Exhibit G of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | 23 Exhibits | Exhibit H of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| 12992597 | 11/22/2006 11:09 AM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Gregory A Morris, Liguori Morris & Yiengst | 11 Substitution of Counsel | Substitution of Counsel | 0.1MB |
| | | | | | Certificate of Service | Certificate of Service for Substitution of Counsel | 0.1MB |
| 12951612 | 11/17/2006 3:07 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One | Monte T Squire, Young Conaway Stargatt & Taylor LLP- | 10 Entry of Appearance | Entry of Appearance of Young Conaway Stargatt & Taylor, LLP by Monte T. Squire. | 0.1MB |

| | | | Delaware Federal | Wilmington | | | | • Linked to (1) | |
| | | | | | | Certificate of Service | Certificate of Service to Entry of Appearance of Young Conaway Stargatt & Taylor, LLP by Monte T. Squire | 0.1MB |
| 12926358 | 11/15/2006 4:30 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Gregory A Morris, Liguori Morris & Yiengst | 9 | Case Information Statement | Superior Court Civil Case Information Statement • Linked to (1) | 0.1MB |
| | | | | | | Answer | Defendant's Answer to Complaint • Linked to (1) | 0.1MB |
| | | | | | | Form 30 Interrogatories | Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| | | | | | | Affidavit | Affidavit to Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| | | | | | | Certificate of Service | Certificate of Service for Defendant's Answer to Complaint and Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| 12799389 | 10/30/2006 5:00 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 8 | Sheriffs Return | Sheriff Return on Defendant Del One Delaware Federal Credit Union | 0.1MB |
| 12799382 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 1 | Case Information Statement | CIS Form | 0.1MB |
| 12799383 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 2 | Complaint | Complaint • Linked from (10) | 0.1MB |
| 12799384 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 3 | Praecipe | Praecipe | 0.1MB |
| 12799385 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 4 | Summons | Summons | 0.1MB |
| 12799386 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 5 | Exhibits | Exhibit to Complaint | 0.3MB |
| 12799387 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware | Lisa Robinson, DE Superior Court-Kent County | 6 | Certificate of Value | Certificate of Value | 0.1MB |

| | | | Federal | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12799388 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 7 | Form 30 Interrogatories | Form 30 Interrogatories | 0.1MB |

```
                    SUPERIOR COURT - KENT COUNTY
                         AS OF 04/16/2007                    PAGE      1


     06C-10-027
     FILED  October 20,2006            PERSONAL INJURY
     JUDGE:  RBY                       NON ARBITRATION
     STATUS:  NEW   E-FILED: YES       JURY TRIAL

PRO SE                    NINA SHAHIN
                                         -- VS --
SQUIRE MONTE' TERRELL    DEL-ONE DELAWARE FEDERAL CREDIT UNION,
                         FORMERLY, DE FEDERAL CREDIT UNION


     10/20/2006     1  INITIAL COMPLAINT - PERSONAL INJURY - COURT TO SCAN
                       DOCUMENTS - FILED PRO SE.
                       (PRO SE - N.SHAHIN)
                       LMR

     10/23/2006        SUMMONS SENT TO KENT COUNTY SHERIFF FOR SERVICE UPON
                       DEL-ON DELAWARE FEDERAL CREDIT UNION, FORMERLY
                       DE FERDERAL CREDIT UNION
                       LMR

     11/01/2006     2  WRIT RETURNED
                       SERVED DEL-ONE DELAWARE FEDERAL CREDIT UNION
                       FORMERLY DE FEDERAL CREDIT UNION BY LEAVING WITH JANE
                       WASHINGTON, RECEPTIONIST ON 10/27/2006
                       (JIM HIGDON) LMR

     11/15/2006     3  DELAWARE DEL-ONE'S ANSWER TO
                       COMPLAINT
                       (G.MORRIS/M.SQUIRE) MSC

     11/17/2006     4  ENTRY OF APPEARANCE OF MONTE T SQUIRE, ESQ.
                       (M.SQUIRE) MSC

     11/27/2006     5  PLAINTIFF'S ANSWER TO
                       COMPLAINT
                       (PRO SE) MSC

     12/21/2006     6  NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS
                       (M.SQUIRE) MSC

     01/19/2007     7  PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
                       GRANTED, JUDGE YOUNG WILL DO AN ORDER.
                       JUDGE YOUNG
                       MSC

     01/19/2007     8  PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON PLEDINGS
                       (N.SHAHIN) MSC

     01/22/2007     9  SO ORDERED, ON 01/22/2007 BY JUDGE YOUNG,
                       ON 10/20/06, NINA SHAHIN FILED A PRO SE COMPLAINT
                       AGAINST THE DEFENDANT, DEL-ONE DELAWARE FEDERAL CREDIT
                       UNION.   THE DEFENDANT, AFTER ANSWERING THE COMPLAINT,
                       FILED A MOTION FOR JUDGMENT ON THE PLEADINGS OR A
                       MOTION TO DISMISS.  FOR THE FOLLOWING REASONS, THE
                       MOTION SHOULD BE GRANTED.
```

```
                 SUPERIOR COURT - KENT COUNTY
                     AS OF 04/16/2007              PAGE    2

06C-10-027

                ACCORDINGLY, THE DEFENDANT'S MOTION IS GRANTED AND THE
                COMPLAINT IS DISMISSED WITH PREJUDICE
                JUDGE YOUNG
                MSC

02/26/2007    10  DEFENDANT'S MOTION FOR ATTORNEY FEES
                  (M.SQUIRE) MSC
```

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06C-10-027 RBY |
| | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| DEL-ONE DELAWARE FEDERAL | ) | TRIAL BY JURY DEMANDED |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion For Judgment On The Pleadings will

be presented to the Court at the earliest convenience of the Court and counsel.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6713
Email: msquire@ycst.com
*Attorneys for Defendant Del-One Delaware Federal Credit Union*

Dated: December 15, 2006



Motion for Judgment
on Pleadings

MONTE T. SQUIRE
YOUNG CONAWAY STARGATT & TAYLOR, LLP
THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801
P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

Nina Shahin
103 Shinnecock Rd.
Dover, DE 19904

CERTIFIED MAIL

7005 0390 0001 4164 9605



**UNITED STATES**
**POSTAL SERVICE**®

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: **7005 0390 0001 4164 9605**
Status: **Delivered**

Your item was delivered at 1:41 pm on December 16, 2006 in DOVER, DE 19904. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

*Restore Offline Details >*  *Return to USPS.com Home >*

**Track & Confirm**

Enter Label/Receipt Number.

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA 

EFiled: Dec 21 2006 2:59PM EST
Transaction ID 13259356

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06C-10-027 RBY |
| | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| DEL-ONE DELAWARE FEDERAL | ) | TRIAL BY JURY DEMANDED |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that the attached Motion For Judgment On The Pleadings will

be presented to the Court on January 19, 2007 at 11:00 a.m..

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6713
Email: msquire@ycst.com
*Attorneys for Defendant Del-One Delaware Federal Credit
Union*

Dated: December 21, 2006

DB02:5660594.1                                                          065810.1001

**A-23**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

NINA  SHAHIN,                              )
                                          )
        Plaintiff                         )
                                          )        Civil Action No.06C-10-027 RBY
                                          )
                                          )
DEL-ONE Delaware Federal Credit Union )
Former                         )
DE FEDERAL CREDIT UNION,                  )
                                          )
        Defendant                         )

## PLAINTIFFS' REPLY TO THE MOTION FOR JUDGMENT ON PLEADINGS

NOW COME the plaintiffs and present their reply to the defendant's Motion for

Judgment on the Pleadings:

### Defendant's Claim that the Plaintiff's Claims are Barred by the Doctrine of *Res*

### *Judicata*

1.      In paragraph 6 of the above mentioned section the Defendant's attorney

claimed that the Plaintiff has lodged a litany of lawsuits and appeals against

DEFCU over the past 18 months, and "merely rehashes the very same claims

that have either already been considered and decided in favor of DEFCU on

the merits in other courts of this State, or presently pending before other

courts of this state".  The plaintiffs have not raised in this lawsuit any issues

that have been decided in any other court.  If any decisions are mentioned it is

only to demonstrate how the decision affected the attitudes and behavior of

the DEFCU employees.

2.      In paragraph 7 the defendant's attorney made a false statement of fact that

three lawsuits at JP court were dismissed with prejudice.  As a matter of fact,

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | : | |
| | : | |
| Plaintiff, | : | C.A. No: 06C-10-027 (RBY) |
| | : | |
| v. | : | |
| | : | |
| DEL-ONE Delaware Federal Credit | : | |
| Union, et al., | : | |
| | : | |
| Defendants. | : | |

## **O R D E R**

On October 20, 2006, Nina Shahin, (Plaintiff) filed a *pro se* complaint against the Defendant, DEL-ONE Delaware Federal Credit Union. The Defendant, after answering the complaint, filed a Motion for Judgment on the Pleadings or a Motion to Dismiss.[1] For the following reasons, the motion should be **GRANTED.**

## **FACTS**

In her Complaint, the Plaintiff avers that between 2003 and 2006, the Defendant "provided poor service, violated fiduciary duties owed to [her] as a financial institution entrusted with safekeeping and management of public money, verbally insulted and harassed [her] and [her] husband and as a direct and proximate result of those actions [she] and [her] husband sustained financial, physical and emotional damages." The Plaintiff lists six incidents that inflicted the above damages. First, in October 2003, a bi-weekly payment on her car loan was deducted from her account

---

[1] The Defendant's answer, which claimed an affirmative defense of the Plaintiff's failure to state a claim upon which relief can be granted, adequately preserved its ability to make a separate motion raising a defense under Superior Court Civil Rule 12(b)(6).

but was added to the balance of the loan rather than being subtracted and it took a month for the Defendant to correct the mistake. Second, in May 2004, the Plaintiff applied for a home equity loan. The Defendants initially stated it was due to a poor credit, but then stated it was due to the form of the ownership of the property. The Plaintiff stated the whole conversation over this was "nothing short of harassment in which the CEO tried to force [her] to accept the poor level of services provided by the Defendant." Third, in December 2004, the Plaintiff deposited a check of $5,000 from a credit card company into her daughter's account. According to Plaintiff's allegation, a few days later, the bank called and informed the Plaintiff there was not enough money to cover the check. The Plaintiff states she was forced to go to the bank and have an employee listen to a recording that states there was enough money to cover the check. The Plaintiff asserts the absence of any apology from the manager over this. Fourth, on March 22, the Plaintiff realized there was not enough money in her account to cover her pending payments. The next day, the Plaintiff rushed to the bank to deposit the difference, but was subjected to insufficient funds charges. Fifth, the Plaintiff states that on June 20, 2005, her husband made a deposit. The deposit was classified as non-local and the funds were not available for seven days, triggering a shortage of funds and additional charges for insufficient funds. The Plaintiff stated in her complaint that this was the subject of one of her previous lawsuits that is now before the Delaware Supreme Court. Finally, the Plaintiff cites "other incidents" in 2006 that "demonstrated the unwillingness of the branch manager . . . to provide assistance to the [P]laintiff and the [P]laintiff's husband." In addition, the Plaintiff cites the false statements of fact made by the Defendant, its attorney and its employees and a harassing phone call between the Plaintiff's husband and the Defendant's CEO as additional ways in which she has been aggrieved.

2

According to the Complaint, the Plaintiff seeks: $50,000 for the perjury committed by the Defendant in the other matters she raised in the Justice of the Peace Court, the Court of Common Pleas and the Superior Court; $35,000 for the damages to her health, well being, and the risk of life to her husband and the insult to herself by the Defendant's Chief Executive Officer; $15,000 for continuous poor customer services by the branch manager that amounted to dereliction of duties; and $5,000 in compensation for pain, suffering and emotional distress inflicted on the plaintiff and her husband because of poor services, financial losses and court battles.

## DISCUSSION

As the Plaintiff admits, this is not her first foray into the judicial system based upon allegations concerning the service she has received from the Defendant. The Defendant argues that the Plaintiff's claims in this Complaint are barred by the doctrine of *res judicata* because of her previous lawsuits. In addition, the Defendant seeks the dismissal of these claims pursuant to Superior Court Civil Rule 12(b)(6) due to the Plaintiff's failure to state a claim upon which relief can be granted.

To begin, *res judicata* ensures that "a final judgment upon the merits of a case are rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies."[2] *Res judicata* bars claims that were raised as well as those that might have been raised.[3] The latter types of claims, i.e., claims that might have been raised, are precluded under the rule against claim splitting.[4] This rule "is based on the belief that it is fairer to require a

[2] *Epstein v. Chatham Park, Inc.*, 153 A.2d 180, 184 (Del. Super. 1959).

[3] *See RSS Acquisition, Inc. v. Dart Group Corp.*, 1999 WL 1442009, at *3 (Del. Super.).

[4] *See Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980).

3

plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times."[5] If the rule were otherwise, defendants would be subject to continual harassment  from a multiplicity of suits arising from claims based on the same set of facts set forth in the initial litigation.[6]  Additionally, "piecemeal litigation of a single cause of action is contrary to the orderly administration of justice."[7]

To determine if the rule against claim splitting has been violated, a court must look to the facts of each case and decide if the claim initially asserted, "transactionally defined, is identical to the claim [presently before it], even though the substantive theory of recovery asserted by [the plaintiff] in the two courts is different."[8]  If the court so finds, then the plaintiff, to prevent dismissal, must "show that there was some impediment to the presentation of his entire claim for relief in the prior forum."[9]  If the court concludes that the plaintiff has not met this burden, then the court should assess whether *res judicata* may apply.[10]  For *res judicata* to be applied, five requisites must be met: (1) the court making the prior adjudication must have had jurisdiction over the subject matter of the suit and of the parties in it; (2) the parties to the prior action were the same parties, or their privies, in the pending case; (3) the

---

[5] *Id.*

[6] *See Webster v. State Farm Mutual Automobile Ins. Co.*, 348 A.2d 329, 331 (Del. Super. 1975).

[7] *Id.*

[8] *Maldonado*, 417 A.2d at 382.

[9] *Id.* 383-384.

[10] *Id.* 383.

4

prior cause of action was the same as that in the present case, or the issues necessarily decided in the prior action were the same as those raised in the pending case; (4) the issues in the prior action were decided adversely to the contentions of the plaintiff in the pending case; and (5) the prior decree is final.[11]

In the present case, only one of three actions the Plaintiff originally brought in the Justice of the Peace Court is final; that is, C.A. No. J0504026216, which was commenced on April 18, 2005. This matter meets all five elements of *res judicata*. Therefore, unless the Plaintiff can demonstrate an impediment to presenting her claim in that forum, *res judicata* precludes any further claims arising out of any interaction with the Defendant prior to April 18, 2005. Thus, no claims arising from the allegations listed in the first four bullet points under paragraph 3 of the Complaint can be raised by the Plaintiff in the present action.

To the extent that the rule against claim splitting does not preclude the claims made in the Plaintiff's Complaint, the Court holds that the Plaintiff has failed to state a claim upon which relief can be granted. "To show entitlement of relief as required in Rule 8(a), the complaint must aver either the necessary elements of a cause of action or facts which would entitle the plaintiff to relief under the theory alleged."[12] The Plaintiff's whole Complaint, even including the parts precluded by *res judicata,* is held together mainly by bare boned allegations of "poor service" or errors from which she has demonstrated no harm. Based on the face of the Complaint the Court finds no suggestion that the Plaintiff's allegations give rise to a basis for a cause of action against the Defendant. While the Court recognizes the Plaintiff is proceeding

---

[11] *RSS Acquisition, Inc.*, 1999 WL 1442009, at *3-*4.

[12] *American Ins. Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1104 (Del. Super. 1982).

*pro se*, that does not excuse her from meeting the requirements necessary to maintain a cause of action in this Court.

Accordingly, the Defendant's motion is **GRANTED** and the Complaint is **DISMISSED** with prejudice.

**SO ORDERED** this 22nd day of January, 2007.


_____/s/ Robert B. Young_____
J.


RBY/sal
oc:    Prothonotary
cc:    Parties

6

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAZEN AND NINA SHAHIN, | § | |
| | § | |
| Appellants Below- | § | No. 472, 2006 |
| Appellants, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| DELAWARE FEDERAL CREDIT | § | in and for Kent County |
| UNION, | § | C.A. No. 06A-01-004 |
| | § | |
| Appellee Below- | § | |
| Appellee. | § | |

Submitted:  November 20, 2006
Decided:    January 24, 2007

Before **BERGER**, **JACOBS**, and **RIDGELY**, Justices.

## <u>O R D E R</u>

This 24th day of January 2007, after careful consideration of the appellants' opening brief and the appellee's motion to affirm, the Court finds it manifest that the judgment below should be affirmed on the basis of the Superior Court's well-reasoned decision, dated August 3, 2006, which affirmed the Court of Common Pleas' order granting summary judgment to appellee. The Superior Court did not err in affirming the Court of Common Pleas' judgment that there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Jack B. Jacobs
Justice

IN THE SUPREME COURT OF THE STATE OF DELAWARE



| | | |
|---|---|---|
| NINA SHAHIN, | § | |
| | § | |
| Plaintiff Below- | § | No. 93, 2007 |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | Court Below—Superior Court |
| DEL-ONE DELAWARE | § | of the State of Delaware, |
| FEDERAL CREDIT UNION, | § | in and for Kent County |
| | § | C.A. No. 06C-10-027 |
| Defendant Below- | § | |
| Appellee. | § | |

Submitted: March 14, 2008
Decided: June 9, 2008

Before **STEELE**, Chief Justice, **JACOBS**, and **RIDGELY**, Justices.

## O R D E R

This 9th day of June 2008, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    The appellant, Nina Shahin, filed this appeal from a decision of the Superior Court, dated January 22, 2007, which granted the defendant, Del-One Delaware Federal Credit Union's (Del-One) motion for judgment on the pleadings. Shahin also appeals the Superior Court's award of attorneys fees against her.[1] We find no merit to the appeal. Accordingly, we affirm the Superior Court's judgment.

---

[1] Plaintiff filed her notice of appeal in this Court on February 20, 2007. After the notice of appeal was filed, Del-One filed a motion for attorneys fees in the Superior Court, which the Superior Court granted on March 16, 2007. We vacated the award of attorneys fees as improvidently granted because the Superior Court had no jurisdiction to act on Del-One's motion while Shahin's appeal was pending. Accordingly, we remanded the matter back to the Superior Court for a hearing and decision on the request for attorneys fees. Shahin failed to appear at the hearing. The Superior Court granted Del-One's motion for attorneys fees.

(2)    The record reflects that Shahin, who is a Del-One customer, filed her complaint in the Superior Court in October 2006 for alleged accounting mistakes made by Del-One and other alleged incidents of poor customer service in connection with banking transactions conducted by Shahin and her husband in 2003, 2004, and 2005. Her complaint sought damages in excess of $100,000.  Prior to filing her complaint in October 2006, Shahin had filed lawsuits in other Delaware courts against Del-One alleging identical or nearly identical claims.  Those other actions were resolved against Shahin.

(3)    Del-One answered Shahin's complaint and later filed a motion for judgment on the pleadings.  Despite Shahin's contention to the contrary, the record reflects that Del-One's motion was properly noticed on December 21, 2006 with a hearing date scheduled for January 19, 2007.  Following the hearing, the Superior Court issued an opinion holding that Shahin's claims were barred by the doctrine of *res judicata* and otherwise failed to state any legally cognizable claim for relief.  After filing her notice of appeal, this Court remanded the matter to the Superior Court for consideration of Del-One's motion for attorneys fees.  Shahin notified the Superior Court of her intention not to appear at the hearing. The Superior Court held the hearing on July 19, 2007, in Shahin's absence, and awarded Del-One a portion of its fee request, $2984.79, as a sanction against Shahin[2] for bringing claims that were both factually and legally unwarranted.

---

[2] *See* Super. Ct. Civ. R. 11(c) (2008).

2

(4)    In her opening brief on appeal, Shahin contends that the Superior Court's rulings were both erroneous and an abuse of discretion. We disagree. The Superior Court correctly determined that Shahin's claims were barred by the doctrine of *res judicata* and the rule against claim splitting because she had previously raised, or could have raised, the same claims in her previous lawsuits.[3] Moreover, we find no abuse of discretion in the Superior Court's award of attorneys fees to Del-One as a sanction against Shahin for repeated, unwarranted litigation.[4] Under the unique circumstances of this case, it appears that a monetary sanction may be the only means of deterring Shahin from filing future baseless claims. The Superior Court's award in this case took into account Shahin's status as a pro se litigant and awarded Del-One only a fraction of its actual attorneys fees incurred in defending against Shahin's frivolous claims.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

---

[3] *See Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980) ("The rule against claim splitting is an aspect of the doctrine of res judicata and is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times.").

[4] *See Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992) (noting that Rule 11 sanctions are appropriate to deter and punish frivolous litigation).

3



IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NINA SHAHIN, | § | |
| | § | No. 93, 2007 |
| Plaintiff Below- | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Kent County |
| | § | |
| DEL-ONE DELAWARE FEDERAL | § | C.A. No. 06C-10-027 |
| CREDIT UNION | § | |
| | § | |
| Defendant Below- | § | |
| Appellee. | § | |

Submitted:  June 16, 2008
Decided:     June 20, 2008

Before **STEELE,** Chief Justice**, JACOBS** and **RIDGELY**, Justices.

### *O R D E R*

This 20th day of June 2008 the Court, having carefully considered the appellant's motion for reargument pursuant to Supreme Court Rule 18, of this Court's Order dated June 9, 2008, we conclude that the motion should be denied.

NOW, THEREFORE, IT IS ORDERED that the motion for reargument is **DENIED**.

BY THE COURT:

/s/Henry duPont Ridgely
Justice

**STATE OF DELAWARE**      **}**
                          **} ss.**
**KENT COUNTY**            **}**

I, Audrey F. Bacino, Assistant Clerk of the Supreme Court of the State of Delaware, do hereby certify that the foregoing are true and correct copies of the Orders dated June 9 and June 20, 2008, in ***Nina Shahin v. Del-One Delaware Federal Credit Union,*** No. 93, 2007, as they remain on file and of record in said Court.

**IN TESTIMONY WHEREOF,**

I have hereunto set my hand and affixed the seal of said Court at Dover this 23rd day of June A.D. 2008.

/s/ Audrey F. Bacino
Assistant Clerk of Supreme Court

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06C-10-027 RBY |
| | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| DEL-ONE DELAWARE FEDERAL | ) | TRIAL BY JURY DEMANDED |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion For Attorney's Fees and Costs will be

presented to the Court on March 2, 2007 at 11:00 a.m.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6713
Email: msquire@ycst.com

*Attorney for Defendant Del-One Delaware Federal Credit Union*

Dated: February 23, 2007



**STATE OF DELAWARE**
**SUPERIOR COURT**
KENT COUNTY COURTHOUSE
38 THE GREEN
DOVER, DELAWARE 19901

Lisa M. Robinson
PROTHONOTARY

TELEPHONE: 739-5328
739-3184

February 26, 2007

Monte T. Squire, Esq.
P.O. Box 391
Wilmington, DE 19899

Re:    Nina Shahin v. DEL-ONE DELAWARE FEDERAL CREDIT UNION
       Civil Action: 06C-10-027

Dear Mr. Squire,

        Please re-file your Motion for Attorney's Fees and Costs. It was not filed properly according to the civl case management plan. It does not need to be noticed for a date. When the courtesy copy is filed with the Court it will be sent up to Chambers for consideration.

        I apologize for the confusion and inconvenience to you.

                                Sincerely,

                                Mei-Ling Cosgrove
                                Civil Case Manager to Judge Young

Cc: Nina Shahin

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06C-10-027 RBY |
| | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| DEL-ONE DELAWARE FEDERAL | ) | TRIAL BY JURY DEMANDED |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion For Attorney's Fees and Costs is

submitted for consideration by the Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6713
Email: msquire@ycst.com

*Attorney for Defendant Del-One Delaware Federal Credit Union*

Dated: February 26, 2007

EFiled: Feb 26 2007 9:03PM EST
Transaction ID 13928862
Case No. 06C-10-027-RBY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

NINA SHAHIN,                          )
                                      )
                    Plaintiff,        )    C.A. No.: 06C-10-027 RBY
                                      )
v.                                    )    NON-ARBITRATION
                                      )
DEL-ONE DELAWARE FEDERAL              )    TRIAL BY JURY DEMANDED
CREDIT UNION,                         )
                                      )
                    Defendant.        )

## ORDER

AND NOW, upon consideration of Defendant Del-One Delaware Federal Credit Union's

Motion for Attorney's Fees and Costs and good cause for the Motion having been shown and

upon finding that Defendant is entitled to judgment in its favor,

IT IS HEREBY ORDERED, this _16th_ day of _March_____, 2007, that the

IN THE AMOUNT OF $500.00
Defendant's Motion for Attorney's Fees and Costs is GRANTED.

_____
Judge Robert B. Young

2007 MAR 16  AM 10: 20
KENT COUNTY
PROTHONOTARY
RECEIVED AND
FILED

DB02:5792621.1                                                          065810.1001

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAZEN and NINA SHAHIN, | § | |
| | § | No. 93, 2007 |
| Plaintiffs Below, | § | |
| Appellants, | § | Court Below—Superior Court |
| | § | of the State of Delaware, in |
| v. | § | and for Kent County |
| | § | |
| DEL-ONE DELAWARE FEDERAL | § | |
| CREDIT UNION, | § | |
| | § | |
| Defendant Below, | § | C.A. No. 06C-10-027 |
| Appellee. | § | |

Submitted:  May 22, 2007
Decided:    June 11, 2007

Before **HOLLAND, BERGER** and **JACOBS,** Justices.

## O R D E R

This 11th day of June 2007, it appears to the Court that:

(1)    The plaintiff-below/appellant, Nina Shahin, has appealed the Superior Court's order of January 22, 2007, that dismissed Shahin's complaint filed against defendant-below/appellee Del-One Delaware Federal Credit Union ("Del-One").  Shahin filed the notice of appeal on February 20, 2007.

(2)    On February 26, 2007, Del-One filed a motion for attorney's fees in the Superior Court.  The Superior Court issued a ruling on Del-One's motion on March 16, 2007.

(3)    Based upon a limited review of the record, the Court has concluded that the Superior Court was without jurisdiction when it ruled upon Del-One's motion for attorney's fees because that motion was not pending at the time Shahin filed this appeal.[1]    Shahin's appeal filed on February 20, 2007, invoked the jurisdiction of the Court and served to preclude further Superior Court proceedings as of that date.[2]    Consequently, the Court will vacate the Superior Court's March 16, 2007 order on attorney's fees as improvidently issued and will remand this matter to the Superior Court for further proceedings.

(4)    The Court will take no action with respect to the parties' pending submissions on appeal as those filings are hereby rendered null and void.[3]    The Clerk will issue a new brief schedule to the parties upon the Superior Court's return of this matter from remand.

NOW, THEREFORE, IT IS ORDERED that:

A.    The Superior Court's order of March 16, 2007, is VACATED, *sua sponte*, and this matter is REMANDED, with jurisdiction retained, to the Superior Court for a hearing on Del-One's motion for attorney's fees.

---

[1] Compare *Lipson v. Lipson*, 799 A.2d 345 (Del. 2001).

[2] *Bowen v. E.I. DuPont de Nemours and Co., Inc.*, 879 A.2d 920, 922 (Del. 2005) (citing *Radulski v. Delaware State Hosp.*, 541 A.2d 562, 567 (Del. 1988); *Eller v. State*, 531 A.2d 951, 952 (Del. 1987)); *Dixon v. DCSE/Dixon*, 1993 WL 102557 (Del. Supr.).

[3] Those submissions include Shahin's motion to vacate and all related responses, *e.g.*, Shahin's "Motion Filed under Rule 30(b)," Shahin's opening brief and appendix, and Del-One's motion to affirm.

     B.    The Superior Court is directed to issue a written decision on Del-One's motion for attorney's fees within sixty days and file with this Court a transcript of the hearing on remand.[4]

                                         BY THE COURT:

                                         /s/ Carolyn Berger           
                                         Justice

---

[4] Del. Supr. Ct. R. 19(c) (2007).

3

RECEIVED
AND
FILED

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

07 JUL 17 AM 11: 37

KENT COUNTY
PROTHONOTARY

| | | |
|---|---|---|
| NINA AND MAZEN SHAHIN, | ) | |
| | ) | |
|    Plaintiffs | ) | |
| | ) | Civil Action No.06C-10-027 RBY |
| | ) | |
| DEL-ONE Delaware Federal Credit Union | ) | |
| Former | ) | |
| DE FEDERAL CREDIT UNION, | ) | |
| | ) | |
|    Defendant | ) | |

## PLAINTIFF'S NOTICE OF NOT ATTENDING HEARING ON JULY 19, 2007

NOW COMES the plaintiffs and give a notice to this court that they will not attend a hearing on attorney's fees scheduled for July 19, 2009 for the following reasons:

1. This court is without jurisdiction on the issue for attorney's fees because the case is presently on appeal at the Superior Court and there is no "final judgment" rendered so far which is necessary for hearing the case for any cause for awarding court costs per rule 54(d) of the Superior Court Rules of Civil Procedure.

2. Even if the attorney's fees could be considered as court costs, the Rule 54(i) of Superior Court Rules of Civil Procedure specifically prohibits the award of the attorney fees by a Superior Court in any action and the attorney in his motion failed to indicate the reason why this rule should be disregarded. Failing to make a reference to a law that governs request of his Motion as well as specifying why the law should not be applied is a violation of Canon 3.1 of the Delaware Lawyers Rules of Professional Conduct.

3. Scheduling a hearing on a matter that has no legal substance because there is no legal precedent of awarding attorney's fees in a *pro se* representation, no jurisdiction, and so many violations of the law, procedure, and rules of professional conduct is nothing short of judicial harassment.

Submitted on behalf of both Plaintiffs

*N. Shahi*

**NINA SHAHIN, CPA**

**For both plaintiffs**

In *pro se* representation
103 Shinnecock Rd.
Dover, DE 19904
Tel. (302) 678-1805

**July 17, 2007**

1

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

**Mazen & Nina Shahin**

     **Plaintiffs Below,**                 **No. 93, 2007**
     **Appellant,**
     **v.**

**Del-One, Delaware Federal Credit Union**

     **Defendant Below,**
     **Appellee,**

## MOTION-PROTEST AND THE REQUEST FOR A COURT RULING

     Plaintiffs-Appellants hereby file this Motion with the Supreme Court of the State of Delaware after receiving the Defendant's attorney's Motion for Attorney's Fees and Costs filed with the Superior Court of Delaware on July 9, 2007 copy of which is attached in the Exhibit A.

     The Plaintiffs-Appellants protest the following:

1. The Delaware Supreme Court issued an order on June 11, 2007 to vacate the Superior Court decision of March 16, 2007 awarding the opposing attorney fees in amount of $ 2,500 (Exhibit B). Although the Appellants in their motions raised the issue of judicial harassment and violations of their constitutional rights of "due process" and "equal protection" in submitting, processing and issuance of the court order on the attorney's fees, the Supreme Court used the reason of "lack of jurisdiction" claiming that the Plaintiffs-Appellants' timely appeal filed with the Delaware Supreme Court on February 20, 2007 left the Superior Court with no jurisdiction over the matter of attorney's fees

filed by attorney in a Motion on February 26, 2007. It is surprising and illogical then for the Supreme Court to remand the issue back to the Superior Court for hearing on the issue over which it has no jurisdiction. The only explanation for such an illogical decision of this court can be given that the Supreme Court is trying to convey legitimacy to the unconstitutional decision of the Delaware Superior Court and the Appellants refuse to play any role in such a spectacle.

2. It is obvious that the Delaware Supreme Court is trying to provide a cover up for the complete denial of the basic constitutional rights to the Appellants by the Superior court judge in a process in which there were no proper notice, any type of hearing, any necessary attributes of an adversarial process like confrontation and cross-examination and finally, no any reference to law, rules, regulations or case law neither in the attorney's motion nor in the judge's decision and actually made in violation of the Rule 54(i) of the Superior Court Rules of Civil Procedure. In addition, there are all indications that the attorney and the judge acted in collusion culminating in the attorney's call to the Appellant on March 22, 2007 (six days after that unconstitutional Superior Court decision of the judge Robert B. Young) with the desire to settle on the money of the judgment. It is because of that telephone call the Appellants raised the issue of judicial harassment that the Supreme Court decided to ignore. It appears also that both the judge and the attorney violated their respective rules of professional conduct by filing, processing, and awarding the money on fraudulently filed motion on which the Superior Court had no jurisdiction.

3. The Supreme Court decision of June 11, 2007 in paragraph (4) also rendered null and void all filings of the parties to this court including Shahin's "Motion Filed under Rule 30(b)", "Shahin's opening brief and appendix, and Del-One's motion to affirm" although

2

no legal basis for such an annulment was given. It appears to the Appellants that the Delaware Supreme Court did not like the issue of collusion between the judges of Superior and Supreme courts and the corruption raised by the Appellants as well as the obvious violations by the attorney of the Del-One of all stipulations under which the Motion to Affirm can be filed. It is obvious that the Supreme Court is trying to provide the cover-up for all the violations of the Appellants' constitutional rights, rules of civil procedures and professional standards by judges and the attorney.

The Appellants have no doubts that the hearing on July 19, 2007 at the Superior Court on the subject over which the court has no jurisdiction because there is no "final judgment" in this case that is a necessary attribute for award of any court costs (Rule 54(d) of the Superior Rules of Civil Procedure) is staged specifically to convey legitimacy to the process previously conducted in a way that rendered that process unconstitutional to arrive at the same outcome as before. As in the famous saying "Fool me once shame on you, fool me twice shame on me" the Appellants do not believe in honesty or impartiality of the judge who had previously falsified the decision of the Justice of the Peace Court, denied them the statutory provisions of the Regulations CC and awarded the attorney fees in violation of the Rule 54(i) of civil procedures of the Superior Court (Rule 54(i) specifically says that "No appearance fees for attorney will be permitted or taxed as costs in any action or cause in the Superior Court"). Neither do they trust in honesty and professional integrity of the Supreme Court who consistently shielded judges and attorneys and provided cover-up for their violations.

The Appellants, therefore, put the Delaware Supreme Court on a notice that they will not attend the hearing on July 19, 2007 as a protest at the Supreme Court cover-up

3

action to convey legitimacy to unconstitutional decision of the Superior Court awarding

opposing attorney's fees especially since the Superior Court does not have jurisdiction

over that matter until a "final judgment" issued by a Supreme Court on the appeal in this

case.

Secondly, they respectfully request this court to issue a ruling on the attorney's

violations of the Delaware Lawyers' Rules of Professional Conduct by lying to the court

about the hearing held on January 19, 2007 (Canon 3.3(a)(1) that prohibits an attorney

from making "a false statement of fact… and …failed to correct a false statement of

material fact previously made to the tribunal") as well as submitting legally meritless

Motion for Attorney's Fees in violations of rules of civil procedures of the Delaware

Superior Courts (Canon 3.1 "A lawyer shall not bring or defend a proceeding, or assert

or controvert an issue therein, unless there is a basis in law and fact for doing so that is

not frivolous, which includes a goof faith argument for an *extension, modification, or

reversal of existing law" (*emphasis added by Appellants).

Respectfully submitted on this 17th day of July, 2007,

on behalf of the Plaintiffs-Appellants,

Nina Shahin

103 Shinnecock Rd.
Dover, DE 19904
(302)678-1805

4

## EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

NINA SHAHIN,                          )
                                      )
                    Plaintiff,        )    C.A. No.: 06C-10-027 RBY
                                      )
v.                                    )    NON-ARBITRATION
                                      )
DEL-ONE DELAWARE FEDERAL              )    TRIAL BY JURY DEMANDED
CREDIT UNION,                         )
                                      )
                    Defendant.        )

## MOTION FOR ATTORNEY'S FEES AND COSTS

Defendant, Del-One Delaware Federal Credit Union ("Del-One") by and through the

undersigned counsel, hereby moves this Court for an Order requiring Plaintiff to pay all of the

attorney's fees incurred in connection with its defense of this action. In support of this motion

defendant avers as follows:

1.      On or about October 20, 2006, Plaintiff filed a Complaint against Del-One for

alleged incidents involving banking transactions that occurred in October 2003, May 2004,

December 2004, March 2005 and June 2005. (D.I. 2 at ¶ 3).

2.      Del-One filed its Answer and Affirmative Defenses to this action on November

15, 2006 (D.I. 9), and its Motion for Judgment on the Pleadings on December 21, 2006 (D.I. 12).

3.      This suit was the latest in a series of lawsuits and appeals that Plaintiff has

brought against Del-One over the past eighteen months, all involving meritless claims or claims

that have either already been considered and decided in favor of Del-One on the merits in other

Courts of this State, or that were pending before other Courts of this State.

4.      A hearing on defendant's Motion for Judgment on the Pleadings was held on

January 19, 2007.

     5.     During that hearing the Court granted defendant's motion and ordered that based on the record and facts presented in the case, and request by counsel, that the Plaintiff be required to pay the attorney's fees and expenses incurred by Del-One to defend the case.[1]

     6.     The Court entered a written Order in this matter on January 22, 2007.[2] (D.I. 24).

     7.     Attached to this motion is a declaration by defendant's counsel, detailing the time, fees and expenses incurred defending this case. The total fees and disbursements of $10,207.53[3] are well in accord with usual practices and charges in this area of law, given the nature and extent of the case.

     WHEREFORE, it is respectfully requested that as ordered during the January 19, 2007 hearing, the plaintiff be assessed the attorney's fees and costs incurred by defendant in defending this action or another amount that the court deems fair and appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-391
Telephone: (302) 571-6713
msquire@ycst.com

*Attorney for Defendant Del-One Delaware Federal Credit Union*

Dated: July 9, 2007

---

[1]     All papers and prior filings in this case are incorporated herein by reference.

[2]     However, the written Order did not contain the provision for attorney's fees. and there is no transcript available from the January 19, 2007 hearing.

[3]     Since the filing of the original motion, defendant has incurred an additional $3,742.74 in fees and expenses defending this case. Plaintiff has since filed a petition for writ certiorari in the U.S. Supreme Court and an appeal in the Supreme Court of Delaware.

2

     

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| NINA SHAHIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 06C-10-027 RBY |
| | ) | |
| v. | ) | NON-ARBITRATION |
| | ) | |
| DEL-ONE DELAWARE FEDERAL | ) | TRIAL BY JURY DEMANDED |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion For Attorney's Fees and Costs is

scheduled to be heard by the Court on Thursday, July 19, 2007 at 9:30 a.m.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6713
Email: msquire@ycst.com

*Attorney for Defendant Del-One Delaware Federal Credit Union*

Dated: July 9, 2007

**EXHIBIT B**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

NINA SHAHIN,                              )
                                         )
                    Plaintiff,           )    C.A. No.: 06C-10-027 RBY
                                         )
v.                                       )    NON-ARBITRATION
                                         )
DEL-ONE DELAWARE FEDERAL                 )    TRIAL BY JURY DEMANDED
CREDIT UNION,                            )
                                         )
                    Defendant.           )

## ORDER

AND NOW, upon consideration of Defendant Del-One Delaware Federal Credit Union's

Motion for Attorney's Fees and Costs and good cause for the Motion having been shown and

upon finding that Defendant is entitled to judgment in its favor,

IT IS HEREBY ORDERED, this _16th_ day of _March_ , 2007, that the

*IN THE AMOUNT OF $650.00*

Defendant's Motion for Attorney's Fees and Costs is GRANTED.

_____
Judge Robert B. Young

2007 MAR 16 AM 10: 20
KENT COUNTY
PROTHONOTARY
RECEIVED AND
FILED

## CERTIFICATE OF SERVICE

I,  NINA SHAHIN, CPA

Hereby certify that two copies of this MOTION-PROTEST AND REQUEST FOR

A DECISION has been mailed today, July 17, 2007 by certified mail to the attorney,

 Monté T. Squire, Esq.,  at the following address:

> The Brandywine Bldg.
> 100 West Street, 17th Floor
> Wilmington, DE 19801

and a return receipt is requested:

Date: July 17, 2007

_____
(signature)

Nina Shahin, CPA

1       IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2                   IN AND FOR KENT COUNTY

3
        NINA SHAHIN,                C.A. No. 06C-10-027 RBY
4
                    Plaintiff,
5
                v.
6
        DEL-ONE,
7
                    Defendant.
8

9
        BEFORE:    HON. ROBERT B. YOUNG, JUDGE
10

11      APPEARANCES:

12

13                  MONTE T. SQUIRE, ESQ.
                    YOUNG CONAWAY STARGATT & TAYLOR
14                      for the Defendant

15

16                  HEARING TRANSCRIPT
                    JULY 19, 2007
17

18

19                  JEANNE CAHILL, RMR, CRR
                    SUPERIOR COURT OFFICIAL REPORTERS
20                  38 The Green - Dover, Delaware 19901
                    (302) 739-5311
21

22

23

1                              July 19, 2007
                              Courtroom No. 2
2                              9:35 a.m.

3    PRESENT:

4              As noted.

5                     - - - - -

6

7         THE COURT:  Good morning.

8         MR. SQUIRE:  Good morning, Your Honor.

9         THE COURT:  This is the motion for the remand

10   on attorneys' fees.  Miss Shahin is not here, from

11   her letter, is that correct?

12        MR. SQUIRE:  She's not here, Your Honor.

13        THE COURT:  I guess the first question is what

14   the basis for the legal fees is.

15        MR. SQUIRE:  Yes.  May I?

16        THE COURT:  Please.

17        MR. SQUIRE:  Good morning, Your Honor.  As you

18   know, I think you're familiar with the facts in this

19   case.  It's been, I guess, for my client and

20   ourselves, it's been a series of about 18 months of

21   three different lawsuits effectively based on the

22   same, the very same claim, originating from a $35

23   overcharge fee.

1        Since then, and I'll just speak in the

2  litigation that I'm involved with, we've spent over

3  $10,000 in fees on a motion for judgment on the

4  pleadings, which we won. Your Honor issued an order

5  on our behalf.

6        We then filed the motion for fees, just

7  because we think fees are appropriate, because

8  there's really no other way for us to really deal

9  with this case.

10        I mean, the plaintiff -- and we're sure she's

11  going to bring another case, likely, in the absence

12  of some type of action from the Court. We think this

13  is bad faith conduct. It's certainly not using the

14  Court system the way it was intended to be used.

15        And we recognize that Miss Shahin is a pro se

16  litigant, but we still think, Your Honor, she's

17  required to adhere to Rule 11, and have a good-faith

18  basis for her claim, and not use the Court system to

19  harass either the attorneys or, more importantly, to

20  harass my client.

21        THE COURT: So this really is a request for

22  sanctions?

23        MR. SQUIRE: I think it's twofold, Your Honor.

1   I think it's within the discretion of the Court.
2   Certainly, we're familiar with at least the Delaware
3   Courts really imposing the American rule where
4   parties typically pay for their own expenses.
5           THE COURT:  Yeah.
6           MR. SQUIRE:  However, in circumstances like
7   this, where it's vexatious litigation or harassment,
8   or there is a series of suits that are effectively
9   based on the same claim that's already been resolved,
10  we think that constitutes bad faith, and it's within
11  the discretion of the Court to impose just sanctions.
12          And separately, we think under Rule 11,
13  specifically, 11 Subsection (b), we think that the
14  conduct of the client is certainly in bad faith and
15  constitutes harassment, and we think sanctions are
16  appropriate, or some type of payment or recourse is
17  appropriate; and we think it's in the Court's
18  discretion to do so.
19          The motion sets forth that it's about $10,000.
20  We understand that that may be more than the
21  plaintiff is equipped to pay, but we think some
22  amount at the Court's discretion is appropriate to
23  kind of end this matter.

1      One other point, Your Honor, I did indeed try

2      to contact Miss Shahin to talk about settlement,

3      perhaps, if she'd agree not to bring future

4      litigation based on these same transaction and

5      occurrences, and she flatly rejected that.

6      And again, I think in the absence of some type

7      of Court action or some type of reprimand, we're

8      going to be here again a few months from now.

9      THE COURT:  I can appreciate your frustration.

10      Have you come upon any case law or anything

11      besides Rule 11 that supports this?

12      MR. SQUIRE:  I think the case law -- I didn't

13      find anything that was specifically on point.  And I

14      think the case law, Delaware case law, goes the other

15      way.  There are not a lot of cases to deal with a pro

16      se circumstance, so I think we're at the point where

17      it's almost a case of first impression.

18      And admittedly, most of the cases that deal

19      with this issue, at least in the context of attorneys

20      or folks admitted to practice before the Court,

21      either pro hac or the like, have really kind of

22      reverted to the American rule.  So we understand that

23      we're swimming uphill, upstream, but we think that

1    something needs to be done.

2              I just know that the system is not set up to

3    be using judicial resources and fees for this type of

4    matter.  There has to be some type of mechanism.

5              THE COURT:  This -- we don't know about the

6    future, of course, but this case has run the course

7    through the Supreme Court and is over.  Is that

8    correct?

9              MR. SQUIRE:  Yes.  Well, the Supreme Court has

10   remanded this particular issue.

11             THE COURT:  Other than this remand for the --

12             MR. SQUIRE:  And the Court has said that once

13   this issue is resolved, briefing will start again.

14             THE COURT:  On this issue?

15             MR. SQUIRE:  On -- it's my understanding it

16   will start anew on the motion for judgment on the

17   pleadings, because that was what was originally

18   appealed, and this was just a part of that.

19             So based on my reading of the papers from the

20   Supreme Court, this is going to start all over again

21   on appeal right after this particular issue is

22   resolved here.

23             (Discussion held off the record.)

1    THE COURT:  All right.  On the representations
2    by counsel for Del-One, and in the absence of any
3    position to the contrary by the plaintiff, and a
4    reasonable inquiry pursuant to Rule 11(b) having been
5    made, it's the finding of the Court that pleadings
6    have been submitted which are not, to the best of the
7    plaintiff's knowledge, information and belief, formed
8    after an inquiry reasonable under the circumstances,
9    or have not been presented for proper purposes, or
10   lack factual contentions with evidentiary support, or
11   are not warranted under the evidence provided.
12       As a result, sanctions under 11(c) are
13   appropriate, having been initiated properly by
14   motion.
15       The sanctions indicated will be $2,984.79.
16   The amount indicated reflects actual expenses as
17   delineated by the motion of the defendant, and an
18   additional $2500, which does not approach the amount
19   of time compensation for this matter, but attempts to
20   reflect the circumstances of the plaintiff in this
21   case.
22       (Motion hearing adjourned at 9:45 a.m.)
23

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

**Mazen & Nina Shahin**

    **Plaintiffs Below,**
    **Appellants,**

    **v.**

**Delaware Federal Credit Union**

    **Defendant Below,**
    **Appellee,**

**No. 93, 2007**

---

## MOTION FOR SANCTIONS AGAINST THE ATTORNEY, MONTÈ T. SQUIRE, UNDER THE DELAWARE SUPREME COURT RULE 33 AND THE FEDERAL RULE 11

The Appellants file this Motion because the violations of the rules of civil procedures and misrepresentations on the part of the attorney should stop and in order to deter such a behavior in future penalized.

The Appellants allege the following violations and misrepresentations that were committed by this attorney for which they seek the Delaware Supreme Court sanctions:

1. Mr. Montè T. Squire does not have a legal right to represent Delaware Federal Credit Union (Del-One). The substitution of the counsel was performed with violation of the Superior Court Rule 90(b).

1

2.  Mr. Squire in his answering brief claimed that the Justice of the Peace Court # 16 entered decision in favor of the Del-One. This is not true. The Justice of the Peace Court entered decision in favor of Nina Mazen Shahin (copy of the decision is attached as Exhibit A to this Motion).

3.  Mr. Squire claimed in his Answering Brief that he notified the Appellants of the hearing on his Motion for a Decision on Pleadings to be held on January 19, 2007 and attached on page A-23 a copy of the Notice (Copy of that Notice is attached as Exhibit B to this Motion). This is not true. It appears that that Motion was electronically filed with the Superior Court on 12/21/2007 and never mailed to the Appellants. The Appellants received a Notice filed on 12/15/2007 in which no date of hearing was mentioned (see a copy in Exhibit C). That notice was mailed to the Appellants in a certified envelope with a return receipt (copy of the top of that envelope is attached in Exhibit D). This attorney's claim means that either there was no any hearing that he alleged (and this is the reason why there was no transcript of the hearing) or there was *ex parte* hearing between the judge and the attorney and they "cooked" the decision against the Plaintiffs-Appellants that dismissed their claim.

4.  The Attorney submitted his Motion for Attorney's fees without any reference to any law or rule of civil procedure and in violation of the Rule 54(i). He did not provide any justification for such an anomaly as required by the canon 3.1 of the Delaware Lawyers' Rules of Professional Conduct.

2

5. He submitted his Motion at the time when the Superior Court had no jurisdiction over the matter because of the Appellants' timely appeal to the Supreme Court and in violation of the Rule 54(d).

The Appellants, therefore, seek sanctions against the attorney, Montè T. Squire, because it appears that the existing laws and rules of civil procedure do not apply to attorneys who practice against *pro se* litigants.

Respectfully submitted,

Date:  January 4, 2008                    Appellants:

Mazen Shahin

Nina Shahin

SUPREME COURT OF DELAWARE

CATHY L. HOWARD
*Clerk*
——— ———

AUDREY F. BACINO
*Assistant Clerk*
LISA A. SEMANS
*Chief Deputy Clerk*
LATOYA S. BRADY
*Senior Court Clerk*
DEBRA J. ZATLOKOVICZ
*Senior Court Clerk*
DORIS BAILEY
*Senior Court Clerk*

SUPREME COURT BUILDING
55 THE GREEN
DOVER DE 19901

P.O. BOX 476
DOVER DE 19903
——— ———

(302) 739-4155
(302) 739-4156
(302) 739-8091

January 7, 2008

Mr. Mazen Shahin
Ms. Nina Shahin
103 Shinnecock Road
Dover, DE  19904

      RE:   ***Shahin, Mazen et al., vs Del One Delaware Federal Credit Union,*** No. 93, 2007

Dear Mr. & Ms. Shahin:

      The Court has directed me to advise you that your document entitled "Motion for sanctions against the attorney, Monte T. Squire under the Delaware Supreme Court rule 33 and the federal rule 11" is stricken for being in violation of Supreme Court Rule 34, a copy of Rule 34 is enclosed for your review.

                Very truly yours,

                /s/ LaToya S. Brady

/lsb

cc:    Monte T. Squire, Esquire